UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LINDA CHESLOW, et al.,<br>  Plaintiffs,<br>v.<br>GHIRARDELLI CHOCOLATE COMPANY,<br>  Defendant. | Case No. 19-cv-07467-PJH<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>Re: Dkt. No. 14 |

Defendant Ghirardelli Chocolate Co.'s ("Ghirardelli" or "defendant") motion to dismiss came on for hearing before this court on March 11, 2020. Plaintiffs Linda Cheslow and Steven Prescott ("plaintiffs") appeared through their counsel, Matthew Theriault. Defendant appeared through its counsel, Dale Giali. Having read the papers filed by the parties and carefully considered their arguments and relevant authority, and good cause appearing, the court hereby GRANTS defendant's motion for the following reasons.

**BACKGROUND**

On September 19, 2019, plaintiffs filed a complaint in Sonoma County Superior Court, which defendant removed to federal court on November 13, 2019. Dkt. 1. The complaint ("Compl.") asserts three causes of action: (1) violation of California Unfair Competition Law Business & Professions Code § 17200 et seq.; (2) False and Misleading Advertising in violation of Business & Professions Code § 17500 et seq.; and (3) violation of California Consumer Legal Remedies Act, Civil Code § 1750 et seq. Dkt. 1-1. Plaintiffs seek to certify a class action of persons who purchased Ghirardelli's "Premium

Baking Chips Classic White Chips" (the "product") in the United States or, alternatively, in California.

Plaintiffs allege that they purchased the product under the impression that the product contained white chocolate, but, in fact, it does not contain any chocolate. Compl. ¶¶ 4, 26–27. The complaint alleges that Ghirardelli previously marketed a similar version of the product that contained real white chocolate baking chips and then "covertly" swapped out the real white chocolate for fake white chocolate. Id. ¶ 5. The current version of the product's packaging as well as Ghirardelli's official website advertise the product as "Classic White Chips" and "Premium Baking Chips." A depiction of the product's packaging is as follows:







Dkt. 14-2. Plaintiffs allege that reasonable consumers do not consider the word "premium" to include "inferior" ingredients such as hydrogenated and palm oils. Compl. ¶ 7. According to plaintiffs, the reference to "white" in "Classic White" deceives reasonable consumers into thinking "white" represents the type of chocolate in the product, i.e., white chocolate. Id. ¶ 8. That is because defendant manufactures other products denoted by type of chocolate; these include: "milk chocolate," "bittersweet chocolate," and "semi-sweet chocolate." Id.

Plaintiffs allege that consumers reasonably and detrimentally rely on Ghirardelli's representations of the product as real chocolate in making their purchasing decisions. Id. ¶ 9. Plaintiffs allege that consumers have complained about the product on numerous consumer protection and retailer websites. For example, one consumer wrote:

> Because of Ghirardelli's reputation, I didn't look at the ingredient list when I purchased the white chips; this was a big mistake. There is no cocoa butter in them, and I was disgusted by the end product. I wasted over $50 and hours of my time using this in a product that I was giving as a holiday gift. Needless to say, I threw the end product away.

Id. ¶ 11. The complaint includes other, similar consumer statements. See id. ¶ 14.

The federal Food and Drug Administration ("FDA") has issued regulations defining "white chocolate" as follows:

(1) White chocolate is the solid or semi plastic food prepared

3

> by intimately mixing and grinding cacao fat with one or more of the optional dairy ingredients specified in paragraph (b)(2) of this section and one or more optional nutritive carbohydrate sweeteners and may contain one or more of the other optional ingredients specified in paragraph (b) of this section. White chocolate shall be free of coloring material. (2) White chocolate contains not less than 20 percent by weight of cacao fat . . . The finished white chocolate contains not less than 3.5 percent by weight of milkfat . . . .

Id. ¶ 35 (citing 21 C.F.R. § 163.124). California has adopted FDA's definitions, including the definition of white chocolate. Id. (citing Cal. Health & Safety Code § 109875 et seq.). Plaintiffs concede that they are not alleging non-compliance with the federal or California definition of white chocolate. Id. ¶ 37. Instead, they allege that a reasonable consumer would believe the product contains white chocolate based on its labeling, advertising, and marketing. Id. ¶ 39.

Plaintiffs cite a final example of the advertising and marketing alleging that, as recently as June 12, 2019, Ghirardelli's website depicted the product with the word chocolate immediately under defendant's name on the packaging. Id. ¶ 42. Plaintiffs allegedly took screenshots of defendant's website on June 12, 2019 and also provided notice of their claims to defendant. Id. According to plaintiffs, this deceptive reference to "chocolate" was removed as evidenced by new screenshots of defendant's website on September 5, 2019, without the word "chocolate" on the product packaging. Id.

As alluded to previously, plaintiffs seek to bring class action claims on behalf of "[a]ll persons who purchased the Product in the United States or, alternatively, in California, for personal consumption and not for resale during the time period of four years prior to the filing of the complaint through the present." Id. ¶ 45.

**DISCUSSION**

**A.    Legal Standard**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests for the legal sufficiency of the claims alleged in the complaint. Ileto v. Glock, 349 F.3d 1191, 1199–1200 (9th Cir. 2003). Under Federal Rule of Civil Procedure 8, which requires that a complaint include a "short and plain statement of the claim showing that the pleader is

4

entitled to relief," Fed. R. Civ. P. 8(a)(2), a complaint may be dismissed under Rule 12(b)(6) if the plaintiff fails to state a cognizable legal theory, or has not alleged sufficient facts to support a cognizable legal theory. Somers v. Apple, Inc., 729 F.3d 953, 959 (9th Cir. 2013).

While the court is to accept as true all the factual allegations in the complaint, legally conclusory statements, not supported by actual factual allegations, need not be accepted. Ashcroft v. Iqbal, 556 U.S. 662, 678–79 (2009). The complaint must proffer sufficient facts to state a claim for relief that is plausible on its face. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 558–59 (2007) (citations and quotations omitted).

A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citation omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief.'" Id. at 679. Where dismissal is warranted, it is generally without prejudice, unless it is clear the complaint cannot be saved by any amendment. Sparling v. Daou, 411 F.3d 1006, 1013 (9th Cir. 2005).

Because plaintiffs' claims sound in fraud, their complaint must also meet the heightened pleading standard of Federal Rule of Civil Procedure 9(b). See Kearns v. Ford Motor Co., 567 F.3d 1120, 1125 (9th Cir. 2009). Rule 9(b) requires a party alleging fraud or mistake to state with particularity the circumstances constituting fraud or mistake. To satisfy this standard, the "complaint must identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false." Salameh v. Tarsadia Hotel, 726 F.3d 1124, 1133 (9th Cir. 2013) (citation and internal quotation marks omitted).

Review is generally limited to the contents of the complaint, although the court can also consider a document on which the complaint relies if the document is central to the claims asserted in the complaint, and no party questions the authenticity of the

5

1  document. See Sanders v. Brown, 504 F.3d 903, 910 (9th Cir. 2007). The court may
2  consider matters that are properly the subject of judicial notice, Knievel v. ESPN, 393
3  F.3d 1068, 1076 (9th Cir. 2005); Lee v. City of Los Angeles, 250 F.3d 668, 688-89 (9th
4  Cir. 2001), and may also consider exhibits attached to the complaint, see Hal Roach
5  Studios, Inc. v. Richard Feiner & Co., Inc., 896 F.2d 1542, 1555 n.19 (9th Cir. 1989), and
6  documents referenced extensively in the complaint and documents that form the basis of
7  a the plaintiff's claims. See No. 84 Emp'r-Teamster Jt. Counsel Pension Tr. Fund v. Am.
8  W. Holding Corp., 320 F.3d 920, 925 n.2 (9th Cir. 2003).

If dismissal is warranted, it is generally without prejudice, unless it is clear that the complaint cannot be saved by any amendment. Sparling, 411 F.3d at 1013. "Leave to amend may also be denied for repeated failure to cure deficiencies by previous amendment." Abagninin v. AMVAC Chem. Corp., 545 F.3d 733, 742 (9th Cir. 2008).

**B.  Analysis**

**1.  Request for Judicial Notice**

Federal Rule of Evidence 201 permits a court to notice a fact if it is "not subject to reasonable dispute." Fed. R. Evid. 201(b). A fact is "not subject to reasonable dispute" if it is "generally known," or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(1)–(2).

Here, defendant requests the court judicially notice a high-resolution image of the product's packaging. Dkt. 15. Plaintiffs do not oppose this request. Other courts have noticed images that better display the packaging in question. See, e.g., Jones v. Nutiva, Inc., No. 16-cv-00711-HSG, 2016 WL 5210935, at *2 (N.D. Cal. Sept. 22, 2016). That reasoning is applicable here; the packaging of defendant's product is publicly available and not subject to reasonable dispute. Accordingly, the court GRANTS defendant's request for judicial notice.

**2.  Whether the Product Would Deceive a Reasonable Consumer**

Plaintiffs bring three claims using three different California statutes: the Unfair Competition Law ("UCL"), False Advertising Law ("FAL"), and the Consumer Legal

Remedies Act ("CLRA"). The UCL prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. "The false advertising law prohibits any unfair, deceptive, untrue, or misleading advertising." Williams v. Gerber Prod. Co., 552 F.3d 934, 938 (9th Cir. 2008) (citing Cal. Bus. & Prof. Code § 17500) (internal quotation marks omitted). The CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices." Cal. Civ. Code § 1770.

The Ninth Circuit has explained that "these [three] California statutes are governed by the 'reasonable consumer' test." Williams, 552 F.3d at 938 (quoting Freeman v. Time, Inc., 68 F.3d 285, 289 (9th Cir. 1995)); accord Consumer Advocates v. Echostar Satellite Corp., 113 Cal. App. 4th 1351, 1360 (Ct. App. 2003). "Under the reasonable consumer standard, [plaintiffs] must show that members of the public are likely to be deceived." Williams, 552 F.3d at 938. "The California Supreme Court has recognized that these laws prohibit not only advertising which is false, but also advertising which[,] although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public." Id. (internal quotation marks omitted) (quoting Kasky v. Nike, Inc., 27 Cal. 4th 939, 951 (2002)). The reasonable consumer test requires more than a mere possibility that defendant's product "might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner." Lavie v. Procter & Gamble Co., 105 Cal. App. 4th 496, 508 (Ct. App. 2003). Rather, the test requires a probability "that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." Id.

Generally, "whether a reasonable consumer would be deceived . . . [is] a question of fact not amenable to determination on a motion to dismiss." Ham v. Hain Celestial Grp., Inc., 70 F. Supp. 3d 1188, 1193 (N.D. Cal. 2014); see Reid v. Johnson & Johnson, 780 F.3d 952, 958 (9th Cir. 2015). "However, in rare situations a court may determine, as a matter of law, that the alleged violations of the UCL, FAL, and CLRA are simply not plausible." Ham, 70 F. Supp. 3d at 1193.

In the case at bar, the reasonable consumer test governs the plausibility of all

three of plaintiffs' claims. Defendant contends that the complaint does not contain any allegations that its product contains any statements or representations that are false. Mtn. at 7. Ghirardelli submits that, without any actual or implied false or deceptive statement, plaintiffs cannot state a claim. Id. Plaintiffs respond by arguing that California's reasonable consumer standard extends to statements that are true but nonetheless have the capacity to deceive consumers. Opp. at 9. Plaintiffs would have the court find that whether a reasonable consumer could be deceived is a fact-based question not appropriate for a Rule 12(b)(6) motion. Id. at 7.

The court begins by discussing the alleged deceptive statements on the product's packaging—the term "white chips," the term "premium," the images on the package, and the ingredient list—and then the facts and circumstances external to the packaging.

### a. The Product's Packaging—"White Chips"

As a common starting point, both defendant and plaintiffs agree that there is no affirmative statement or representation on the product that is false or deceptive. For example, the package label does not include the word "chocolate" or "cocoa." Thus, plaintiffs must demonstrate that the product, despite containing only true statements, has the capacity, likelihood, or tendency to deceive the consuming public. Kasky, 27 Cal. 4th at 951. Plaintiffs argue that the phrase "white chips" should be understood to imply white chocolate. Opp. at 10. Defendant contends that the word "white" simply refers to the color of the chips. Mtn. at 9. Plaintiffs respond that Ghirardelli does not label its milk chocolate chips as "tan," thus the color implies something about the quality of the chips. Opp. at 13–14.

Becerra v. Dr. Pepper/Seven Up, Inc., 945 F.3d 1225, 1229 (9th Cir. 2019), is helpful in interpreting cases where a modifying adjective is at the heart of the purported deception. There, the plaintiff alleging similar false advertising claims sought to characterize the adjective "diet" in the product "Diet Dr. Pepper" meant that drinking Diet Dr. Pepper assisted in weight loss or healthy weight management. Id. at 1227. The Ninth Circuit began by reviewing dictionary definitions of the word diet and concluded

that, in the food context, the proper and commonly understood definition of diet was "reduced in or free from calories." Id. at 1229 (citation omitted). The court reasoned that in the food advertising context, "no reasonable consumer would assume that Diet Dr. Pepper's use of the term 'diet' promises weight loss or management. In context, the use of 'diet' in a soft drink's brand name [was] understood as a relative claim about the calorie content of that soft drink compared to the same brand's 'regular' (full-caloric) option." Id. (citation omitted).

Applying here, the adjective "white" in "White Chips" does not define the food itself but rather defines the color of the food. The Cambridge Dictionary defines "white" in this context as "used in the names of various food and drink products, many of which are not pure white but slightly cream, yellow, gray, or transparent." Cambridge Dictionary, https://dictionary.cambridge.org/us/dictionary/english/white; see also Merriam Webster, https://www.merriam-webster.com/dictionary/white ("[O]ne that is or approaches white in color such as . . . white wine."). Thus, the use of the term "white" does not lend itself to defining the quality of the product. For example, white wine may define the characteristic of the wine's color but does not inform the consumer whether the wine is a zinfandel or gewürztraminer.

Having determined the common definition and understanding of the word white, it would not be appropriate to base liability off of a misunderstanding of the word white. In this regard, Ebner v. Fresh, Inc., 838 F.3d 958 (9th Cir. 2016), is instructive. Ebner involved a lip product that accurately indicated the net weight of the product but used a screw mechanism that only allowed 75% of the lip product to advance up the dispenser tube. Id. at 961. The court rejected the plaintiff's argument that the design was deceptive because it left 25% of the product inaccessible. The court held that such containers were "commonplace in the market" and the reasonable consumer understood "the general mechanics of these dispenser tubes and further [understood] that some product may be left in the tube" even when pushed all the way up. Id. at 965. Even if some consumers held a mistaken assumption about the availability of the product in the

9

1  bottom of the dispenser tube, the product was not deceptive just because those
2  consumers unreasonably understood the product. Id. at 966; see also Becerra, 945 F.3d
3  at 1230 ("Just because some consumers may unreasonably interpret the term differently
4  does not render the use of 'diet' in a soda's brand name false or deceptive." (citing Lavie,
5  150 Cal. App. 4th at 508)).

This reasoning applies with equal weight here. Simply because some consumers unreasonably assumed that "white" in the term "white chips" meant white chocolate chips does not make it so.

### b. The Product's Packaging—"Premium"

Defendant argues that the word "premium" in the phrase "Premium Baking Chips" on the product label is puffery and thus, not actionable. Mtn. at 16. Plaintiffs respond that Ghirardelli uses the term premium to convey to consumers that the product possesses characteristics of real white chocolate, specifically high-quality agreements. Opp. at 16. Ghirardelli uses the word "premium" in two locations. The front panel states the product is "Premium Baking Chips" and the back panel states "Elevate your baking from great to extraordinary with our top quality premium ingredients to create a rich smooth flavor and silky texture."

The Ninth Circuit has held that "generalized, vague and unspecific assertions constitut[e] mere 'puffery' upon which a reasonable consumer [cannot] rely." Glen Holly Entm't, Inc. v. Tektronix Inc., 343 F.3d 1000, 1015 (9th Cir. 2003) (citations omitted). In Southland Sod Farms v. Stover Seed Co., the court stated that "[w]hile product superiority claims that are vague or highly subjective often amount to nonactionable puffery, 'misdescriptions of specific or absolute characteristics of a product are actionable.'" 108 F.3d 1134, 1145 (9th Cir. 1997) (quoting Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc., 911 F.2d 242, 246 (9th Cir. 1990)). The Southland Sod court examined two advertisements: "Less is More" and "50% Less Mowing" and determined the former was "precisely the type of generalized boasting upon which no reasonable buyer would rely" and the latter was a "specific and measurable

advertisement claim of product superiority based on product testing." Id.

Here, the term "premium" is puffery. Ghirardelli's use of "premium" in the context of "Premium Baking Chips" and "premium ingredients" is similar to Southland Sod's "Less is More," as opposed to "50% Less Mowing." There is no obvious way to measure "premium." Defendant cites Viggiano v. Hansen Natural Corp., 944 F. Supp. 2d 877, 894 (C.D. Cal. 2013), where, in the context of a breach of express warranty claim, the plaintiff alleged that "premium soda" was a warranty that was breached because the soda has less than premium ingredients due to the presence of sucralose and acesulfame potassium. The district court determined the "term 'premium' [to be] mere puffery; it has no concrete, discernable meaning in the diet soda context." Id. This reasoning is directly applicable to plaintiffs' claim that Ghirardelli's product is not "premium" because the product is not made from top quality, premium ingredients.

Rather than grappling directly with the cases defendant cites, plaintiffs attempt to distinguish Viggiano and other cases using parenthetical statements. This is not persuasive. Viggiano and Hunter v. Nature's Way Products, LLC, No. 16-cv-532-WQH-BLM, 2016 WL 4262188, at *9 (S.D. Cal. Aug. 12, 2016), both found the term "premium" to be mere puffery. Moreover, the cases that plaintiffs cite do not counsel a different conclusion because those cases also stand for the proposition that the difference between statement of fact and puffery rests on the specificity or generality of the claim. E.g., Newcal Indus., Inc. v. Ikon Office Sol., 513 F.3d 1038, 1052–53 (9th Cir. 2008) (holding the term "flexibility" in the statement "that [the defendant] [] would deliver 'flexibility' in [its] 'cost-per-copy contracts and that [it] would lower copying costs for consumers" to be puffery (second alteration in original)).

In sum, the use of the word "premium" is generalized boasting upon which no reasonable consumer would rely.

### c. The Product's Packaging—Depictions on the Label

As part of their argument that the product's label is deceptive, plaintiffs state that the package includes images of white chocolate chips and baking recipes. Opp. at 8.

11

1  Defendant responds that simply calling a picture of a cookie a "white chocolate chip
2  cookie" does not make it so. Reply at 8. Though the parties are not particularly clear, the
3  court understands plaintiffs as arguing that the picture of a cookie with white chips on the
4  front of the package and the recipe for "Ghirardelli Macadamia White Chip Cookies" on
5  the back of the package contribute to the overall deception.

6  In Williams v. Gerber Products Co., 552 F.3d at 939, the defendant marketed a
7  "Fruit Juice Snacks" product that displayed images of a number of different fruits in
8  addition to a statement that Fruit Juice Snacks were made with fruit juice and other all-
9  natural ingredients. The Ninth Circuit determined that a reasonable consumer could be
10 deceived by the images depicting "a number of different fruits, potentially suggesting
11 (falsely) that those fruits or their juices are contained in the product." Id. Thus, deceptive
12 images, especially when combined with deceptive statements, may deceive a reasonable
13 consumer.

14 In Williams, the product depicted images of fruit so it was reasonable to conclude
15 that those fruits or their juices were in the product. Here, the product depicts an image of
16 a cookie with chips, so it is reasonable to conclude that those chips are in the product.
17 Yet, plaintiffs would have the court go further and find that the image of chips in a cookie
18 implies or communicates something about the nature or quality of the chips depicted in
19 the image. In other cases, courts have dismissed claims that images of fruits or
20 vegetables implied that the product was healthy and contains a significant amount of
21 those fruits or vegetables. See, e.g., Jonathan Chuang v. Dr. Pepper Snapple Grp., Inc.,
22 No. CV 17-01875-MWF, 2017 WL 4286577, at *4 (C.D. Cal. Sept. 20, 2017) (collecting
23 cases). The common thread running through these cases is that it would be
24 unreasonable to draw a specific qualitative message about the product from an image on
25 the product. For example, in Romero v. Flower Bakeries, LLC, No. 14-cv-05189-BLF,
26 2016 WL 469370, at *6–7 (N.D. Cal. Feb. 8, 2016), the court reasoned that the "word
27 'wheat' combined with 'wholesome wheat' and 'healthy grains' or 'Healthy White'
28 alongside images of wheat stalks and honey pots could lead a reasonable consumer to

12

conclude that the breads 'contain a significant amount of whole wheat and are thus healthier than other white breads.'"

Applying here, it is not reasonable to conclude from an image of a cookie with chips a specific message about the quality of those chips. This is the difference between concluding on the one hand, that the product contains chips and on the other hand, that the chips contain chocolate. Williams endorses the former conclusion but does not mandate the latter. The image is further distinguishable from Williams because the package contains no affirmative statements or representations that would support a qualitative assumption that the chips are made of chocolate.

This same reasoning applies to the recipe for Ghirardelli Macadamia White Chip Cookies. The recipe invites the consumer to use the white chips to create a cookie. It makes no affirmative statement that it is a chocolate cookie and reading a message into that recipe is not plausible. Thus, the image and recipe depicted on the package do not support plaintiffs' claims.

### d. The Product's Packaging—Ingredient List

Defendant relies on the product's ingredient list, which does not include ingredients that meet the FDA definition of white chocolate, as a cure to any customer confusion. According to defendant, the ingredient list dispels any possible confusion on the part of plaintiffs (or the reasonable consumer) that the product does not contain chocolate. Mtn. at 9. Plaintiffs argue that the ingredient list is not a defense to otherwise misleading advertising. Opp. at 10.

In some cases, the ingredient list cannot be used to cure deceptive statements. This rule is exemplified by Williams, 552 F.3d at 939–40, which held that reasonable consumers are not "expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box." Put differently, a defendant cannot "mislead consumers and then rely on the ingredient list to correct those misinterpretations and provide a shield for liability for the deception. Instead, reasonable consumers expect that the ingredient list contains more detailed

information about the product that confirms other representations on the packaging." Id.; Gregorio v. Clorox Co., No. 17-CV-03824-PJH, 2018 WL 732673, at *5 (N.D. Cal. Feb. 6, 2018) (applying Williams to find reasonable consumer does not expect further investigation to contradict the packaging's other representations).

However, Williams' holding is not a license to entirely disregard the ingredient list. As stated in Ebner, 838 F.3d at 966, "Williams stands for the proposition that if the defendant commits an act of deception, the presence of fine print revealing the truth is insufficient to dispel that deception." But, where "there is no deceptive act to be dispelled" and no other statement or other depiction that could mislead the reasonable consumer, then it is not plausible that a significant portion of the general consuming public could be deceived. Id. ("In the absence of any statement or other depiction anywhere on the package about lip product accessibility, we conclude that it is not plausible that 'a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled' into thinking the entire lip bullet will clear the tube's opening." (citation omitted)).

District courts also recognize that where the actual ingredients are disclosed, a plaintiff may not ignore the ingredient list. In Clark v. Perfect Bar, LLC, No. C 18-06006 WHA, 2018 WL 7048788, at *1 (N.D. Cal. Dec. 21, 2018), the court determined that no reasonable consumer could be deceived concerning the product's sugar content when the product's label plainly disclosed the amount of sugar in the product. The Clark court summarized as follows: "Reasonable purchasers could decide for themselves how healthy or not the sugar content would be. No consumer, on notice of the actual ingredients described on the packaging including honey and sugar, could reasonably overestimate the health benefits of the bar merely because the packaging elsewhere refers to it as a health bar . . . ." Id. The court in Truxel v. General Mills Sales, Inc., No. C 16-04957 JSW, 2019 WL 3940956, at *1, 4 (N.D. Cal. Aug. 13, 2019), arrived at a similar conclusion where the defendant provided truthful and required facts about breakfast cereals and snacks with high sugar content. Relying on Ebner, the court stated

14

1 that Williams "did not hold that litigants may ignore the information on a product's label."

2 Id. at *4. The court found that the plaintiffs could not state a claim where "the actual ingredients were fully disclosed and it was up to the Plaintiffs, as reasonable consumers, to come to their own conclusions about whether or not the sugar content was healthy for them." Id.

Applying here, there is no affirmative statement of misrepresentation on the product label. As the foregoing analysis demonstrates, the remaining references on the product label (the terms "white chips" and "premium" and the images and recipe) are not deceptive. Without a deceptive act, Williams does not apply. Ebner, 838 F.3d at 966. Plaintiffs and the general consuming public are not free to ignore the ingredient list that does not include the words chocolate or cocoa. Accordingly, it is not plausible that a reasonable consumer would be deceived by the product's packaging.

### e. Facts and Circumstances Other than Product Label

The parties dispute the significance of three factors external to the product packaging: images from defendant's website, whether Ghirardelli previously produced white chocolate and then switched to a product made of ingredients other than chocolate, and the product's placement near other chocolate in grocery and other types of stores.

#### i. Defendant's Website

First, defendant takes issue with a thumbnail image from its website that includes the word "chocolate" in the Ghirardelli logo. Defendant contends that plaintiffs did not allege they purchased their Classic White Chips on defendant's website or otherwise relied on the website in purchasing the product. Mtn. at 11. Plaintiffs argue that the reference to chocolate illustrates Ghirardelli's overall deceptive labeling, advertising, and marketing of the product. Opp. at 15.

The court agrees with defendant that assessing a website with regard to plaintiffs' claims is not appropriate when plaintiffs did not purchase the product or allege that they used the website. See, e.g., Kane v. Chobani, Inc., No. 12-CV-02425-LHK, 2013 WL 5289253, at *8 (N.D. Cal. Sept. 19, 2013) (dismissing claims "based on Defendant's

statements on its website" where the plaintiffs did "not allege that they ever viewed Defendant's website").

Even if the court were to consider the website as part of defendant's overall advertising, the word chocolate, contained in the Ghirardelli logo and relegated to a minor position on defendant's website, is not connected to the Classic White Chips product. Similar to interpreting images of a cookie on the package's label, it is unreasonable to infer that the word "chocolate" in the Ghirardelli's logo on its website (especially when the company's name is Ghirardelli Chocolate Co.) translates into a qualitative message about one of Ghirardelli's products marketed on its website. Moreover, the Ghirardelli logo on the product itself does not contain the word "chocolate," which underlines the implausibility of plaintiffs' claims.

### ii. Bait & Switch

Second, defendant disputes plaintiffs' allegations with respect to a "bait & switch" to go from one product containing white chocolate to one that does not contain chocolate. Mtn. at 12. Defendant also argues that plaintiffs have not alleged any reliance on the supposed bait & switch. Plaintiffs do not respond to this argument in their opposition.

The court agrees with defendant. Assuming plaintiffs' allegations are true, there are no factual allegations that plaintiffs relied on Ghirardelli's previous white chocolate chips packaging.

### iii. Product Placement

Third, defendant takes issue with plaintiffs' reference to where the product is placed in stores. Ghirardelli argues that plaintiffs have not alleged any reliance by them on the product location and, further, that third parties (not defendant) are responsible for choosing the product's location. Mtn. at 12. According to plaintiffs, their allegations that they relied on the product's packaging included its location. Additionally, defendant's placement in stores provides relevant context concerning deception. Opp. at 14–15.

As a starting point, the complaint does not allege that defendant controls third parties that stock grocery stores and other locations. Therefore, to the extent plaintiffs

16

1 argue that Ghirardelli "strategically sells the Product next to its other chocolate chip
2 varieties" (Opp. at 15), this is unsupported by the complaint. As defendant points out,
3 courts have rejected claims where the plaintiff fails to allege sufficient facts that third
4 parties control the placement of products. See, e.g., Parent v. Millercoors LLC, No. 15-
5 cv-1204-GPC-WVG, 2016 WL 3348818, at *7 (S.D. Cal. June 16, 2016) (finding
6 allegations that the defendant required retail establishments to stock the product in a
7 certain section to be unsubstantiated). Instead, the complaint can be read as stating that
8 third parties often choose to display defendant's products together. For example,
9 plaintiffs assert that "there are other versions of the Product within the same line of
10 products, such as milk chocolate, semi-sweet chocolate, and bittersweet chocolate,
11 which are displayed for sale directly adjacent to the Product." Compl. ¶ 39. This factual
12 allegation goes to the context in which a reasonable consumer views the product rather
13 than plaintiffs' reliance on the product's location and who determines that location.

Yet, the ultimate impact of such placement is not particularly clear. Plaintiffs argue that placement of the product near other Ghirardelli's products means that white chips are chocolate. It could just as easily mean that the products are all made by the same manufacturer and therefore grouped together to distinguish from products made by other manufacturers. It is up to the consumer to pick up the product and determine what it contains and whether he or she wants that product. Moreover, that a package marked white chips is closely placed alongside packages marked semi-sweet chocolate, bitter-sweet chocolate, or milk chocolate only serves to highlight the absence of the word "chocolate" in the description of "white chips." Given the lack of false or deceptive statements, the placement of the product among other Ghirardelli products does not support plaintiffs' false advertising claims.

In sum, given the lack of affirmative deceptive statements combined with an ingredient list that dispels any confusion about the actual content of the product, the court finds that plaintiffs' UCL, FAL, and CLRA claims all fail to state a claim as a matter of law. Accordingly, the court need not reach defendant's alternative arguments regarding

standing and Federal Rule of Civil Procedure 9(b)'s heightened pleading requirements.

## CONCLUSION

For the foregoing reasons, defendant's motion to dismiss plaintiffs' first through third causes of action is GRANTED and plaintiffs' claims are DISMISSED WITHOUT PREJUDICE. Because defendant's product packaging would not change in an amended complaint, the court is skeptical that the complaint can be amended to state a claim. That said, it is not clear that amendment would be futile. Thus, plaintiffs shall file any amended complaint within 21 days of the date of this order. No new parties or causes of action may be pleaded without leave of court or the agreement of defendant.

**IT IS SO ORDERED.**

Dated: April 8, 2020

/s/ Phyllis J. Hamilton
PHYLLIS J. HAMILTON
United States District Judge