**CLARKSON LAW FIRM, P.C.**
Ryan J. Clarkson (SBN 257074)
rclarkson@clarksonlawfirm.com
Shireen M. Clarkson (SBN 237882)
sclarkson@clarksonlawfirm.com
Matthew T. Theriault (SBN 244037)
mtheriault@clarksonlawfirm.com
Bahar Sodaify (SBN 289730)
bsodaify@clarksonlawfirm.com
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069
Tel: (213) 788-4050
Fax: (213) 788-4070

*Attorneys for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LINDA CHESLOW and STEVEN PRESCOTT, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>GHIRARDELLI CHOCOLATE COMPANY, and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. 4:19-cv-07467-PJH<br><br>FIRST AMENDED CLASS ACTION COMPLAINT<br><br>1. VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW, BUSINESS AND PROFESSIONS CODE § 17200, *et seq.*<br>2. FALSE AND MISLEADING ADVERTISING IN VIOLATION OF BUSINESS AND PROFESSIONS CODE § 17500, *et seq.*<br>3. VIOLATION OF CALIFORNIA CONSUMERS LEGAL REMEDIES ACT, CIVIL CODE § 1750, *et seq.*<br><br>DEMAND FOR JURY TRIAL |

Plaintiffs Linda Cheslow and Steven Prescott ("Plaintiffs"), individually and on behalf of all other similarly situated purchasers (the "Class") of  Ghirardelli's Premium Baking Chips Classic White Chips (the "Product") bring this class action against Ghirardelli Chocolate Company ("Ghirardelli" or "Defendant") and Does 1 through 10, inclusive (collectively, "Defendants"), and allege as follows.

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Ste. 804
Los Angeles, CA 90069

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Ste. 804
Los Angeles, CA 90069

## SUMMARY OF THE ACTION

1.      Ghirardelli Chocolate Company, a company synonymous with chocolate and the number one seller of premium chocolate in the United States, also sells fake white chocolate baking chips and tries to pass them off as white chocolate.  Ghirardelli's profits are attributable, in part, to its deceptive labeling and advertising of its purported white chocolate product called Ghirardelli Premium Baking Chips Classic White Chips.[1]  In reality, the Product does not contain white chocolate, though through an intentionally deceptive labeling scheme, reasonable consumers are given the impression the Product contains white chocolate:



2.      Both named-Plaintiffs reasonably believed that the Product contained white chocolate because: (1) the Product is labeled as "White," which, as described below, has been historically used to describe a distinct and real type of chocolate, and the understanding of both named-Plaintiffs is that the term "White" describes a distinct and real type of chocolate; (2) the Product label has pictures of what Ghirardelli intended to be white chocolate chips, and both named-Plaintiffs viewed these pictures and reasonably believed that they depicted white chocolate chips when they purchased the Product; (3) the Product label has pictures of what Ghirardelli intended to be white chocolate chip cookies, and both named-Plaintiffs viewed and relied on the depictions of white chocolate chip cookies when they purchased the Product; and (4) the Product was placed among other chocolate products, which further led the named-Plaintiffs to believe that

---

[1] *See* screenshots from Defendant's official website, https://www.ghirardelli.com/classic-white-baking-chips-%2812-ct---11-oz-ea%29-61065cs (last visited April 29, 2020).

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Ste. 804
Los Angeles, CA 90069

they were purchasing white chocolate.  Upon information and belief, Ghirardelli maintains control over the placement of the Products within retail stores, including the stores where the named-Plaintiffs purchased the Products.

3.     As identified with particularity below, scores of other consumers reasonably also believed they were purchasing white chocolate when they purchased the Product.

4.     The named-Plaintiffs and the consumers identified below are not alone in their belief. A widespread consumer study was conducted to determine whether and to what extent Ghirardelli's labeling misleads consumers into believing that the Product contains white chocolate.  A true and correct copy of this study is attached to this Complaint as Exhibit A, and the contents of the Exhibit A report are incorporated herein.  A summary of the findings are as follows:

- Based on a review of the package for Ghirardelli's Classic White Chips, **91.88 percent** of the respondents indicated that they believe the Product contained white chocolate while 8.12 percent did not think the Product contains white chocolate. A statistically significantly larger proportion (z-score = 11.49, p<.05) of respondents believe the Product contained white chocolate.

- When planning to bake with white chocolate chips, **92.19 percent** of the respondents said they would consider purchasing Ghirardelli's Classic White Chips compared with 7.81 percent said they would not. A statistically significantly larger proportion (z-score = 11.54, p<.05) of respondents would purchase this Product if they were planning on baking with white chocolate chips.

- With respect to the question that asked "If, after purchasing this Product, you learned that the Product contained no white chocolate or chocolate of any kind, would you be less or more satisfied with your purchase?", 64.69 percent of the respondents indicated that they would be "much less satisfied" or "somewhat less satisfied" while 35.31 percent of the respondents would be "neither less nor more satisfied," "somewhat more satisfied," or "much more satisfied." A statistically significantly larger proportion (z-score = 5.04, p<.05) of respondents would be less satisfied if

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Ste. 804
Los Angeles, CA 90069

they found out that the Product contained no white chocolate or chocolate of any kind rather than neutral or more satisfied.

- With respect to the question that asked "If, after purchasing this product, you were told or otherwise learned that the Product contained no white chocolate or chocolate of any kind, would you be less or more likely to purchase the Product again?", 65.32 percent of the respondents indicated that they would be "much less likely to purchase again" or "somewhat less likely to purchase again" while 34.68 percent of the respondents would be "neither less nor more likely to purchase again," "somewhat more likely to purchase again," or "much more likely to purchase again." A statistically significantly larger proportion (z-score = 5.24, p<.05) of respondents would be less likely to purchase the Product again if they were told or otherwise learned that the product contained no white chocolate or chocolate of any kind.

**The survey results demonstrate that consumers reasonably believe that the Product contains white chocolate and that this belief is material to their decision to purchase.**

5.      Upon information and belief, Ghirardelli used to sell real white chocolate baking chips in the recent past. Ghirardelli used actual white chocolate to develop a loyal consumer base of the Product and propel the company to the self-described #1 premium chocolate brand in the U.S. But at some point, Ghirardelli pulled a classic "bait and switch," covertly swapping out its real white chocolate for fake white chocolate.

6.      The Product packaging and official website advertises the Product as "Classic White" "Premium Baking Chips" which, together with Ghirardelli's other advertising and business practices, misleads reasonable consumers into thinking that the Product contains premium ingredients, not fake white chocolate. "Premium" is defined as "of exceptional quality or amount."[2]

7.       The named-Plaintiffs and reasonable consumers do not expect the Product to include fake white chocolate made of inferior—not premium—ingredients like hydrogenated and palm oils,

---

[2] *Premium,* MERRIAM-WEBSTER.COM, https://www.merriam-webster.com/dictionary/premium (last visited on April 29, 2020).

FIRST AMENDED CLASS ACTION COMPLAINT

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Ste. 804
Los Angeles, CA 90069

especially when manufactured and sold by Ghirardelli Chocolate Company, which is synonymous with chocolate.

8.     Ghirardelli does not include "White" on the Product label merely to describe its fake chocolate's color. Indeed, neither white chocolate nor Ghirardelli's  fake white chocolate are, objectively speaking, white in color.  Ghirardelli intentionally uses the term "White" to capitalize on consumers' common understanding of well-established chocolate labeling. Since the 1930's, chocolate has been distinctly labeled based on the chocolate's physical makeup: (1) milk chocolate; (2) dark chocolate; (3) semisweet chocolate; and (4) white chocolate. White chocolate is distinguished from these other chocolates in that it contains much higher percentages of cacao butter and smaller percentages of cocoa powder, which gives it its lighter, yellowish color (which, in 1930, was named "white" chocolate by its creator, Nestle). Not only does white chocolate contain cacao (i.e., chocolate) as a matter of fact, the Food and Drug Administration has set strict guidelines on the labeling of chocolate based on their differences in cacao/cocoa percentages. Ghirardelli intentionally used the "White" labeling to capitalize on consumers' understanding of these well-established chocolate descriptors.

9.     Not only did Ghirardelli create a cheaper product that contained no chocolate, but it then deceptively passed it off as the real thing by placing its fake white chocolate Product among real chocolate products, including the ones it manufactures and sells.

## WHAT IS CHOCOLATE

10.     Chocolate is derived from Theobroma cacao, also known as the cacao tree or cocoa tree. The cacao/cocoa tree, native to central Mexico, grows upwards to 30 feet. It produces a pod-like fruit which, when matured, contains about 40 to 50 beans.

11.     All forms of chocolate are derived from cacao beans and only cacao beans. To create chocolate, the cacao beans are separated from the pod and the pulp within the pod. The beans then go through a process of fermentation, drying and roasting. The roasted beans are then crushed allowing the removal their outer hulls. What remains – the nibs – are ground together to form a paste-like chocolate liquor. This chocolate liquor is the starting point of all chocolate

FIRST AMENDED CLASS ACTION COMPLAINT

products. It is mixed with other ingredients, including sugar, milk, additional cacao fat or butter (cacao bean contain cacao fat/butter), and various spices, which when blended together with emulsifiers, create the final chocolate product consumers purchase.

12.     For nearly a century, the type of chocolate consumers purchase has had uniform, commonly-understood names or designations:

        a.      "Chocolate liquor" is 100% cacao/cocoa, containing no added ingredients, the raw result from processing the cacao beans, as described;

        b.      "Milk chocolate" combines chocolate liquor (including cocoa solids and cacao butter) with sugar, milk and an emulsifier (soy lecithin). Under today's Food and Drug Administration mandates, "milk chocolate" must contain at least 10% chocolate liquor and 12% milk. 21 C.F.R. § 163.111(a)(2);

        c.      "Dark chocolate" combines chocolate liquor and sugar. It is darker than milk chocolate due to the absence of milk. To be properly labeled as "dark chocolate," it must contain at least 15% chocolate liquor. 21 C.F.R. § 163.123(a)(2)[3];

        d.      "Semisweet chocolate" and "bittersweet chocolate" must contain at least 35% chocolate liquor. 21 C.F.R. § 163.123(a)(3); and

        e.      "White chocolate" must contain at least 20% cacao fat and at least 3.5% of milkfat under the FDA. 21 C.F.R. § 163.124.

### HISTORY OF CHOCOLATE PRODUCTION

13.     Archeological evidence demonstrates that Mesoamericans were processing and consuming cacao/cocoa since 1400 BC. Cacao/cocoa includes, among other things, phenylethylamine, a chemical which, when ingested, triggers pleasure enhancing endorphins in the brain. Early Mesoamericans also learned that cocoa could be fermented into an intoxicating alcohol. Cocoa became so highly prized that cocoa beans became the currency of the Aztecs when they ruled central Mexico.

---

[3] Premium dark chocolate often contains a much higher percentage of chocolate liquor.

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Ste. 804
Los Angeles, CA 90069

14.     The Spanish discovered the intrinsic properties of cocoa and introduced it to Europe in the 1500s. The Spanish processed cocoa with cane sugar, resulting in a product closely resembling the chocolate that is eaten today. Chocolate trade quickly spread throughout Europe and, later, the US.

15.     Chocolate's popularity made it a commodity. The industrial revolution allowed companies like Cadbury, Nestle and Hershey to mass-produce chocolate products. Mass-production resulted in lower prices, meaning greater percentages of the population began enjoying chocolate products.

16.     Today, chocolate is a $40B global industry, and the US controls $13B. On average, each American consumes one pound of chocolate per year.

17.     There is evidence demonstrating the positive, physical effects of chocolate on humans, which is why the product has been sought after for thousands of years.  Chemicals in chocolate have been shown to trigger euphoria, the same endorphins that trigger the "in love" feeling in humans, which is why, not surprisingly, chocolate is a favorite gift on Valentine's Day. Studies have been conducted comparing chocolate consumption with sex. Among women, approximately 50% chose eating chocolate to having sex. In surveys measuring flavors, chocolate consistently remains the favorite. It not only tastes wonderful, but chocolate contains healthy antioxidants. Chocolate's ability to increase alertness and energy is well-documented, which is why chocolate has been standard issue to US servicemen since George Washington. The effects of chocolate are so well-known, it has been an integral part of the cultural psyche since the Aztecs. Even modern examples, like the 1971 film Willy Wonka & the Chocolate Factory and the 2000 film Chocolat, reference chocolate's impact on the culture. Diners would be hard-pressed to review a dessert menu that did not contain at least one chocolate dessert.

18.     Chocolate is perceived by reasonable consumers to be a unique, irreplaceable product. The Plaintiffs in this suit, the respective class, and reasonable consumers as a whole do not consider chocolate to be some pedestrian ingredient in the baking aisle of the grocery market. When baking, flour, sugar, baking powder, butter, etc., are all important, but when consumers

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Ste. 804
Los Angeles, CA 90069

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Ste. 804
Los Angeles, CA 90069

bake with chocolate, chocolate is the central ingredient; i.e., "*chocolate* cake," "*chocolate* soufflé," "*chocolate* chip cookies," etc. The Plaintiffs , and the prospective class they represent, and reasonable consumers as a whole thought they were purchasing real chocolate, not a cheap knock-off pretending to be chocolate.

## WHITE CHOCOLATE IS CHOCOLATE

19.     Consistent with the industry's classification of chocolates, *supra*, Plaintiffs, the prospective class members, and consumers as a whole understand that "white chocolate" contains chocolate derived from cocoa or cacao. White chocolate was introduced by Nestle in the 1930s.

20.     The Food and Drug Administration ("FDA") has issued regulations defining "white chocolate," and those regulations have been adopted by the State of California as part of the Sherman Food, Drug, and Cosmetic Law, California Health and Safety Code § 109875, *et seq*. Specifically, the FDA defines white chocolate as follows:

> (1) White chocolate is the solid or semi plastic food prepared by intimately mixing and grinding cacao fat with one or more of the optional dairy ingredients specified in paragraph (b)(2) of this section and one or more optional nutritive carbohydrate sweeteners and may contain one or more of the other optional ingredients specified in paragraph (b) of this section. White chocolate shall be free of coloring material. (2) White chocolate contains not less than 20 percent by weight of cacao fat…The finished white chocolate contains not less than 3 .5 percent by weight of milkfat...

Title 21 Code of Federal Regulations Section 163.124.

21.     One of the reasons the FDA established the foregoing standard of identity for white chocolate was due in part to "[r]educing economic deception and promoting honesty and fair dealing in the interest of consumers."[4]

## GHIRARDELLI MANUFACTURERS AND SELLS CHOCOLATE

22.     Ghirardelli is synonymous with "chocolate."  Ghirardelli was incorporated in 1852 and is the third-oldest chocolate company in the United States.  According to its website, Ghirardelli is one of the few chocolate companies in the United States that controls every aspect of its chocolate manufacturing process in order to produce the highest quality chocolate products. Ghirardelli is a

---

[4] *See, White Chocolate; Establishment of a Standard of Identity* (October 4, 2002), Federal Register: The Daily Journal of the United States Government, https://www.federalregister.gov/d/02-25252/p-7 (last visited April 29, 2020).

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Ste. 804
Los Angeles, CA 90069

1  multi-billion-dollar company[5] and a highly visible competitor in the global chocolate market. In

2  2018, Ghirardelli generated $4.4 billion dollars worldwide and $1.7 billion in North America.

3  According to its 2018 Annual Shareholder Report, Ghirardelli is the number one premium brand

4  of chocolate in the United States.

5       23.    Ghirardelli manufactures other chocolate varieties of the Product, which it sells

6  alongside its fake white chocolate Product at retail outlets throughout California and the United

7  States. Ghirardelli labels these other products by type of chocolate: "milk chocolate," "bittersweet

8  chocolate," and "semi-sweet." Therefore, the "white" in "white baking chips" deceives reasonable

9  consumers into thinking it represents the type of chocolate in the Product, *white* chocolate. True

10  and correct representations of some of Defendant's other versions of the Product within the same

11  line of products[6] are depicted below.



---

[5] *See* Ghirardelli's Annual Report to Stockholders and Other Reports, https://www.lindt-spruengli.com/fileadmin/user_upload/corporate/WEB_GB18_Gesamt_en_low.pdf (last visited April 29, 2020).

[6] There are six versions of the Product within the same line of products, including the Product: Milk Chocolate, Bittersweet Chocolate, Semi-Sweet Chocolate, Classic White, Grand Chips Semi-Sweet Chocolate, and Semi-Sweet Chocolate Mini.

9



24.     The named-Plaintiffs and consumers reasonably and detrimentally rely on Ghirardelli's representations of the Products as real chocolate, not fake chocolate, in making their purchase decisions.

25.     Ghirardelli is aware that reasonable consumers are misled into believing the Product contains real white chocolate but refuses to make any labeling and advertising changes, such as labeling its Product "Vanilla Flavored Chips," or "Vanilla Chips," or "Does not contain chocolate," or "not white chocolate," or the like, to dispel the consumer deception.

26.     In fact, consumers have complained about the Product on numerous consumer protection and retailer websites, such as Amazon.com, stating, "Because of Ghirardelli's reputation, I didn't look at the ingredient list when I purchased the white chips; this was a big mistake. There is no cocoa butter in them, and I was disgusted by the end product. I wasted over

$50 and hours of my time using this in a product that I was giving as a holiday gift. Needless to say, I threw the end product away […]." True and correct screenshots of the consumer reviews of the Product on the third party website Amazon.com are depicted below in Figure 1.

27.     Another consumer complained that the Product is "Not white chocolate. ... [T]hey are made from Palm Kernel oil, not cocoa butter. They are not white chocolate and they do not taste like white chocolate." *See* Figure 1, *infra.*

28.     Yet another consumer complained, "They don't show you the ingredient list because there is no chocolate in them." *See* Figure 1, *infra.*

29.     The Product misrepresents it contains white chocolate, as a consumer complained, "There is no cocoa butter in this product." *See* Figure 1, *infra.*

**Figure 1-3**: Screenshots below taken from Amazon.com revealing that consumers are misled by Ghirardelli's labeling and advertising of the Product to think that the Product contains white chocolate when it does not.

***Figure 1***.



***Figure 2***.



FIRST AMENDED CLASS ACTION COMPLAINT

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Ste. 804
Los Angeles, CA 90069

30.     Most consumers purchase the Product to bake with, as Plaintiffs did. Defendant advertises on its official website, as well on the Product packaging, baking recipes that require the use of the Product. However, because the Product does not contain white chocolate, it does not melt like chocolate. Yet, the Product's deceptive labeling and advertising leads reasonable consumers to believe that the Product is white chocolate and should therefore melt during baking. Thus, consumers are surprised when the Product does not melt. True and correct representations of the consumer reviews of the Product not melting as expected are depicted in Figures 4-5 below.

31.     In fact, Defendant advertises on its Product packaging that the Product will "[e]levate your baking from great to extraordinary with our top quality, premium ingredients to create a rich, smooth flavor and silky texture. [B]ake to impress." There is nothing "premium" about fake white chocolate and consumers cannot "bake to impress" because the Product does not contain, let alone taste or melt like, white chocolate.

32.     For example, one consumer complained, "…I cooked the white chocolate in a double boiler for 20 minutes, without any result, the chips turned into a mush the consistency of cream cheese, but wouldn't melt further. I have now learned that these chips aren't chocolate at all, it was such a waste of money!" *See* Figure 4, *infra*.

33.     Another consumer complained, "…They don't melt worth a darn, so don't try using them for dipping. I'm very unsatisfied!"  *See* Figure 5, *infra*.

///

///

FIRST AMENDED CLASS ACTION COMPLAINT

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Ste. 804
Los Angeles, CA 90069

34.    **Figure 4-5**: Screenshots below taken from Amazon.com revealing that consumers are misled by Ghirardelli's labeling and advertising of the Product as containing white chocolate and are therefore surprised when the Product does not melt as expected from white chocolate.

*Figure 4*.



*Figure 5*.



35.    The Product is labeled "white" and advertised as "Premium Classic White," on Defendant's official website, point of purchase display, and is offered for sale side-by-side with Defendant's milk chocolate and semi-sweet chocolate baking chips.

36.    The foregoing consumer reviews, in conjunction with Plaintiff's expert report, demonstrate that taken as a whole, the Product's labeling and advertising misleads reasonable consumers into believing it contains white chocolate, not fake chocolate.

FIRST AMENDED CLASS ACTION COMPLAINT

37.     Plaintiffs seek injunctive relief and restitution against Defendant for false and misleading advertising in violation of Business and Professions Code Section 17200, *et seq*., Business and Professions Code Section 17500, *et seq*., and Civil Code Section 1750, *et seq*. Defendant made and continues to make these false and misleading statements in its labeling and advertising of the Product. Compliance with remedial statutes like those underlying this lawsuit will benefit Plaintiffs, the putative class, consumers, and the general public.

38.     The false and misleading labeling and advertising of the Product violates the California Consumers Legal Remedies Act, particularly California Civil Code Sections 1770(a)(5), 1770(a)(7), and 1770(a)(9).  As such, Defendant has committed *per se* violations of Business and Professions Code Section 17200, *et seq*., and Business and Professions Code Section 17500.

39.     On June 12, 2019, the putative class provided Defendant with notice of these violations via certified U.S. mail pursuant to Civil Code Section 1750, *et seq*.

## JURISDICTION AND VENUE

40.     This Court has jurisdiction over all causes of action asserted herein pursuant to the California Constitution, Article VI, Section 10, because this case is a cause not given by statute to other trial courts.  Plaintiffs have standing to bring this action pursuant to Business and Professions Code Section 17200, *et seq*.

41.     Venue is proper in this Court because Plaintiff Cheslow purchased the Product in Sonoma County; Defendant receives substantial compensation from sales in Sonoma County; and Defendant made numerous misrepresentations which had a substantial effect in Sonoma County, including, but not limited to, label, point of purchase displays, and internet advertisements.

42.     Defendant is subject to personal jurisdiction in California based upon sufficient minimum contacts which exist between Defendants and California.  Defendants are authorized to do and doing business in California.

## PARTIES

43.     Plaintiff Cheslow is an individual residing in Santa Rosa, California. Plaintiff purchased the Product in California within the last four (4) years of the filing of this Complaint.

FIRST AMENDED CLASS ACTION COMPLAINT

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Ste. 804
Los Angeles, CA 90069

Specifically, Plaintiff Cheslow purchased the Product in or around December 2018 at a Target store located at 950 Coddingtown Center in Santa Rosa, California. In making her purchase decision, Plaintiff Cheslow relied upon the labeling and advertising of the Product, which she reasonably believed to be "white chocolate," not fake white chocolate.  Specifically, Plaintiff Cheslow wanted white chocolate chips to bake holiday cookies, bars and brownies, which she gives out to family, friends and neighbors.  She found the the Product in a section that was labelled "chocolate chips." When Plaintiff Cheslow saw the pictures of the white chocolate chips and white chocolate chip cookies, and the "Premium" and "Classic White Chips" labeling, taken together, she believed the product contained white chocolate.  The product was also displayed amongst other Ghirardelli chocolate products, and all of these products in packaging that looks the same.  Plaintiff Cheslow did not spend minutes and minutes comparing the Product's front and back label to determine whether it contained chocolate because she assumed it contained chocolate based on the reasons identified above.  The fact that the Product was nestled among several other products containing the word "chocolate" did nothing to alert her that the Product did not contain chocolate.  In fact, it did just the opposite: Plaintiff Cheslow assumed the Classic White Chips contained chocolate because she found them in the middle of several other chocolate products.  Given all of this, she assumed that she was purchasing white chocolate chips.  There was nothing conspicuous about the packaging to alert Plaintiff Cheslow that she was not purchasing white chocolate, for instance, like the words "imitation chocolate."  Ms. Cheslow would not have purchased the Product had she known it did not contain white chocolate.

44.     Plaintiff Prescott is an individual residing in Santa Cruz, California. Plaintiff Prescott purchased the Product in California within the last four (4) years of the filing of this Complaint. Specifically, Plaintiff Prescott purchased the Product in late 2018 or early 2019 at a Target store located at 1825 41st Avenue in Capitola, California. In making his purchase decision, Plaintiff Prescott relied upon the labeling and advertising of the Product, which he reasonably believed to be "white chocolate," not fake white chocolate.

///

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Ste. 804
Los Angeles, CA 90069

45.    The labeling and advertising of the Product were prepared and approved by Defendant and its agents and disseminated through its packaging, label, and national advertising media, containing the misrepresentations alleged herein and designed to encourage consumers to purchase the Product. Plaintiffs purchased the Product in reasonable and detrimental reliance upon these "white chocolate" misrepresentations.   Had Plaintiffs known the Product was not white chocolate, they would not have purchased the Product. Plaintiffs would purchase the Product again in the future if they could be sure that the Product was white chocolate or if Defendant dispelled any confusion that the Product does not contain white chocolate in its labeling, packaging, and advertising of the Product.

46.    Ghirardelli Chocolate Company is a corporation headquartered in California. Ghirardelli maintains its principal place of business at 1111 139th Avenue, San Leandro, California 94578. Ghirardelli offers the Products for sale at stores and retailers as well as through the internet, throughout the nation, including the State of California. Ghirardelli, directly and through its agents, has substantial contacts with and receives substantial benefits and income from and through the State of California.   Ghirardelli is one of the owners and distributors of the Product and is the company that created and/or authorized the false, misleading, and deceptive advertisements and packaging for the Product.

47.    The true names and capacities, whether individual, corporate, associate, or otherwise of certain manufacturers, distributors, and/or their alter egos sued herein as DOES 1 through 10 inclusive are presently unknown to Plaintiffs who therefore sue these Defendants by fictitious names.  Plaintiffs will seek leave of this Court to amend the Complaint to show their true names and capacities when the same have been ascertained. Plaintiffs are informed and believe and based thereon allege that DOES 1 through 10 were authorized to do and did business in Sonoma County. Plaintiffs are further informed and believe and based thereon allege that DOES 1 through 10 were and/or are, in some manner or way, responsible for and liable to Plaintiffs for the unfair business practices set forth herein.

///

FIRST AMENDED CLASS ACTION COMPLAINT

48.     Plaintiffs are informed and believe and based thereon allege that at all times relevant herein each of the Defendants was the agent, servant, employee, subsidiary, affiliate, partner, assignee, successor-in-interest, alter ego, or other representative of each of the remaining Defendants and was acting in such capacity in doing the things herein complained of and alleged.

49.     In committing the wrongful acts alleged herein, Defendants planned and participated in and furthered a common scheme by means of false, misleading, deceptive, and fraudulent representations to induce members of the public to purchase the Product. Defendants participated in the making of such representations in that each did disseminate or cause to be disseminated said misrepresentations.

50.     Defendants, upon becoming involved with the manufacture, distribution, advertising, labeling, marketing, and sale of the Product, knew or should have known that the claims about the Product and, in particular, the claims suggesting that the Product is white chocolate when it is not. Defendants affirmatively misrepresented the nature and characteristics of the Product in order to convince the public to purchase and consume the Product, resulting in, upon information and belief, profits of millions of dollars or more to Defendants, all to the detriment of the consuming public. Thus, in addition to the wrongful conduct herein alleged as giving rise to primary liability, Defendants further aided and abetted and knowingly assisted each other in breach of their respective duties and obligations as herein alleged.

## FACTS AND DEFENDANTS' COURSE OF CONDUCT

51.     Defendant's labeling, advertising, marketing, and packaging of the Product as containing white chocolate is false, misleading, and deceptive because the Product does not contain any white chocolate. Accordingly, reasonable consumers are consistently misled into paying for the Product without knowing that it is devoid of white chocolate.

52.     The Food and Drug Administration ("FDA") has issued regulations defining "white chocolate," and those regulations have been adopted by the State of California as part of the Sherman Food, Drug, and Cosmetic Law, California Health and Safety Code § 109875, *et seq*. Specifically, the FDA defines white chocolate as follows:

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Ste. 804
Los Angeles, CA 90069

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Ste. 804
Los Angeles, CA 90069

(1) White chocolate is the solid or semi plastic food prepared by intimately mixing and grinding cacao fat with one or more of the optional dairy ingredients specified in paragraph (b)(2) of this section and one or more optional nutritive carbohydrate sweeteners and may contain one or more of the other optional ingredients specified in paragraph (b) of this section. White chocolate shall be free of coloring material. (2) White chocolate contains not less than 20 percent by weight of cacao fat…The finished white chocolate contains not less than 3 .5 percent by weight of milkfat...

Title 21 Code of Federal Regulations Section 163.124.

53.     One of the reasons the FDA established the foregoing standard of identity for white chocolate was due in part to "[r]educing economic deception and promoting honesty and fair dealing in the interest of consumers."[7] Yet, Defendant has done the opposite here by misleading unsuspecting consumers about the purported presence of white chocolate in its Product.

54.     Plaintiffs are not alleging non-compliance with the FDCA or the FDA's standard of identity for white chocolate; Plaintiffs are alleging that Defendant misrepresents the Product as white chocolate when it is not.

55.     The Product does not contain any white chocolate, cocoa butter, cocoa fat, or other cocoa derivative as required by the FDA. Instead, the Product contains: Sugar, Palm Kernel Oil, Whole Milk Powder, Nonfat Dry Milk, Palm Oil, Soy Lecithin, and Vanilla Extract. Despite the foregoing, the Product is advertised as if it contains white chocolate.

56.     Plaintiffs and reasonable consumers reasonably believed the Product contains white chocolate based on the labeling, advertising, and marketing of the Product. Also, there are other versions of the Product within the same line of products, such as milk chocolate, semi-sweet chocolate, and bittersweet chocolate, which are displayed for sale directly adjacent to the Product, thereby further adding to the deception that the Product is white chocolate.

57.     The Product is marketed and sold at retail stores throughout California and the United States.

58.     In addition to the packaging and labeling of the Products, Defendant's official website (https://www.ghirardelli.com/) misleads consumers to believe that the Product contains white chocolate.

---

[7] *See, White Chocolate; Establishment of a Standard of Identity* (October 4, 2002), Federal Register: The Daily Journal of the United States Government, https://www.federalregister.gov/d/02-25252/p-7 (last visited April 29, 2020).

FIRST AMENDED CLASS ACTION COMPLAINT

59.     After receiving statutory notice of these claims on June 12, 2019, Ghirardelli implemented advertising changes on its official website in regards to the Product. The screenshots that appear herein were included in said June 12 letter and show what the website looked like prior to Defendant receiving statutory notice and making subsequent changes.

**Figure 3**: Screenshot below of Defendant's official website taken June 12, 2019 depicts the word "chocolate" on the Product packaging (circled in red).



CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Ste. 804
Los Angeles, CA 90069

FIRST AMENDED CLASS ACTION COMPLAINT

1

2

**Figure 4:** Screenshot below of Defendant's official website taken September 5, 2019 reveals that the word "chocolate" on the Product packaging has been removed (circled in red).



<div style="writing-mode: vertical">CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Ste. 804
Los Angeles, CA 90069</div>

60.     When purchasing the Product, Plaintiffs relied upon the label "white" and "Premium White" and "Classic White" as well as the overall labeling, advertising, and marketing of the Product as white chocolate, and was led to reasonably believe based on the foregoing, that the Product contains white chocolate. Had Plaintiffs known the Product did not contain white chocolate, then they would not have purchased it.  However, if the Product were to actually contain white chocolate or Defendant would dispel the deception that the Product does not contain white chocolate in its labeling, packaging, and advertising, Plaintiffs would repurchase it in the future.

61.     Upon information and belief, during the course of its false, misleading, and deceptive labeling and advertising campaign, Defendant has sold millions of units or more of the Product based upon Defendant's false promises. Plaintiff and the Class have suffered injury in fact and have lost money as a result of Defendant's false representations.

///

///

FIRST AMENDED CLASS ACTION COMPLAINT

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Ste. 804
Los Angeles, CA 90069

**CLASS ACTION ALLEGATIONS**

62.    Plaintiff brings this action on her own behalf and on behalf of all other persons similarly situated.  The Class which Plaintiff seeks to represent comprises:

> "All persons who purchased the Product in the United States or, alternatively, in California, for personal consumption and not for resale during the time period of four years prior to the filing of the complaint through the present."

Said definition may be further defined or amended by additional pleadings, evidentiary hearings, a class certification hearing, and orders of this Court.

63.    The Class is comprised of millions of consumers throughout United States and/or State of California. The Class is so numerous that joinder of all members is impracticable and the disposition of their claims in a class action will benefit the parties and the Court.

64.    There is a well-defined community of interest in the questions of law and fact involved affecting the parties to be represented in that the Class was exposed to the same common and uniform false and misleading advertising and omissions. The questions of law and fact common to the Class predominate over questions which may affect individual Class members.  Common questions of law and fact include, but are not limited to, the following:

a.    Whether Defendant's conduct is an unlawful business act or practice within the meaning of Business and Professions Code section 17200, *et seq.*;

b.    Whether Defendant's conduct is a fraudulent business act or practice within the meaning of Business and Professions Code section 17200, *et seq.*;

c.    Whether Defendant's conduct is an unfair business act or practice within the meaning of Business and Professions Code section 17200, *et seq.*;

d.    Whether Defendant's advertising is untrue or misleading within the meaning of Business and Professions Code section 17500, *et seq.*;

e.    Whether Defendant made false and misleading representations in its advertising and labeling of the Product;

FIRST AMENDED CLASS ACTION COMPLAINT

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Ste. 804
Los Angeles, CA 90069

f.   Whether Defendant knew or should have known that the representations were false; and,

g.   Whether Defendant represented that the Products have characteristics, benefits, uses, or quantities which they do not have.

65.   Plaintiff's claims are typical of the claims of the proposed Class, as the representations and omissions made by Defendant are uniform and consistent and are contained in advertisements and on packaging that was seen and relied on by Plaintiffs and members of the Class.

66.   Plaintiffs will fairly and adequately represent and protect the interests of the proposed Class.  Plaintiffs have retained competent and experienced counsel in class action and other complex litigation.

67.   Plaintiffs and the Class have suffered injury in fact and lost money as a result of Defendant's false, deceptive, and misleading representations.

68.   Plaintiffs would not have purchased the Product but for the representations by Defendant about the Product.

69.   The Class is identifiable and readily ascertainable.  Notice can be provided to such purchasers using techniques and a form of notice similar to those customarily used in class actions, and by internet publication, radio, newspapers, and magazines.

70.   A class action is superior to other available methods for fair and efficient adjudication of this controversy. The expense and burden of individual litigation would make it impracticable or impossible for proposed members of the Class to prosecute their claims individually.

71.   The trial and the litigation of Plaintiffs' claims are manageable.

72.   Defendant has acted on grounds generally applicable to the entire Class, thereby making final injunctive relief and/or corresponding declaratory relief appropriate with respect to the Class as a whole. The prosecution of separate actions by individual Class members would create the risk of inconsistent or varying adjudications with respect to individual member of the Class that would establish incompatible standards of conduct for Defendant.

FIRST AMENDED CLASS ACTION COMPLAINT

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Ste. 804
Los Angeles, CA 90069

73.     Absent a class action, Defendant will likely retain the benefits of its wrongdoing. Because of the small size of the individual Class members' claims, few, if any, Class members could afford to seek legal redress for the wrongs complained of herein.  Absent a representative action, the Class members will continue to suffer losses and Defendant will be allowed to continue these violations of law and to retain the proceeds of its ill-gotten gains.

<div align="center">

**FIRST CAUSE OF ACTION:**

**VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW**

**BUSINESS & PROFESSIONS CODE § 17200, *et seq*.**

**(By Plaintiff against all Defendants)**

</div>

74.     Plaintiffs repeat and re-allege the allegations set forth in the preceding paragraphs and incorporate the same as if set forth herein at length.

75.     This cause of action is brought pursuant to Business and Professions Code Section 17200, *et seq*., on behalf of Plaintiff and a Class consisting of all persons residing in the United States and/or State of California who purchased the Product for personal use and not for resale during the time period of four years prior to the filing of the complaint through the present.

76.     Defendant in its advertising and packaging of the Product make false and misleading statements regarding the quality and characteristics of the Product, particularly that it contains white chocolate when it does not.  Such claims appear on the label and packaging of the Product which are sold at retail stores nationwide, point-of-purchase displays, as well as Ghirardelli's official website, and other retailers' advertisements which have adopted Ghirardelli's advertisements.

77.     Defendant's labeling and advertising of the Product led and continues to lead reasonable consumers, including Plaintiffs, to believe that the Product contains white chocolate.

78.     Defendant does not have any reasonable basis for labeling and advertising the Product the claims about the Product as if it contains white chocolate when it does not.

79.     Defendant knows that the white chocolate representations it made and continues to make about the Product are false and misleading and deceives reasonable consumers. *See* Paragraph 31, *supra*.

<div align="center">FIRST AMENDED CLASS ACTION COMPLAINT</div>

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Ste. 804
Los Angeles, CA 90069

80.   As alleged in the preceding paragraphs, the misrepresentations by Defendant of the material facts detailed above constitute an unfair, unlawful, and fraudulent business practice within the meaning of California Business and Professions Code Section 17200.

81.   In addition, Defendant's use of various forms of advertising media to advertise, call attention to, or give publicity to the sale of goods or merchandise which are not as represented in any manner constitutes unfair competition, unfair, deceptive, untrue or misleading advertising, and an unlawful business practice within the meaning of Business and Professions Code Sections 17200 and 17531, which advertisements have deceived and are likely to deceive the consuming public, in violation of Business and Professions Code Section 17200.

82.   There were reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein.

83.   All of the conduct alleged herein occurs and continues to occur in Defendant's business.  Defendant's wrongful conduct is part of a pattern or generalized course of conduct repeated on thousands of occasions daily.

84.   Pursuant to Business and Professions Code Sections 17203 and 17535, Plaintiffs and the members of the Class seek an order of this Court enjoining Defendant from continuing to engage, use, or employ its practice of labeling and advertising the sale and use of the Product and/or to disclose such misrepresentations. Plaintiffs also seek restitution.

85.   Plaintiffs and the Class have suffered injury in fact and have lost money or property as a result of and in reliance upon Defendant's false representations. Plaintiffs would not have purchased the Product but for the representations by Defendant about the Product as containing white chocolate, or had they would have purchased the Product for less money than they actually spent had the Product not been impliedly advertised as containing white chocolate or if the Product conspicuously disclosed the fact that it was "imitation chocolate," or any other substantially similar words that clearly and conspicuously disclose to consumers that they are not purchasing the real thing.

///

FIRST AMENDED CLASS ACTION COMPLAINT

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Ste. 804
Los Angeles, CA 90069

86.     Plaintiffs would purchase the Product as labeled in the future if it actually contained white chocolate.  Alternatively, Plaintiffs might purchase the Product in the future if the labeling made clear that the Product did not contain white chocolate, but they would only do so if the Product was sold for less money than presently priced at.  Regardless, by relabeling the Product so that it fairly disclosed the fact that it did not contain white chocolate, therefore dispelling consumer confusion, consumers will be provided with a fair opportunity to make a purchasing decision based on the actual contents of the Product.

## SECOND CAUSE OF ACTION:

## FALSE AND MISLEADING ADVERTISING IN VIOLATION OF BUSINESS & PROFESSIONS CODE § 17500, *et seq.*

### (By Plaintiff against all Defendants)

87.     Plaintiffs repeat and re-allege the allegations set forth in the preceding paragraphs and incorporates the same as if set forth herein at length.

88.     This cause of action is brought pursuant to Business and Professions Code Section 17500, *et seq.*, on behalf of Plaintiffs and the Class consisting of all persons residing in the United States and/or State of California who purchased the Product for personal consumption and not for resale during the time period of four years prior to the filing of the complaint through the present.

89.     Defendant in its advertising and packaging of the Product make false and misleading statements regarding the quality and characteristics of the Product, particularly that it contains white chocolate.  Such representations appear on the Product packaging and official website.

90.     Defendant's claims about the Product lead reasonable consumers to believe that the Product contains white chocolate.

91.     Defendant does not have any reasonable basis for its white chocolate representations.

92.     Defendant knew or should have known that its white chocolate representations are false and misleading. *See* Paragraph 31, *supra.*

93.     Plaintiffs would not have purchased the Product but for the representations by Defendant that the Product is white chocolate.

FIRST AMENDED CLASS ACTION COMPLAINT

94.     Plaintiffs and the Class have suffered injury in fact and lost money as a result of and in reasonable and detrimental reliance upon Defendant's false representations.

95.     As alleged in the preceding paragraphs, the misrepresentations by Defendant of the material facts detailed above constitute an unfair, unlawful, and fraudulent business practice within the meaning of California Business and Professions Code Section 17500.

96.     In addition, Defendant's use of various forms of advertising media to advertise, call attention to, or give publicity to the sale of goods or merchandise which are not as represented in any manner constitutes unfair competition, unfair, deceptive, untrue or misleading advertising, and an unlawful business practice within the meaning of Business and Professions Code sections 17200 and 17531, which advertisements have deceived and are likely to deceive the consuming public, in violation of Business and Professions Code Section 17500.

97.     Pursuant to Business and Professions Code Sections 17203 and 17535, Plaintiffs and the members of the Class seek a court order enjoining Defendant from continuing to deceptively advertise and label the Product as if it is white chocolate. Plaintiffs also seek restitution.

## THIRD CAUSE OF ACTION:

## VIOLATION OF CALIFORNIA CONSUMERS LEGAL REMEDIES ACT, CALIFORNIA CIVIL CODE § 1750, *et seq*.

### (By Plaintiff against all Defendants)

98.     Plaintiffs repeat and re-alleges the allegations set forth in the preceding paragraphs and incorporates the same as if set forth herein at length.

99.     This cause of action is brought pursuant to Civil Code Section 1750, *et seq*., the Consumers Legal Remedies Act ("CLRA"), on behalf of Plaintiff and a Class consisting of all persons residing in the United States and/or State of California who purchased the Product for personal consumption and not for resale during the time period of four years prior to the filing of the complaint through the present.

100.    The Class consists of millions of persons, the joinder of whom is impracticable.

///

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Ste. 804
Los Angeles, CA 90069

101.    There are questions of law and fact common to the class, which questions are substantially similar and predominate over questions affecting the individual members, as set forth in Paragraph 3, *supra*.

102.    The white chocolate misrepresentations described herein were intended to increase sales to the consuming public, and violated and continue to violate Section 1770(a)(5) of the CLRA by representing that the Product has characteristics and benefits which it does not have.

103.    Defendants fraudulently deceived Plaintiffs and the Class by representing that the Product has certain characteristics, benefits, and qualities which it does not have. In doing so, Defendant intentionally misrepresented and concealed material facts from Plaintiffs and the Class, specifically by claiming and advertising that the Product contains white chocolate when in fact it contains a cheaper, unhealthier blend of sugars and hydrogenated oils. Said misrepresentations and concealment were done with the intention of deceiving Plaintiff and the Class, and depriving them of their legal rights and money.

104.    Defendant's claims about the Product led and continues to lead consumers like Plaintiff to reasonably believe that the Product contains white chocolate.

105.    Defendant knew or should have known that advertising and labeling the Product as "Premium White" and "Class White," among other deceptive practices, would confuse reasonable consumers into thinking the Product actually contains white chocolate. *See* Figure 1, Figure 2, and Paragraph 31, *supra.*

106.    Plaintiffs and the Class have suffered injury in fact as a result of and in reliance upon Defendant's false representations.

107.    Plaintiffs would not have purchased the Product but for the misrepresentations by Defendant about the Product containing white chocolate.

108.    Pursuant to Section 1780(a) of the CLRA, Plaintiffs seek injunctive relief in the form of an order enjoining the above-described wrongful acts and practices of Defendant, including, but not limited to, an order enjoining Defendant from continuing to make the representations set forth above that the Product contains white chocolate. Plaintiffs also seek restitution.

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Ste. 804
Los Angeles, CA 90069

109.    Plaintiffs shall suffer irreparable harm if such an order is not granted.

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, pray for judgment and relief on all Causes of Action as follows:

A.  An order enjoining Ghirardelli from labeling and advertising the Product as if it is white chocolate;

B.  Restitution; and

C.  Reasonable attorneys' fees and costs.

### **JURY TRIAL DEMANDED**

Plaintiffs demand a jury trial on all triable issues.

DATED: April 29, 2020                      **CLARKSON LAW FIRM, P.C.**

/s/ Ryan J. Clarkson
Ryan J. Clarkson, Esq.
Shireen M. Clarkson, Esq.
Matthew T. Theriault, Esq.
Bahar Sodaify, Esq.

*Attorneys for Plaintiffs*

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Ste. 804
Los Angeles, CA 90069

FIRST AMENDED CLASS ACTION COMPLAINT

# EXHIBIT A

# BAKING GOODS CONSUMER SURVEY

Prepared by

Forrest V. Morgeson III, PhD

G. Tomas M. Hult, PhD

# Contents

|  | Page |
|---|---|
| Introduction | 2 |
| Methodology | 2 |
| Survey Results | 4 |
|     Ghirardelli's Classic White Chips | 4 |
|     Nestle Toll House's Premier White Morsels | 6 |
|     Target's Market Pantry White Baking Morsels | 7 |
|     Walmart's Great Value White Baking Chips | 9 |
| Conclusion | 11 |
|  |  |
| Appendix 1: Researchers | 12 |
| Appendix 2: Baking Goods Consumer Survey Instrument | 13 |
| Appendix 3: Demographics | 25 |
| Appendix 4: Detailed Results for Ghirardelli's Classic White Chips | 31 |
| Appendix 5: Detailed Results for Nestle Toll House's Premier White Morsels | 35 |
| Appendix 6: Detailed Results for Target's Market Pantry White Baking Morsels | 39 |
| Appendix 7: Detailed Results for Walmart's Great Value White Baking Chips | 43 |

## Introduction

We were retained by Clarkson Law Firm on behalf of several consumers to evaluate consumer purchase decisions based on four popular white baking chip products (Ghirardelli's Classic White Chips, Nestle Toll House's Premier White Morsels, Target's Market Pantry White Baking Morsels, and Walmart's Great Value White Baking Chips). Appendix 1 has brief biographies of the researchers. This abbreviated report is a synopsis of our analyses and findings. The abridged report does not represent all of our opinions. A more detailed report may follow if we are asked to provide one.

## Methodology

The findings in this report are based on a scientifically-based consumer survey that was undertaken on January 31, 2020 (Appendix 2 includes the Baking Goods Consumer Survey Instrument). Data were collected via an online survey using the Qualtrics survey software. The sampling frame of 1,278 consumers was drawn from a broad cross-section of consumers in the United States from a consumer panel administered by Qualtrics. These 1,278 people represent a set of randomly selected consumers from 1,208 different zip codes in the country (from among 41,702 active zip codes). The respondents were promised anonymity and confidentiality. The results are only used in the aggregate for each white baking chip product included in the study. Each respondent answered a set of four screener questions to ensure quality and applicability of responses.

DocuSign Envelope ID: D8AB1D06-5738-4DCC-A50B-G2655CAB6909

The screener questions were:

- Would you be willing to participate in the study?

- Are you a professional chef, cook, baker, or kitchen worker?

- In the last three years, have you purchased baking chips of any kind, like you might use when baking white or milk chocolate chip cookies, muffins, or cakes?

- What is your age?

The answers to the screener questions had to be "yes," "no," "yes," – in that order for the initial three screener questions – and a response of 18 for age or older "number" had to be indicated for a person to be included in the sample. The total sample across all four baking chip products was n=1,278, with approximately 25 percent of the sample allocated to each of the four products (n=320 for Ghirardelli's Classic White Chips; n=321 for Nestle Toll House's Premier White Morsels; n=320 for Target's Market Pantry White Baking Morsels; and n=317 for Walmart's White Baking Chip). As such, the margin of error of the survey results, presented next, relative to the overall population in the United States at a commonly used 95 percent confidence level, is 3 percent for the full sample and about 5 percent for each of the four subsamples. Appendix 3 includes sample demographics.

**Survey Results**

The results of the Qualtrics survey are summarized in brief in this section, including basic statistical analyses, and then additional details are included in four Appendices:

- Appendix 4: Detailed Results for Ghirardelli's Classic White Chips
- Appendix 5: Detailed Results for Nestle Toll House's Premier White Morsels
- Appendix 6: Detailed Results for Target's Market Pantry White Baking Morsels
- Appendix 7: Detailed Results for Walmart's Great Value White Baking Chips

**Ghirardelli's Classic White Chips**

- Based on a review of the package for Ghirardelli's Classic White Chips, 91.88 percent of the respondents indicated that they believe the product contains white chocolate while 8.12 percent do not think the product contains white chocolate. A statistically significantly larger proportion (z-score = 11.49, p<.05) of respondents believe the product contains white chocolate.

- When planning to bake with white chocolate chips, 92.19 percent of the respondents said they would consider purchasing Ghirardelli's Classic White Chips compared with 7.81 percent said they would not. A statistically significantly larger proportion (z-score = 11.54, p<.05) of respondents would purchase this product if they were planning on baking with white chocolate chips.

- With respect to the question that asked "If, after purchasing this product, you learned that the product contained no white chocolate or chocolate of any kind, would you be less or more satisfied with your purchase?", 64.69 percent of the respondents indicated that they would be "much less satisfied" or "somewhat less satisfied" while 35.31 percent of the respondents would be "neither less nor more satisfied," "somewhat more satisfied," or "much more satisfied." A statistically significantly larger proportion (z-score = 5.04, p<.05) of respondents would be less satisfied if they found out that the product contained no white chocolate or chocolate of any kind rather than neutral or more satisfied.

- With respect to the question that asked "If, after purchasing this product, you were told or otherwise learned that the product contained no white chocolate or chocolate of any kind, would you be less or more likely to purchase the product again?", 65.32 percent of the respondents indicated that they would be "much less likely to purchase again" or "somewhat less likely to purchase again" while 34.68 percent of the respondents would be "neither less nor more likely to purchase again," "somewhat more likely to purchase again," or "much more likely to purchase again." A statistically significantly larger proportion (z-score = 5.24, p<.05) of respondents would be less likely to purchase the product again if they were told or otherwise learned that the product contained no white chocolate or chocolate of any kind.

**Nestle Toll House's Premier White Morsels**

- Based on a review of the package for Nestle Toll House's Premier White Morsels, 95.33 percent of the respondents indicated that they believe the product contains white chocolate while 4.67 percent do not think the product contains white chocolate. A statistically significantly larger proportion (z-score = 12.04, p<.05) of respondents believe the product contains white chocolate.

- When planning to bake with white chocolate chips, 94.39 percent of the respondents said they would consider purchasing Nestle Toll House's Premier White Morsels compared with 5.61 percent said they would not. A statistically significantly larger proportion (z-score = 11.89, p<.05) of respondents would purchase this product if they were planning on baking with white chocolate chips.

- With respect to the question that asked "If, after purchasing this product, you learned that the product contained no white chocolate or chocolate of any kind, would you be less or more satisfied with your purchase?", 62.30 percent of the respondents indicated that they would be "much less satisfied" or "somewhat less satisfied" while 37.70 percent of the respondents would be "neither less nor more satisfied," "somewhat more satisfied," or "much more satisfied." A statistically significantly larger proportion (z-score = 4.28, p<.05) of respondents would be less satisfied if they found out that the product contained no white chocolate or chocolate of any kind rather than neutral or more satisfied.

- With respect to the question that asked "If, after purchasing this product, you were told or otherwise learned that the product contained no white chocolate or chocolate of any kind, would you be less or more likely to purchase the product again?", 62.61 percent of the respondents indicated that they would be "much less likely to purchase again" or "somewhat less likely to purchase again" while 37.39 percent of the respondents would be "neither less nor more likely to purchase again," "somewhat more likely to purchase again," or "much more likely to purchase again." A statistically significantly larger proportion (z-score = 4.38, p<.05) of respondents would be less likely to purchase the product again if they were told or otherwise learned that the product contained no white chocolate or chocolate of any kind.

**Target's Market Pantry White Baking Morsels**

- Based on a review of the package for Target's Market Pantry White Baking Morsels, 88.44 percent of the respondents indicated that they believe the product contains white chocolate while 11.56 percent do not think the product contains white chocolate. A statistically significantly larger proportion (z-score = 10.90, p<.05) of respondents believe the product contains white chocolate.

- When planning to bake with white chocolate chips, 85.63 percent of the respondents said they would consider purchasing Target's Market Pantry White Baking Morsels compared with 14.37 percent said they would not. A statistically significantly larger proportion (z-

score = 10.38, p<.05) of respondents would purchase this product if they were planning on baking with white chocolate chips.

- With respect to the question that asked "If, after purchasing this product, you learned that the product contained no white chocolate or chocolate of any kind, would you be less or more satisfied with your purchase?", 71.56 percent of the respondents indicated that they would be "much less satisfied" or "somewhat less satisfied" while 28.44 percent of the respondents would be "neither less nor more satisfied," "somewhat more satisfied," or "much more satisfied." A statistically significantly larger proportion (z-score = 7.08, p<.05) of respondents would be less satisfied if they found out that the product contained no white chocolate or chocolate of any kind rather than neutral or more satisfied.

- With respect to the question that asked "If, after purchasing this product, you were told or otherwise learned that the product contained no white chocolate or chocolate of any kind, would you be less or more likely to purchase the product again?", 73.75 percent of the respondents indicated that they would be "much less likely to purchase again" or "somewhat less likely to purchase again" while 26.25 percent of the respondents would be "neither less nor more likely to purchase again," "somewhat more likely to purchase again," or "much more likely to purchase again." A statistically significantly larger proportion (z-score = 7.68, p<.05) of respondents would be less likely to purchase the product again if they were told or otherwise learned that the product contained no white chocolate or chocolate of any kind.

DocuSign Envelope ID: D8AB1D06-5738-4DCC-A50B-C2655CAB6009

**Walmart's Great Value White Baking Chips**

- Based on a review of the package for Walmart's Great Value White Baking Chips, 89.91 percent of the respondents indicated that they believe the product contains white chocolate while 10.09 percent do not think the product contains white chocolate. A statistically significantly larger proportion (z-score = 11.03, p<.05) of respondents believe the product contains white chocolate.

- When planning to bake with white chocolate chips, 81.39 percent of the respondents said they would consider purchasing Walmart's Great Value White Baking Chips compared with 18.61 percent said they would not. A statistically significantly larger proportion (z-score = 9.47, p<.05) of respondents would purchase this product if they were planning on baking with white chocolate chips.

- With respect to the question that asked "If, after purchasing this product, you learned that the product contained no white chocolate or chocolate of any kind, would you be less or more satisfied with your purchase?", 70.34 percent of the respondents indicated that they would be "much less satisfied" or "somewhat less satisfied" while 29.66 percent of the respondents would be "neither less nor more satisfied," "somewhat more satisfied," or "much more satisfied." A statistically significantly larger proportion (z-score = 6.71, p<.05) of respondents would be less satisfied if they found out that the product contained no white chocolate or chocolate of any kind rather than neutral or more satisfied.

- With respect to the question that asked "If, after purchasing this product, you were told or otherwise learned that the product contained no white chocolate or chocolate of any kind, would you be less or more likely to purchase the product again?", 69.40 percent of the respondents indicated that they would be "much less likely to purchase again" or "somewhat less likely to purchase again" while 30.60 percent of the respondents would be "neither less nor more likely to purchase again," "somewhat more likely to purchase again," or "much more likely to purchase again." A statistically significantly larger proportion (z-score = 6.44, p<.05) of respondents would be less likely to purchase the product again if they were told or otherwise learned that the product contained no white chocolate or chocolate of any kind.

**Conclusion**

In the case of each product studied (Ghirardelli's Classic White Chips, Nestle Toll House's Premier White Morsels, Target's Market Pantry White Baking Morsels, and Walmart's Great Value White Baking Chips), an overwhelming percentage of the consumers believe each product contains white chocolate. Based on this belief, we also find significant evidence that consumers would consider purchasing each product when planning on baking with white chocolate chips. However, for each product, a significantly larger proportion of the consumers indicated that they would be "much less satisfied" or "somewhat less satisfied" if they learned that the product contained no white chocolate or chocolate of any kind. Finally, for each product, a significantly larger proportion of respondents would be less likely to purchase the product again if they were told or otherwise learned that the product contained no white chocolate or chocolate of any kind.

DocuSigned by:

*Forrest Morgeson*

5C5FEC85470C4CF...

4/24/2020

Forrest V. Morgeson III, Ph.D.                    Date

**Appendix 1: Researchers**


**Dr. Forrest V. Morgeson III** is a member of the faculty of Marketing in the Broad College of Business at Michigan State University and Director of Research at the American Customer Satisfaction Index. Morgeson's first book, titled *Citizen Satisfaction: Improving Government Performance, Efficiency, and Citizen Trust*, was released in 2014 (Palgrave Macmillan). He has consulted with numerous corporations and governments in more than 30 countries.


**Dr. G. Tomas M. Hult** is Professor and Byington Endowed Chair in the Broad College of Business at Michigan State University and a researcher at the American Customer Satisfaction Index. Hult is a member of the Expert Networks of the World Economic Forum and United Nations / UNCTAD's World Investment Forum. He is a Fellow of Academy of International Business and the 2016 Academy of Marketing Science Distinguished Marketing Educator.

**Appendix 2: Baking Goods Consumer Survey Instrument**

**BAKING GOODS CONSUMER SURVEY**

We are conducting research on the packaging and ingredients of food products typically used in baked goods and purchased by consumers in grocery stores and supermarkets. The survey is very brief and should take only 3 or 4 minutes to complete. Your responses and any identifying information about you as a consumer will be used only for this research and kept strictly confidential.

Would you be willing to participate in this study?

| Yes |
| --- |
| No |

→

**Appendix 2 Continued: Baking Goods Consumer Survey Instrument**

Are you a professional chef, cook, baker, or kitchen worker?

| |
|---|
| Yes |

| |
|---|
| No |

→

In the last three years, have you purchased baking chips of any kind, like you might use when baking white or milk chocolate chip cookies, muffins, or cakes?

| |
|---|
| Yes |

| |
|---|
| No |

→

**Appendix 2 Continued: Baking Goods Consumer Survey Instrument**

How often would you say you make baked goods?

A few times each week

About once a week

About once a month

About once every three months

About once every six months

In general, when you shop for items in the grocery store or supermarket to use when making baked goods, how carefully would you say you examine the packaging and ingredients of the product before making your purchase?

Not at all carefully

Somewhat carefully

Very carefully

→

**Appendix 2 Continued: Baking Goods Consumer Survey Instrument**

What is your age?

[                                                                          ]

→

What is the highest level of formal education you have completed?

Less than high school graduate

High school graduate

Some college or associate degree

College graduate

Post-graduate

Do not know

Refuse to answer

**Appendix 2 Continued: Baking Goods Consumer Survey Instrument**

Do you consider yourself to be:

White

Black/African American

American Indian/Alaska Native

Asian

Native Hawaiian or Pacific Islander

Hispanic/Latino of any race

Other or mixed race

Do not know

Refuse to answer

**Appendix 2 Continued: Baking Goods Consumer Survey Instrument**

What was your total annual family income in 2019?

Under $20,000

$20,000 to $30,000

$30,001 to $40,000

$40,001 to $60,000

$60,001 to $80,000

$80,001 to $100,000

$100,001 or more

Do not know

Refuse to answer

**Appendix 2 Continued: Baking Goods Consumer Survey Instrument**

Gender

Female

Male

Other

Do not know

Refuse to answer

What is the zip code where you currently reside?

→

**Appendix 2 Continued: Baking Goods Consumer Survey Instrument**

Below, we will show you an image of a product often used when baking cookies, cakes, muffins, and other pastries. We will then ask you a few questions about the product based on your review of this image.

Please take a look at the product package shown below:





**Appendix 2 Continued: Baking Goods Consumer Survey Instrument**





**Appendix 2 Continued: Baking Goods Consumer Survey Instrument**

Based on your review of this package, do you think that this product contains white chocolate

| Yes |
| --- |

| No |
| --- |

Would you consider purchasing this product if you were planning to bake with white chocolate chips?

| Yes |
| --- |

| No |
| --- |

**Appendix 2 Continued: Baking Goods Consumer Survey Instrument**

If, after purchasing this product, you were told or otherwise learned that the product contained no white chocolate or chocolate of any kind, would you be less or more satisfied with your purchase?

Much less satisfied

Somewhat less satisfied

Neither less nor more satisfied

Somewhat more satisfied

Much more satisfied

DocuSign Envelope ID: D8AB1D06-5738-4DCC-A50B-C2655CAB6909

**Appendix 2 Continued: Baking Goods Consumer Survey Instrument**

If, after purchasing this product, you were told or otherwise learned that the product contained no white chocolate or chocolate of any kind, would you be less or more likely to purchase the product again?



Much less likely to purchase again

Somewhat less likely to purchase again

Neither less nor more likely to purchase again

Somewhat more likely to purchase again

Much more likely to purchase again

We had such a great response and have already collected enough surveys. The survey is now closed. Thank you for taking time to share your opinions, we hope to hear from you in the future.

DocuSign Envelope ID: D8AB1D06-E738-4DCC-A50B-C2655CAB6909

**Appendix 3: Demographics**

## How often would you say you make baked goods?



| # | Answer | Ghirardelli | Nestle | Target | Walmart | Overall |
|---|---|---|---|---|---|---|
| 1 | A few times each week | 21.3% | 16.2% | 18.8% | 19.9% | 19.01% |
| 2 | About once a week | 39.1% | 45.8% | 41.9% | 40.7% | 41.86% |
| 3 | About once a month | 36.3% | 36.8% | 36.6% | 36.3% | 36.46% |
| 4 | About once every three months | 2.8% | 0.6% | 1.9% | 3.2% | 2.11% |
| 5 | About once every six months | 0.6% | 0.6% | 0.9% | 0.0% | 0.55% |
| | Total | n=320 | n=321 | n=320 | n=317 | n=1,278 |

DocuSign Envelope ID: D8AB1D06-F738-4DCC-A50B-C2655CAB6909

**Appendix 3 Continued: Demographics**

**In general, when you shop for items in the grocery store or supermarket to use when making baked goods, how carefully would you say you examine the packaging of the product before making your purchase?**



| # | Answer | Ghirardelli | Nestle | Target | Walmart | Overall |
|---|--------|-------------|--------|--------|---------|---------|
| 1 | Not at all carefully | 7.2% | 6.2% | 7.5% | 6.0% | 6.73% |
| 2 | Somewhat carefully | 56.3% | 61.1% | 59.4% | 55.2% | 57.98% |
| 3 | Very carefully | 36.6% | 32.7% | 33.1% | 38.8% | 35.29% |
| | Total | n=320 | n=321 | n=320 | n=317 | n=1,278 |

**Appendix 3 Continued: Demographics**

**What is the highest level of formal education you have completed?**

| # | Answer | Ghirardelli | Nestle | Target | Walmart | Overall |
|---|---|---|---|---|---|---|
| 1 | Less than high school graduate | 1.3% | 1.6% | 3.8% | 1.9% | 2.12% |
| 2 | High school graduate | 22.5% | 25.4% | 20.1% | 19.9% | 22.00% |
| 3 | Some college or associate degree | 38.4% | 33.9% | 35.7% | 30.0% | 34.56% |
| 4 | College graduate | 26.9% | 28.8% | 27.0% | 32.8% | 28.91% |
| 5 | Post-graduate | 10.0% | 10.3% | 13.5% | 15.5% | 12.33% |
| 6 | Do not know | 0.0% | 0.0% | 0.0% | 0.0% | 0.00% |
| 7 | Refuse to answer | 0.3% | 0.0% | 0.0% | 0.0% | 0.08% |
|  | Total | n=320 | n=321 | n=320 | n=317 | n=1,278 |

**Appendix 3 Continued: Demographics**

## Do you consider yourself to be:

| # | Answer | Ghirardelli | Nestle | Target | Walmart | Overall |
|---|---|---|---|---|---|---|
| 1 | White | 72.8% | 75.9% | 72.7% | 70.0% | 72.98% |
| 2 | Black/African American | 10.4% | 11.6% | 12.5% | 14.5% | 12.25% |
| 3 | American Indian/Alaska Native | 0.9% | 0.9% | 1.9% | 0.6% | 1.10% |
| 4 | Asian | 4.7% | 3.1% | 2.2% | 5.0% | 3.77% |
| 5 | Native Hawaiian or Pacific Islander | 0.6% | 0.3% | 0.6% | 0.0% | 0.39% |
| 6 | Hispanic/Latino of any race | 8.2% | 5.0% | 6.6% | 8.2% | 6.99% |
| 7 | Other or mixed race | 1.6% | 3.1% | 3.1% | 0.6% | 2.12% |
| 8 | Do not know | 0.3% | 0.0% | 0.0% | 0.0% | 0.08% |
| 9 | Refuse to answer | 0.0% | 0.0% | 0.3% | 0.9% | 0.31% |
|   | Total | n=320 | n=321 | n=320 | n=317 | n=1,278 |

**Appendix 3 Continued: Demographics**

## What was your total annual family income in 2019?

| # | Answer | Ghirardelli | Nestle | Target | Walmart | Overall |
|---|--------|-------------|--------|--------|---------|---------|
| 1 | Under $20,000 | 15.1% | 14.1% | 13.2% | 13.2% | 13.90% |
| 2 | $20,000 to $30,000 | 13.2% | 12.2% | 14.7% | 10.1% | 12.57% |
| 3 | $30,001 to $40,000 | 14.2% | 10.7% | 11.0% | 12.3% | 12.02% |
| 4 | $40,001 to $60,000 | 17.3% | 18.5% | 16.6% | 19.6% | 17.99% |
| 5 | $60,001 to $80,000 | 14.2% | 13.5% | 16.6% | 15.5% | 14.93% |
| 6 | $80,001 to $100,000 | 8.5% | 8.2% | 10.0% | 11.0% | 9.43% |
| 7 | $100,001 or more | 13.5% | 18.2% | 13.8% | 16.1% | 15.40% |
| 8 | Do not know | 0.9% | 1.6% | 0.9% | 0.6% | 1.02% |
| 9 | Refuse to answer | 3.1% | 3.1% | 3.1% | 1.6% | 2.75% |
|  | Total | n=320 | n=321 | n=320 | n=317 | n=1,278 |

**Appendix 3 Continued: Demographics**

## Gender



| # | Answer | Ghirardelli | Nestle | Target | Walmart | Overall |
|---|---|---|---|---|---|---|
| 1 | Female | 65.7% | 70.8% | 64.6% | 67.5% | 67.16% |
| 2 | Male | 34.3% | 29.2% | 35.4% | 32.5% | 32.84% |
| 3 | Other | 0.0% | 0.0% | 0.0% | 0.0% | 0.00% |
| 4 | Do not know | 0.0% | 0.0% | 0.0% | 0.0% | 0.00% |
| 5 | Refuse to answer | 0.0% | 0.0% | 0.0% | 0.0% | 0.00% |
| | Total | n=320 | n=321 | n=320 | n=317 | n=1,278 |

**Appendix 4: Detailed Results for Ghirardelli's Classic White Chips**

**Based on your review of this package, do you think that this product contains white chocolate?**



| # | Answer | % | Count |
|---|--------|-----|-------|
| 1 | Yes | 91.88% | 294 |
| 2 | No | 8.13% | 26 |
| | Total | 100% | 320 |

DocuSign Envelope ID: D8AB1D06-5738-4DCC-A50B-C2655CAB6909

**Appendix 4 Continued: Detailed Results for Ghirardelli's Classic White Chips**

**Would you consider purchasing this product if you were planning to bake with white chocolate chips?**



| # | Answer | % | Count |
|---|--------|-----|-------|
| 1 | Yes | 92.19% | 295 |
| 2 | No | 7.81% | 25 |
| | Total | 100% | 320 |

**Appendix 4 Continued: Detailed Results for Ghirardelli's Classic White Chips**

**If, after purchasing this product, you learned that the product contained no white chocolate or chocolate of any kind, would you be less or more satisfied with your purchase?**



| # | Answer | % | Count |
|---|--------|---|-------|
| 1 | Much less satisfied | 45.94% | 147 |
| 2 | Somewhat less satisfied | 18.75% | 60 |
| 3 | Neither less nor more satisfied | 17.19% | 55 |
| 4 | Somewhat more satisfied | 9.06% | 29 |
| 5 | Much more satisfied | 9.06% | 29 |
| | Total | 100% | 320 |

**Appendix 4 Continued: Detailed Results for Ghirardelli's Classic White Chips**

**If, after purchasing this product, you were told or otherwise learned that the product contained no white chocolate or chocolate of any kind, would you be less or more likely to purchase the product again?**



| # | Answer | % | Count |
|---|--------|---|-------|
| 1 | Much less likely to purchase again | 49.69% | 159 |
| 2 | Somewhat less likely to purchase again | 15.63% | 50 |
| 3 | Neither less nor more likely to purchase again | 20.63% | 66 |
| 4 | Somewhat more likely to purchase again | 7.50% | 24 |
| 5 | Much more likely to purchase again | 6.56% | 21 |
| | Total | 100% | 320 |

**Appendix 5: Detailed Results for Nestle Toll House's Premier White Morsels**

## Based on your review of this package, do you think that this product contains white chocolate



| # | Answer | % | Count |
|---|--------|-----|-------|
| 1 | Yes | 95.33% | 306 |
| 2 | No | 4.67% | 15 |
|   | Total | 100% | 321 |

**Appendix 5 Continued: Detailed Results for Nestle Toll House's Premier White Morsels**

**Would you consider purchasing this product if you were planning to bake with white chocolate chips?**



| # | Answer | % | Count |
|---|--------|-----|-------|
| 1 | Yes | 94.39% | 303 |
| 2 | No | 5.61% | 18 |
|   | Total | 100% | 321 |

**Appendix 5 Continued: Detailed Results for Nestle Toll House's Premier White Morsels**

**If, after purchasing this product, you learned that the product contained no white chocolate or chocolate of any kind, would you be less or more satisfied with your purchase?**



| # | Answer | % | Count |
|---|---|---|---|
| 1 | Much less satisfied | 41.43% | 133 |
| 2 | Somewhat less satisfied | 20.87% | 67 |
| 3 | Neither less nor more satisfied | 19.00% | 61 |
| 4 | Somewhat more satisfied | 9.35% | 30 |
| 5 | Much more satisfied | 9.35% | 30 |
| | Total | 100% | 321 |

DocuSign Envelope ID: D8AB1D06-E738-4DCC-A50B-C2655CAB6909

**Appendix 5 Continued: Detailed Results for Nestle Toll House's Premier White Morsels**

**If, after purchasing this product, you were told or otherwise learned that the product contained no white chocolate or chocolate of any kind, would you be less or more likely to purchase the product again?**



| # | Answer | % | Count |
|---|--------|---|-------|
| 1 | Much less likely to purchase again | 45.79% | 147 |
| 2 | Somewhat less likely to purchase again | 16.82% | 54 |
| 3 | Neither less nor more likely to purchase again | 19.94% | 64 |
| 4 | Somewhat more likely to purchase again | 10.90% | 35 |
| 5 | Much more likely to purchase again | 6.54% | 21 |
| | Total | 100% | 321 |

**Appendix 6: Detailed Results for Target's Market Pantry White Baking Morsels**

**Based on your review of this package, do you think that this product contains white chocolate?**



| # | Answer | % | Count |
|---|--------|-----|-------|
| 1 | Yes | 88.44% | 283 |
| 2 | No | 11.56% | 37 |
| | Total | 100% | 320 |

DocuSign Envelope ID: D8AB1D06-5738-4DCC-A50B-C2655CAB6909

**Appendix 6 Ctd: Detailed Results for Target's Market Pantry White Baking Morsels**

**Would you consider purchasing this product if you were planning to bake with white chocolate chips?**



| # | Answer | % | Count |
|---|--------|-----|-------|
| 1 | Yes | 85.63% | 274 |
| 2 | No | 14.37% | 46 |
|   | Total | 100% | 320 |

**Appendix 6 Ctd: Detailed Results for Target's Market Pantry White Baking Morsels**

**If, after purchasing this product, you learned that the product contained no white chocolate or chocolate of any kind, would you be less or more satisfied with your purchase?**



| # | Answer | % | Count |
|---|---|---|---|
| 1 | Much less satisfied | 54.06% | 173 |
| 2 | Somewhat less satisfied | 17.50% | 56 |
| 3 | Neither less nor more satisfied | 17.50% | 56 |
| 4 | Somewhat more satisfied | 6.88% | 22 |
| 5 | Much more satisfied | 4.06% | 13 |
| | Total | 100% | 320 |

DocuSign Envelope ID: D8AB1D06-5738-4DCC-A50B-C2655CAB6909

**Appendix 6 Ctd: Detailed Results for Target's Market Pantry White Baking Morsels**

**If, after purchasing this product, you were told or otherwise learned that the product contained no white chocolate or chocolate of any kind, would you be less or more likely to purchase the product again?**



| # | Answer | % | Count |
|---|--------|---|-------|
| 1 | Much less likely to purchase again | 57.50% | 184 |
| 2 | Somewhat less likely to purchase again | 16.25% | 52 |
| 3 | Neither less nor more likely to purchase again | 15.94% | 51 |
| 4 | Somewhat more likely to purchase again | 6.56% | 21 |
| 5 | Much more likely to purchase again | 3.75% | 12 |
| | Total | 100% | 320 |

**Appendix 7: Detailed Results for Walmart's Great Value White Baking Chips**

## Based on your review of this package, do you think that this product contains white chocolate?



| # | Answer | % | Count |
|---|---|---|---|
| 1 | Yes | 89.91% | 285 |
| 2 | No | 10.09% | 32 |
| | Total | 100% | 317 |

**Appendix 7 Continued: Detailed Results for Walmart's Great Value White Baking Chips**

## Would you purchase this product if you were planning to bake with white chocolate chips?



| # | Answer | % | Count |
|---|--------|------|-------|
| 1 | Yes | 81.39% | 258 |
| 2 | No | 18.61% | 59 |
| | Total | 100% | 317 |

DocuSign Envelope ID: D8AB1D06-5738-4DCC-A50B-G2655CAB6909

**Appendix 7 Continued: Detailed Results for Walmart's Great Value White Baking Chips**

**If, after purchasing this product, you learned that the product contained no white chocolate or chocolate of any kind, would you be less or more satisfied with your purchase?**



| # | Answer | % | Count |
|---|---|---|---|
| 1 | Much less satisfied | 47.63% | 151 |
| 2 | Somewhat less satisfied | 22.71% | 72 |
| 3 | Neither less nor more satisfied | 15.46% | 49 |
| 4 | Somewhat more satisfied | 7.26% | 23 |
| 5 | Much more satisfied | 6.94% | 22 |
| | Total | 100% | 317 |

DocuSign Envelope ID: D8AB1D06-E738-4DCC-A50B-C2655CAB6909

**Appendix 7 Continued: Detailed Results for Walmart's Great Value White Baking Chips**

**If, after purchasing this product, you were told or otherwise learned that the product contained no white chocolate or chocolate of any kind, would you be less or more likely to purchase the product again?**



| # | Answer | % | Count |
|---|--------|---|-------|
| 1 | Much less likely to purchase again | 53.00% | 168 |
| 2 | Somewhat less likely to purchase again | 16.40% | 52 |
| 3 | Neither less nor more likely to purchase again | 17.03% | 54 |
| 4 | Somewhat more likely to purchase again | 7.26% | 23 |
| 5 | Much more likely to purchase again | 6.31% | 20 |
| | Total | 100% | 317 |