UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LINDA CHESLOW, et al., <br><br> Plaintiffs, <br><br> v. <br><br> GHIRARDELLI CHOCOLATE COMPANY, <br><br> Defendant. | Case No. 19-cv-07467-PJH <br><br> **ORDER DENYING MOTION FOR PARTIAL SUMMARY JUDGMENT** <br><br> Re: Dkt. No. 14 |

Before the court is defendant Ghirardelli Chocolate Company's ("Ghirardelli" or "defendant") motion for partial summary judgment.[1] The matter is fully briefed[2] and suitable for decision without oral argument. Having read the parties' papers and carefully considered their arguments and the relevant legal authority, and good cause appearing, the court hereby rules as follows.

## BACKGROUND

A broader discussion of the factual background may be found in the court's April 8, 2020 order. Dkt. 34. As relevant to this motion, on September 19, 2019, plaintiffs Linda Cheslow[3] and Steven Prescott filed a complaint in Sonoma County Superior Court, which

---

[1] Defendant originally filed a Rule 12(b)(6) motion to dismiss (Dkt. 14); however, in its reply brief, defendant raised a factual issue that was suitable for partial summary judgment (Dkt. 20). Thus, at the hearing on defendant's motion to dismiss, the court converted part of defendant's Rule 12(b)(6) motion into a Rule 56 motion for partial summary judgment and ordered supplemental briefing on the issue. Dkt. 28.

[2] The court considers defendant's reply brief as the motion brief. Dkt. 20. Plaintiff filed a supplemental opposition brief and declarations (Dkt. 35). Defendant's supplemental reply brief was due April 15, 2020 (Dkt. 33), but no supplemental reply brief has been filed.

[3] Because Cheslow's claims are the only one at issue in this order, references to "plaintiff" are to her.

defendant removed to federal court on November 13, 2019. Dkt. 1. The complaint ("Compl.") asserts three causes of action: (1) violation of California Unfair Competition Law Business & Professions Code § 17200 et seq.; (2) False and Misleading Advertising in violation of Business & Professions Code § 17500 et seq.; and (3) violation of California Consumer Legal Remedies Act, Civil Code § 1750 et seq. Dkt. 1-1. Plaintiffs seek to certify a class action of persons who purchased Ghirardelli's "Premium Baking Chips Classic White Chips" (the "product") in the United States or, alternatively, in California.

The present case is not the first false advertising case involving Ghirardelli's Classic White Chips product. On August 7, 2012, a class action complaint was filed in San Francisco County Superior Court under the title Miller v. Ghirardelli Chocolate Co., and subsequently removed to federal court. Decl. of Matthew T. Theriault ("Theriault Decl."), Dkt. 35-1, ¶ 7; see also Miller v. Ghirardelli Chocolate Co., No. 12-cv-04936-LB, Dkt. 1. The Miller complaint originally alleged five different Ghirardelli products as deceptive and misleading, including "Ghirardelli Chocolate Premium Baking Chips—Classic White." Dkt. 35-3, ¶ 19. All of the Ghirardelli products were alleged to be deceptive and misleading because they were marketed and sold as white chocolate products despite having no chocolate in them. Id. The Miller action eventually settled in 2014. Dkt. 35-5. The class period for the Miller settlement ran from August 17, 2008 to October 2, 2014, the latter date was when Magistrate Judge Beeler preliminarily approved the settlement agreement and conditionally certified the settlement class. Theriault Decl. ¶ 14; No. 12-cv-04936-LB, Dkt. 141.

Though she was not a named plaintiff in Miller, plaintiff Cheslow found a claim form for the Miller settlement through a website. Decl. of Linda Cheslow ("Cheslow Decl."), Dkt. 35-8, ¶ 6. She submitted the claim form and received $16.50, indicating that she had purchased defendant's product between 2008 and 2010. Id. As a participating class member, Cheslow was subject to certain release provisions that generally released her claims in the Miller litigation. See Dkt. 35-5, ¶ 8.2(a).

In December 2018, Cheslow alleges that she purchased a product called "Ghirardelli Premium Baking Classic White Chips." Compl. ¶¶ 4, 26. She alleges that she relied on the label and advertising of the product, which she believed to be "white chocolate" and not "fake" white chocolate. Id. ¶ 26.

**DISCUSSION**

**A.   Legal Standard**

Summary judgment is proper where the pleadings, discovery, and affidavits show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. Id. "A 'scintilla of evidence,' or evidence that is 'merely colorable' or 'not significantly probative,' is not sufficient to present a genuine issue as to a material fact." United Steelworkers of Am. v. Phelps Dodge Corp., 865 F.2d 1539, 1542 (9th Cir. 1989) (emphasis omitted) (quoting Liberty Lobby, 477 U.S. at 249–50).

Courts recognize two ways for a moving defendant to show the absence of genuine dispute of material fact: (1) proffer evidence affirmatively negating any element of the challenged claim or (2) identify the absence of evidence necessary for plaintiff to substantiate such claim. Nissan Fire & Marine Ins. Co. v. Fritz Cos., Inc., 210 F.3d 1099, 1102 (9th Cir. 2000) ("In order to carry its burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial."). Rule 56(c)(1) expressly requires that, to show the existence or nonexistence of a disputed fact, a party must "cit[e] to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1) ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: . . . citing to particular parts of materials in the record, including depositions,

3

1  documents, electronically stored information, affidavits or declarations, stipulations
2  (including those made for purposes of the motion only), admissions, interrogatory
3  answers, or other materials.").

4  "Once the moving party meets its initial burden, the nonmoving party must go
5  beyond the pleadings and, by its own affidavits or by the depositions, answers to
6  interrogatories, and admissions on file, come forth with specific facts to show that a
7  genuine issue of material fact exists." Hansen v. United States, 7 F.3d 137, 138 (9th Cir.
8  1993) (per curiam) (citations omitted). "When the nonmoving party relies only on its own
9  affidavits to oppose summary judgment, it cannot rely on conclusory allegations
10 unsupported by factual data to create an issue of material fact." Id. (citing United States
11 v. 1 Parcel of Real Property, 904 F.2d 487, 492 n.3 (9th Cir. 1990)).

12 The court must view the evidence in the light most favorable to the nonmoving
13 party: if evidence produced by the moving party conflicts with evidence produced by the
14 nonmoving party, the judge must assume the truth of the evidence set forth by the
15 nonmoving party with respect to that fact. Leslie v. Grupo ICA, 198 F.3d 1152, 1158 (9th
16 Cir. 1999) (citing T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626,
17 630–31 (9th Cir. 1987)). However, when a non-moving party fails to produce evidence
18 rebutting the moving party's showing, then an order for summary judgment is proper.
19 Nissan Fire, 210 F.3d at 1103 ("If the nonmoving party fails to produce enough evidence
20 to create a genuine issue of material fact, the moving party wins the motion for summary
21 judgment.").

22 **B.   Analysis**

23 The issue raised by defendant's motion for partial summary judgment is whether
24 plaintiff either released her false advertising claims as part of the Miller settlement or is
25 otherwise precluded from bringing her claims in this case. The relevant facts are not in
26 dispute. Both parties agree that plaintiff Cheslow was a settlement class member in the
27 Miller settlement and is therefore subject to the settlement agreement's terms. To that
28 end, defendant submitted evidence that plaintiff received payment pursuant to the Miller

4

settlement, which plaintiff confirms in her declaration. Cheslow Decl. ¶ 6. Further, there is no dispute that the Miller class period ran from August 17, 2008 to October 2, 2014 and that the proposed class period in the current case would run from September 2015 until the present. See Compl. ¶ 45 (seeking to certify class "during the time period of four years prior to the filing of the complaint through the present"); No. 12-cv-04936-LB, Dkt. 141 (order preliminarily approving settlement). The parties dispute whether the products at issue in the Miller action and the product at issue in this action are the same, but, as will be seen, that disputed fact is not material to the outcome of this motion.

Defendant argues that, pursuant to the Miller settlement, all class members—including plaintiff—released and forever discharged all claims that "White Chips" (as defined in the Miller settlement agreement) are marketed in any manner that suggests or indicates they are (or contain) white chocolate or chocolate. Mtn. at 13. Defendant further contends that plaintiff has also discharged any claims that the names Ghirardelli has used for its White Chips, including "Premium Baking Chips-Classic White" and "Classic White Chips" are confusing or misleading. Id. Plaintiff responds that neither issue preclusion nor claim preclusion bars her current claims against Ghirardelli because, broadly speaking, the products at issue in the Miller settlement and the current litigation are labeled differently. Supp. Opp. at 7. Plaintiff also argues that because the Miller settlement did not contain an admission of liability on the part of Ghirardelli, there was no decision on the merits and thus no preclusion. Id. Finally, plaintiff contends that the Miller settlement did not extend to future conduct that had yet to occur at the time of the settlement. Id. at 8. The injury alleged in this complaint constitutes future conduct that had not occurred at the time of the Miller settlement. Id.

The apparent similarities between the Miller action and the present action implicate two areas of law: preclusion and release of claims. With regard to preclusion, generally, class members who are represented by counsel during a class action settlement hearing cannot collaterally attack the settlement in a later action. Reyn's Pasta Bella, LLC v. Visa USA, Inc., 442 F.3d 741, 746 (9th Cir. 2006) (citing Dosier v.

5

Miami Valley Broadcasting Corp., 656 F.2d 1295, 1299 (9th Cir.1981)). As to release of claims, "[t]he weight of authority holds that a federal court may release not only those claims alleged in the complaint, but also a claim 'based on the identical factual predicate as that underlying the claims in the settled class action. . . .'" Id. at 748 (quoting Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1287–89 (9th Cir. 1992)). Accordingly, the court evaluates whether plaintiff is precluded, under both claim and issue preclusion, from asserting her present claims and then examines whether she released those claims pursuant to the Miller settlement agreement.

### 1. Preclusion

There are two types of preclusion: claim preclusion and issue preclusion. "The doctrine of claim preclusion . . prohibits 'successive litigation of the very same claim' by the same parties." Whole Woman's Health v. Hellerstedt, 136 S. Ct. 2292, 2305 (2016) (quoting New Hampshire v. Maine, 532 U.S. 742, 748 (2001)). Claim preclusion requires "(1) an identity of claims, (2) a final judgment on the merits, and (3) privity between parties." Howard v. City of Coos Bay, 871 F.3d 1032, 1039 (9th Cir. 2017) (quoting Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency, 322 F.3d 1064, 1077 (9th Cir. 2003)). The Ninth Circuit has held that "claim preclusion does not apply to claims that accrue after the filing of the operative complaint." Id. at 1040; see also Whole Women's Health, 136 S. Ct. at 2305 (finding persuasive appellate court opinions that held that res judicata does not bar claims predicated on events that postdate the filing of the initial complaint). "[C]laim preclusion does not apply to claims that were not in existence and could not have been sued upon—i.e., were not legally cognizable—when the allegedly preclusive action was initiated." Media Rights Techs., Inc. v. Microsoft Corp., 922 F.3d 1014, 1021 (9th Cir. 2019) (citing Howard, 871 F.3d at 1040).

Here, there is no dispute that the Miller settlement and the current action involved a final judgment on the merits and the two cases involve identical parties (i.e., Cheslow and Ghirardelli). However, there is no identity of claims. The Miller settlement applied to consumers who purchased defendant's products between August 17, 2008 to October 2,

1  2014 and the initial complaint was filed August 17, 2012.  See No. 12-cv-04936-LB, Dkt. 1.  In this case, however, Cheslow alleges that she was deceived by defendant's product when she purchased it in December 2018.  Her current false advertising claim was not in existence when the Miller action was initiated in 2012 (or even when the case was settled in 2014).  Therefore, her current claim cannot be precluded by Miller.

Next, "[i]ssue preclusion, or collateral estoppel, 'bars successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context of a different claim.'"  Howard, 871 F.3d at 1040–41 (internal quotation marks omitted) (quoting Taylor v. Sturgell, 553 U.S. 880, 892 (2008)).  The party asserting issue preclusion must demonstrate: "(1) the issue at stake was identical in both proceedings; (2) the issue was actually litigated and decided in the prior proceedings; (3) there was a full and fair opportunity to litigate the issue; and (4) the issue was necessary to decide the merits."  Id. at 1041 (quoting Oyeniran v. Holder, 672 F.3d 800, 806 (9th Cir. 2012)).

The issues that defendant apparently identified in its motion are that Ghirardelli's White Chips product are marketed in a manner that suggests or indicates they contain white chocolate and that the product names are confusing or misleading.  Mtn. at 13.  These issues are identical in both proceedings and necessary to decide the merits.  However, the issue preclusion falls apart when assessing whether the issues were actually litigated and decided in the prior proceeding.

As a general rule, "a stipulated judgment may properly be given collateral estoppel effect, at least when the parties manifest an intent to be collaterally bound by its terms."  Cal. State Auto. Ass'n Inter-Ins. Bureau v. Superior Court ("CSAA"), 50 Cal. 3d 658, 664 (1990).  As identified by the district court in Moralez v. Whole Foods Market, Inc., 897 F. Supp. 2d 987, 996–97 (N.D. Cal. 2012), the California Court of Appeal appears to be split on whether a settlement constitutes a stipulated judgment.  Compare Rice v. Crow, 81 Cal. App. 4th 725, 736 (Ct. App. 2000) with Alpha Mech., Heating & Air Conditioning, Inc. v. Travelers Cas. & Sur. Co. of Am., 133 Cal. App. 4th 1319, 1333 (Ct. App. 2005).  It is

7

not necessary to parse the differences between Rice and Alpha Mechanical because, as noted in CSAA, issue preclusion is only appropriate where the parties manifest an intent to be collaterally bound by the terms of the stipulated judgment.  In CSAA, an insurer signed a stipulation in which the insured admitted liability and therefore issue preclusion was appropriate.  50 Cal. 3d at 665.  Conversely, in Moralez, the settlement agreement contained a provision that the settlement was "no admission or concession" by the defendant of liability.  Id. at 997.  Therefore, there was no stated intent to be bound by that settlement.

Here, similar to Moralez and unlike CSAA, the parties in Miller included a "No Admission of Liability" clause in the settlement agreement.  That clause states, in relevant part:

> This Agreement reflects . . . the compromise and settlement of disputed claims among the Parties hereto, and neither this Agreement nor the releases given herein, nor any consideration therefor, nor any actions taken to carry out this Agreement are intended to be, nor may they be deemed or construed to be, an admission or concession of liability, or the validity of any claim, or defense, or of any point of fact or law . . . on the part of any Party.

Dkt. 35-5, ¶ 8.4 (emphasis added).  Thus, the intent of the parties in Miller was not to establish the validity of any point of fact or law or to admit liability.  For that reason, class members and Ghirardelli did not intend to be collaterally bound in future litigation and issue preclusion is not applicable here.

**2.    Release of Claims**

As previously stated, a settlement agreement can release claims based on the identical factual predicate as the underlying claims.  Reyn's Pasta Bella, 442 F.3d at 748.  The identical factual predicate rule can be stated as "the [Miller] release encompasses [plaintiff's] claims if they arise from an identical factual predicate as the claims asserted by the [Miller] class."  Id.  California law also applies because a class action release is a contract, and contract interpretation is ordinarily a question of state law.  See Navarro v. Mukasey, 518 F.3d 729, 733 (9th Cir. 2008) ("Our interpretation of the settlement

agreement is governed by principles of California contract law."). Under California law, a contract "must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting." Id. at 734 (quoting Cal. Civ. Code § 1636). "If contractual language is clear and explicit, it governs." Bank of the W. v. Superior Court, 2 Cal. 4th 1254, 1264–65 (1992) (citing Cal. Civ. Code § 1638). "On the other hand, '[i]f the terms of a promise are in any respect ambiguous or uncertain, it must be interpreted in the sense in which the promisor believed, at the time of making it, that the promisee understood it.'" Id. at 1264–65 (alteration in original) (quoting Cal. Civ. Code § 1649).

The Miller settlement release provides that

> the Settlement Class Members . . . shall release and forever discharge the Released Parties from and shall be forever barred from instituting, maintaining, prosecuting or asserting any and all claims . . . of any nature whatsoever, whether individual, class or representative, whether legal, equitable, . . . or otherwise, whether known or unknown, . . . that actually were, or could have been, asserted in the Litigation or that relate to . . . (2) allegations that the names Ghirardelli has used for its White Chips, including "Premium Baking Chips—Classic White" and "Classic White Chips" are confusing or misleading, or violate any FDA regulations or applicable laws; [or] (3) allegations that the White Chips are marketed in a manner that suggests or indicates that they are white chocolate or chocolate, or that the White Chips contain white chocolate, chocolate, or cocoa butter.

Dkt. 35-5, ¶ 8.2(a). The agreement defines the terms in the preceding excerpt as follows: "White Chips" are defined as "Premium Baking Chips—Classic White" (id. ¶ 1.1); "Settlement Class Members" are defined "all persons, other than Excluded Persons, who, between August 17, 2008, and the date of Preliminary Approval, purchased, in the United States, any of the Products" (id. ¶ 2.31); "Released Parties" means defendant Ghirardelli (id. ¶ 2.28). "Excluded Persons" means "(1) the Honorable Judge Laurel Beeler and any member of her immediate family; (2) Honorable Judge Edward Infante and any member of his immediate family; (3) any government entity; (4) any of the Released Parties; and (5) any persons who timely opt out of the Settlement Class." Id. ¶ 2.12. The date of Preliminary Approval was October 2, 2014.

Plaintiff does not dispute that she was a Settlement Class Member; indeed, she

9

filed a claim and was paid as part of the Miller settlement.  Therefore, section 8.2(a) applies and Cheslow released any claims "that actually were, or could have been, asserted in the [Miller] Litigation."  Id. ¶ 8.2(a).  The language does not contain any ambiguity and the plain language governs.  As was true in the preclusion analysis, Cheslow could not have asserted her false advertising claims, based on her 2018 purchase of defendant's product, in the Miller litigation because her second claim did not exist at the time of the Miller litigation.  Moreover, under the "identical factual predicate" test, articulated in Reyn's Bella Pasta, the claim Cheslow released in the Miller settlement and the claim in the present action are not identical despite the striking similarity in the causes of action and product between the two cases.  Thus, plaintiff did not release her present claims pursuant to the Miller settlement agreement.

## CONCLUSION

For the foregoing reasons, defendant's motion for partial summary judgment is DENIED.

**IT IS SO ORDERED.**

Dated: May 4, 2020

/s/ Phyllis J. Hamilton
PHYLLIS J. HAMILTON
United States District Judge