1  MAYER BROWN LLP
   Dale J. Giali (SBN 150382)
2  *dgiali@mayerbrown.com*
   Keri E. Borders (SBN 194015)
3  *kborders@mayerbrown.com*
   350 South Grand Avenue, 25th Floor
4  Los Angeles, California 90071-1503
   Telephone:     (213) 229-9500
5  Facsimile:     (213) 576-8122

6  *Attorneys for Ghirardelli Chocolate Company*

7

8                    **IN THE UNITED STATES DISTRICT COURT**

9                   **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

10 | LINDA CHESLOW and STEVEN PRESCOTT, individually and on behalf of all others similarly situated, | Case No. 4:19-cv-07467-PJH |
|---|---|
| Plaintiffs, | **GHIRARDELLI CHOCOLATE COMPANY'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS THE AMENDED COMPLAINT** |
| v. | Hearing Date: June 17, 2020; *Matter taken under submission. No hearing*. |
| GHIRARDELLI CHOCOLATE COMPANY and DOES 1 THROUGH 10, inclusive. | Honorable Phyllis J. Hamilton |
| Defendants. | |

# REPLY MEMORANDUM

## I. THE ASPECTS OF THE FIRST AMENDED COMPLAINT AND PLAINTIFFS' OPPOSITION BRIEF THAT SIMPLY REPEAT WHAT THE COURT ALREADY HAS CONSIDERED AND REJECTED ARE FULLY AND PROPERLY HANDLED BY THE COURT'S APRIL 8 ORDER.

In its April 8 order, this Court held that a claim for false advertising must be supported by label statements or other advertisements that describe or tout *qualitative attributes* of the product. The Court then applied this common-sense test to plaintiffs' allegations of false advertising – *e.g.*, the word "white," the word "premium," images of white chips, images of a cookie containing white chips, the location of the product in the bakery aisle of the grocery store in proximity to chocolate products, etc. – and found that none described or touted the qualitative attribute of *chocolate*. Without any advertising describing or touting the qualitative attribute of chocolate, the Court ruled that plaintiffs failed to state a claim that Ghirardelli falsely advertises the product as white chocolate. Though they don't appear to realize it, plaintiffs seem to recognize the point of the Court's qualitative attribute test: "'White,' of course, is a color, but *when used with* 'chocolate,' *refers* to a specific type of chocolate . . . .'" Opp. 14:8-9 (emphasis added).

"Because" Ghirardelli's label "would not change in an amended complaint" – and, therefore, plaintiffs would not be able to point to label statements that describe or tout the qualitative attribute of chocolate – the Court was "skeptical" that plaintiffs would be able to amend to state a claim. ECF No. 34 at 18. Like its acknowledgement and application of the qualitative attribute test, the Court's skepticism as to amendment was also right on the mark.

As Ghirardelli points out in its motion, the amended complaint repeats and relies on each of the failed *factual allegations* from the initial complaint. In their opposition brief, plaintiffs confirm that point:

- The word **white** means it's white chocolate (Opp., 2:9, 3:22, 3:27-28, 4:12-14, 10:22, 13:10, 14:6-12);

- The word **premium** means it's white chocolate (*id*., 3:9, 3:21, 3:27-28, 10:22, 15:22-17:6);

- The **image of white chips** means it's white chocolate (*id*., 3:10, 3:22, 3:28-4:1, 4:14-17, 10:21);
- The **image of a cookie with white chips** means it's white chocolate (*id*., 3:10, 3:22, 4:17-19);
- The fact that it's a **baking product** means it's white chocolate (*id*., 3:10-11, 3:22-23, 4:1-2, 10:22-24, 15:5-7);
- The fact that **Ghirardelli is known for chocolate** means it's white chocolate (*id*., 10:20-21); and
- The fact that it can be found in the grocery store **in proximity to chocolate products on the bakery aisle** means it's white chocolate (*id*., 3:11-12, 3:23-24, 4:1-2, 4:19-21, 10:24, 15:2-21). (To bolster their on-the-bakery-aisle-in-proximity-to-chocolate-products allegation, plaintiffs (at FAC ¶ 2) make an "information and belief" allegation that Ghirardelli somehow *controls* the placement of its products in retail stores. Ghirardelli challenged the legal sufficiency of the allegation in its motion. Mot., 16 of 27. In their opposition brief, plaintiffs neither respond to that argument nor provide a defense of the allegation.)

In their opposition brief plaintiffs also make clear that – to demonstrate the sufficiency of these factual allegations – they are relying on the exact same *legal principles* raised and found unavailing in the first motion to dismiss. So, for example, plaintiffs again rely on legal arguments that (i) plaintiffs' allegations must be taken as true, (ii) false advertising is inherently a fact question, (iii) the viability of a false advertising claim can't be determined on motion to dismiss, (iv) advertising need only be deceptive, not affirmatively false, to be actionable, and (v) Ghirardelli may not rely on the objective information provided on the label, such as the ingredient list. *See, e.g.*, Opp. 1:25-26, 2:2-10, 6:15-16, 6:21-7:6, 10:6-17, 11:7-12:9, 12:10-13:7, 13:14-15, 14:12-15:1 and passim citations to *Williams v. Gerber*, 552 F. 3d 934 (9th Cir. 2008).

Despite repeating the exact same factual allegations and the exact same legal principles from the first motion to dismiss proceedings (or, more likely, because of it), plaintiffs never

1  address, let alone reconcile, the Court's qualitative attribute test. Plaintiffs do not point to any

2  representations from Ghirardelli that expressly or impliedly tout or reference the qualitative

3  attribute of chocolate. Plaintiffs never comment on or acknowledge the Court's ruling that

4  without any representations of qualitative chocolate attributes plaintiffs do not state a false

5  advertising claim.

6  Ultimately, and as to all of these repeated factual allegations and legal arguments, the

7  analysis from the Court's April 8 order governs, and dismissal with prejudice is warranted.

**II.    THE ASPECT OF THE FIRST AMENDED COMPLAINT AND PLAINTIFFS' OPPOSITION BRIEF THAT IS *NEW* – A CONSUMER SURVEY – DOES NOT SOMEHOW CONVERT PLAINTIFFS' DEFICIENT ALLEGATIONS INTO A VIABLE CLAIM.**

What's new in the amended complaint is the alleged results of a post-lawsuit consumer survey commissioned by plaintiffs' counsel. Opp., 4:24-6:5, 7:21-10:5. But, a consumer survey cannot convert deficient allegations of false advertising – which, of course, is exactly what we have here (*see* § I, above) – into a viable claim. *Becerra v. Dr Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1231 (9th Cir. 2019) (allegations regarding the results of a consumer survey does not "make plausible the allegation that reasonable consumers are misled by the term 'diet.'"); *Elbaz v. Vitals Int'l Grp.*, 2018 WL 5868739 at *4 (C.D. Cal. Apr. 10, 2018) (allegations regarding a consumer survey could not overcome the court's conclusion that, as a matter of law, the challenged label statement was not misleading); *Goldman v. Bayer AG*, 2017 WL 3168525 at *10 (N.D. Cal. July 26, 2017) (dismissing complaint with prejudice because plaintiff failed to identify anything false or deceptive about the defendant's advertising, even after plaintiff's counsel suggested that he would conduct "consumer surveys" to show deception), *rev'd in part on other grounds in a summary decision*, 742 Fed. App'x 325 (9th Cir. Nov. 15, 2018).[1]

Plaintiffs' attempt to bolster the survey allegations fails. For example, plaintiffs contend that "*Becerra* and *Kwan* demonstrate that an expert consumer survey is a useful tool . . . in

---

[1] It's notable – and entirely consistent with *Becerra* – that the Court indicated its skepticism that plaintiffs would be able to state a viable claim via an amended complaint (ECF No. 34, at 18:6), even after plaintiffs made clear their intentions to add allegations about a consumer survey. *See* ECF No. 20, 14-15.

determining whether the plaintiffs' claims are plausible." Opp. at 9. Neither *Becerra* nor *Kwan* do that.

For starters, *Kwan v. SanMedica Int'l*, 854 F. 3d 1088 (9th Cir. 2017), has nothing to do with a consumer survey, and it certainly does not provide a "roadmap" for how plaintiffs can plead a viable claim, as plaintiffs assert (at Opp., 10:3). To be sure, *Kwan* refers to a "percentage" (Opp. 8:10-15), but that has nothing to do with a survey (it relates to objective testing of the mean increase in HGH levels in the challenged product). Plaintiffs' "percentages," on the other hand, are the percentage of respondents who answered survey questions in a certain way. Nothing about *Kwan*'s discussion of the objectively tested percentage of HGH in a product assists plaintiffs, with respect to their survey allegations or otherwise.

Unlike *Kwan, Becerra* does address the role a survey can play regarding the legal sufficiency of a complaint at the pleading stage. And, as to that issue, *Becerra* specifically rejects the notion that a plaintiff can use a survey to save an otherwise non cognizable false advertising claim. *Id*. at 1231. That ruling, and the *Becerra* court's rationale, is directly applicable and dispositive here.

Plaintiffs' attempt to distinguish *Becerra* is unfounded. According to plaintiffs, the word "diet" (which was at issue in *Becerra*) is a relative term with relative meanings, but the word "white" (at issue here) is not such a relative term "because 'white' has been used in connection with 'white chocolate' since 1930." Opp. at 8:22-25, 9:15-21. That's plain nonsense. "White" likely has far more relative meanings related to food than does "diet," and almost all have nothing to do with chocolate, *e.g*., "white corn," "white asparagus," "white flour," "white wine," "white sauce," etc. In these instances, and the many more not mentioned here, the word "white" is denoting a color of food and perhaps a style of food, but is not otherwise providing a description of a qualitative attribute of the product or the product's ingredients. It's the *other* word that is providing that, *e.g*., corn, flour, wine, etc. And with respect to the Ghirardelli chip product, of course, white is *not* used with the important *other* word: chocolate. That, in itself, would pretty clearly make an impression on a consumer that the product must *not* be chocolate, especially if there really is 90 years of history of white being used with the word chocolate.

Whatever the case, there simply is no argument that the word "white" is largely or predominantly associated with chocolate even if white chocolate has been around since 1930. Put another way, the mere use of the word white does not conjure up images of white chocolate.

Plaintiffs' argument gets even more absurd when they claim that, unlike *Becerra*, "this case presents a straightforward, binary question: do consumers believe the Product contains white chocolate or not." *Id*. 9:15-17. While plaintiffs do indeed state a binary question, it's a self-serving question of plaintiffs' own making and is entirely untethered to the relative meanings of the word "white." And, of course, such a "binary question" could be imagined about any false advertising case, including the theory from *Becerra*: "do consumers believe Diet Dr Pepper assists in weight loss/maintenance or not"; or from *Hill v. Roll*, 195 Cal. App. 4th 1295 (2011): "do consumers think an image of a green water droplet means a product is environmentally superior or not." Plaintiffs' purported "straightforward, binary question" test is not just circular nonsense, but it is entirely unrelated to determining whether a complaint states a claim and it provides zero support to plaintiffs.

Moreover, plaintiffs wrongly insinuate that the results of their survey are far more definitive than the survey in *Becerra*. Opp., 9:17-25. While plaintiffs imply that the survey in *Becerra* resulted in only 12.5% of consumers answering in a manner that corroborated plaintiffs' theory of deception (*id*.), it was actually 75% or more (*see* No. 3:17cv5921, ECF No. 60, ¶ 42 (N.D. Cal.)). Again, though, none of this matters because *Becerra* teaches that – regardless the results – a survey cannot somehow save a false advertising claim that, as here, is not supported by viable allegations of false advertising relating to a qualitative attribute.

Finally, plaintiffs state that Ghirardelli's "attack [of] the survey [is] on scientific grounds," and then argue that such an attack is not permitted on a motion to dismiss (because the allegations must be accepted as true) and can be made only on summary judgment. Opp., 8:3-6. This argument is wrong in every possible way. *First*, none of this matters because a survey cannot cure an otherwise deficient false advertising claim, as detailed above. *Second*, Ghirardelli is not attacking the survey allegations by critiquing the survey methodology. To be sure, the survey methodology is certainly subject to attack, but that is not an argument Ghirardelli is

making on this motion. *Third*, and in any event, there is no reason that Ghirardelli (or the Court) could not assess and attack the survey methodology on scientific grounds. To be sure, *Becerra* holds that the allegations surrounding the survey in *that* case must be accepted as true at the pleading stage (Opp., 8:3-5, 9:7-8), but the entire relevant record in *Becerra* was a single paragraph in the complaint summarizing top level results (*see* No. 3:17cv5921, ECF No. 60, ¶ 42 (N.D. Cal.). Here, on the other hand, plaintiffs have both summarized the results *and* attached to the complaint a 46-page survey report. That entire report is fair game on a motion to dismiss.

*Fourth*, and in addition to the primary *Becerra* point that surveys cannot save an otherwise deficient false advertising claim, this particular survey is specifically *irrelevant* to the false advertising theory here, separate and apart from any challenges to the survey methodology. That's because (i) the survey is not testing the entire advertising, it is only testing a single side of the product packaging and is not showing the ingredient list, and (ii) reasonable consumers, including survey respondents, don't know the requirements of FDA-compliant white chocolate, as plaintiffs readily acknowledge (Opp., 19:1-3, 19:13-15). As to this latter point, plaintiffs' theory of liability is that Ghirardelli's products do not comply with FDA's strict ingredient requirements for white chocolate. *See, e.g.*, Opp., 3:5-7, 3:14-16. Because survey respondents don't know what makes something white chocolate – and were not provided a definition of white chocolate or an opportunity to review the ingredient list as part of the survey – their opinions as to whether a given product is white chocolate is plainly irrelevant. There is no basis to conclude that survey respondents were referring to FDA-compliant white chocolate when they agreed with the suggestive question asked of them and, if they weren't, their responses are not in any way supportive of plaintiffs' theory of liability. Indeed, it's far more likely that the Ghirardelli white chips fully met the survey respondents' expectations about the product. A principle from *Becerra* that plaintiffs quote in their opposition (at 9:9-10) makes a point that is equally applicable here and further shows why the survey is irrelevant, *i.e.*, plaintiffs' "survey does not address" what a reasonable consumer would understand from the word "white."

### III. PLAINTIFFS ACKNOWLEDGE A LACK OF RELIANCE AND INJURY

Plaintiffs' concession detailed above – that plaintiffs and reasonable consumers don't know the requirements of FDA-compliant white chocolate (Opp., 19:1-3, 19:13-15) – also dooms plaintiffs' reliance and injury allegations, as well as standing. If plaintiffs admittedly did not know that FDA defines "white chocolate" as requiring cocoa butter, plaintiffs cannot plausibly allege that the absence of cocoa butter mattered at all to their purchasing decision, or that their expectations were somehow frustrated by what they received. In other words, because plaintiffs admittedly did not know the ingredients in "white chocolate," they cannot plausibly claim that the presence or absence of those ingredients affected their decision whether to buy the white chips in the first instance or caused them injury. *See, e.g.*, *Beasley v. Lucky's Stores, Inc.*, 400 F.Supp.3d 942, 959-60 (N.D. Cal. 2019) (plaintiff could not have relied on "0g Trans Fat" label in buying decision when he didn't know at the time of purchase that trans fat was purportedly harmful to his health).

### IV. LINDA CHESLOW'S CLAIMS ARE RELEASED BY THE *MILLER* SETTLEMENT

Plaintiffs hardly address Ghirardelli's arguments regarding the impact of the *Miller* release on Ms. Cheslow's claims, and do not interpose a substantive objection to Ghirardelli's request that the Court reconsider its decision denying the converted motion for summary judgment. ECF No. 37. Ghirardelli respectfully requests that the Court reconsider its order denying summary judgment and, for the reasons set forth in the motion, find that Linda Cheslow's claims are released by the *Miller* settlement. If the Court is not inclined to do that, Ghirardelli alternatively asks the Court to vacate the order (ECF No. 37) and then terminate the case by granting the motion to dismiss with prejudice.

### CONCLUSION

For the reasons detailed above and in the motion to dismiss, Ghirardelli respectfully requests that the Court grant the motion and dismiss this case with prejudice and reconsider and reverse its decision on the partial summary judgment or, alternatively, vacate the Court's original partial summary judgment order.

| | | |
|---|---|---|
| 1 | Dated: June 3, 2020 | MAYER BROWN LLP<br>Dale J. Giali<br>Keri E. Borders |
| 2 | | |
| 3 | | By: _____/s/ *Dale J. Giali*_____<br>         Dale J. Giali |
| 4 | | |
| 5 | | Attorneys for Defendant<br>GHIRARDELLI CHOCOLATE COMPANY |