United States District Court<br>Northern District of California

1

2

3

4

UNITED STATES DISTRICT COURT

5

NORTHERN DISTRICT OF CALIFORNIA

6

7

LINDA CHESLOW, et al.,

8

          Plaintiffs,

9

    v.

10

GHIRARDELLI CHOCOLATE COMPANY,

11

12

          Defendant.

13

Case No.  19-cv-07467-PJH

**ORDER GRANTING MOTION TO DISMISS**

Re: Dkt. No. 43

14

     Before the court is defendant Ghirardelli Chocolate Co.'s ("Ghirardelli" or

15

"defendant") motion to dismiss.  The matter is fully briefed and suitable for decision

16

without oral argument.  Having read the parties' papers and carefully considered their

17

arguments and the relevant legal authority, and good cause appearing, the court hereby

18

GRANTS defendant's motion for the following reasons.

19

**BACKGROUND**

20

     On September 19, 2019, plaintiffs Linda Cheslow and Steven Prescott ("plaintiffs")

21

filed a complaint in Sonoma County Superior Court, which defendant removed to federal

22

court on November 13, 2019.  Dkt. 1.  The complaint asserted three causes of action:  (1)

23

violation of California Unfair Competition Law Business & Professions Code § 17200 et

24

seq.; (2) False and Misleading Advertising in violation of Business & Professions Code

25

§ 17500 et seq.; and (3) violation of California Consumer Legal Remedies Act, Civil Code

26

§ 1750 et seq.  Dkt. 1-1.  On April 8, 2020, this court granted defendant's motion to

27

dismiss and dismissed the complaint with leave to amend.  See Dkt. 34.  On April 29,

28

2020, plaintiffs filed their First Amended Complaint ("FAC") alleging the same three

1    causes of action as the original complaint.  Dkt. 36.  Plaintiffs seek to certify a class

2    action of all persons who purchased Ghirardelli's "Premium Baking Chips Classic White

3    Chips" (the "product") in the United States or, alternatively, in California.

4         The court's April 8th order contains a more thorough discussion of the factual

5    background of this case.  Dkt. 34 at 2–4.  For purposes of the FAC, plaintiffs have pled

6    the following new allegations.  Plaintiffs cite and attach to the FAC a consumer study

7    commissioned by plaintiffs to determine whether and to what extent defendant's labeling

8    misleads consumers into believing that the product contains white chocolate.  FAC ¶ 4.

9    The survey's sample size was 1,278 respondents; respondents were equally allocated to

10   respond to questions concerning one of the following four products: Ghirardelli's Classic

11   White Chips, Nestle Toll House's Premier White Morsels, Target's Market Pantry White

12   Baking Morsels, and Walmart's White Baking Chips.  Id., Ex. A at 3.  Respondents were

13   asked demographic questions and then shown the front panel of one of the four products.

14   Id. at 20–21.  They were then asked questions such as "Based on your review of this

15   package, do you think that this product contains white chocolate."  Id. at 22.

16        According to the survey results, 91.88 percent of respondents indicated that they

17   believed the product contained white chocolate while 8.12 percent did not think the

18   product contained white chocolate.  Id. ¶ 4.  The respondents were asked "If, after

19   purchasing this Product, you learned that the Product contained no white chocolate or

20   chocolate of any kind, would you be less or more satisfied with you purchase?"  Id.  64.69

21   percent of respondents answered that they would either be "much less satisfied" or

22   "somewhat less satisfied."  Id. 35.31 percent of respondents would be "neither less nor

23   more satisfied," "somewhat more satisfied," or "much more satisfied."  Id.  Similar

24   percentages responded that they would be much or somewhat less likely to purchase the

25   product again (65.32 percent) as compared to more likely to purchase the product again

26   (34.68 percent).  Id.

27        Additionally, each plaintiff alleges with greater specificity the reasons why they

28   were deceived by the packaging and why they relied on the product's package.  For

United States District Court
Northern District of California

1  example, Cheslow desired white chocolate chips to bake holiday cookies, bars, and

2  brownies and found the product in a section of a Target store labeled "chocolate chips."

3  Id. ¶ 43.  Cheslow saw the picture of white chocolate chips on the label, as well as the

4  references to "Premium" and "Classic White Chips," and she believed that the product

5  contained white chocolate.  Id.  She did not spend "minutes and minutes" comparing the

6  product's front and back label to determine whether it contained chocolate because she

7  assumed it contained chocolate based on the front panel.  Id.  Prescott alleges that he

8  relied upon the labeling and advertising of the product, which he reasonably believed to

9  be white chocolate.  Id. ¶ 44.

10  Plaintiffs also discuss at length the history of chocolate, how chocolate is made,

11  and the attributes of white chocolate.  See id. ¶¶ 10–21.  This discussion is relevant

12  because, according to plaintiffs, chocolate is perceived to be a unique, irreplaceable

13  product and reasonable consumers do not think they are purchasing a "cheap knock-off

14  pretending to be chocolate."  Id. ¶ 18.

15  **DISCUSSION**

16  **A.    Legal Standard**

17  A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests for the

18  legal sufficiency of the claims alleged in the complaint.  Ileto v. Glock Inc., 349 F.3d 1191,

19  1199–1200 (9th Cir. 2003).  Under Federal Rule of Civil Procedure 8, which requires that

20  a complaint include a "short and plain statement of the claim showing that the pleader is

21  entitled to relief," Fed. R. Civ. P. 8(a)(2), a complaint may be dismissed under Rule

22  12(b)(6) if the plaintiff fails to state a cognizable legal theory, or has not alleged sufficient

23  facts to support a cognizable legal theory.  Somers v. Apple, Inc., 729 F.3d 953, 959 (9th

24  Cir. 2013).

25  While the court is to accept as true all the factual allegations in the complaint,

26  legally conclusory statements, not supported by actual factual allegations, need not be

27  accepted.  Ashcroft v. Iqbal, 556 U.S. 662, 678–79 (2009).  The complaint must proffer

28  sufficient facts to state a claim for relief that is plausible on its face.  Bell Atl. Corp. v.

3

1   Twombly, 550 U.S. 544, 555, 558–59 (2007).

2          "A claim has facial plausibility when the plaintiff pleads factual content that allows

3   the court to draw the reasonable inference that the defendant is liable for the misconduct

4   alleged."  Iqbal, 556 U.S. at 678.  "[W]here the well-pleaded facts do not permit the court

5   to infer more than the mere possibility of misconduct, the complaint has alleged—but it

6   has not 'show[n]'—'that the pleader is entitled to relief.'"  Id. at 679 (quoting Fed. R. Civ.

7   P. 8(a)(2)).  Where dismissal is warranted, it is generally without prejudice, unless it is

8   clear the complaint cannot be saved by any amendment.  In re Daou Sys., Inc., 411 F.3d

9   1006, 1013 (9th Cir. 2005).

10         Review is generally limited to the contents of the complaint, although the court can

11  also consider documents "whose contents are alleged in a complaint and whose

12  authenticity no party questions, but which are not physically attached to the plaintiff's

13  pleading."  Knievel v. ESPN, 393 F.3d 1068, 1076 (9th Cir. 2005) (quoting In re Silicon

14  Graphics Inc. Sec. Litig., 183 F.3d 970, 986 (9th Cir. 1999), superseded by statute on

15  other grounds as stated in In re Quality Sys., Inc. Sec. Litig., 865 F.3d 1130 (9th Cir.

16  2017)); see also Sanders v. Brown, 504 F.3d 903, 910 (9th Cir. 2007) ("[A] court can

17  consider a document on which the complaint relies if the document is central to the

18  plaintiff's claim, and no party questions the authenticity of the document." (citation

19  omitted)).  The court may also consider matters that are properly the subject of judicial

20  notice (Lee v. City of Los Angeles, 250 F.3d 668, 688–89 (9th Cir. 2001)), and exhibits

21  attached to the complaint (Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc., 896 F.2d

22  1542, 1555 n.19 (9th Cir. 1989)).

23         For plaintiffs' claims that sound in fraud, the complaint must also meet the

24  heightened pleading standard of Federal Rule of Civil Procedure 9(b).  See Kearns v.

25  Ford Motor Co., 567 F.3d 1120, 1125 (9th Cir. 2009).  Rule 9(b) requires a party alleging

26  fraud or mistake to state with particularity the circumstances constituting fraud or mistake.

27  "To satisfy Rule 9(b)'s particularity requirement, the complaint must include an account of

28  the time, place, and specific content of the false representations as well as the identities

4

1  of the parties to the misrepresentations." Depot, Inc. v. Caring for Montanans, Inc., 915

2  F.3d 643, 668 (9th Cir. 2019) (internal quotation marks omitted).  In other words,

3  "[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of

4  the misconduct charged." Kearns, 567 F.3d at 1124.  Plaintiffs must also offer "an

5  explanation as to why the statement or omission complained of was false or misleading."

6  In re GlenFed, Inc. Sec. Litig., 42 F.3d 1541, 1548 (9th Cir. 1994) (en banc), superseded

7  by statute on other grounds as stated in SEC v. Todd, 642 F.3d 1207, 1216 (9th Cir.

8  2011).

9         Finally, if dismissal is warranted, it is generally without prejudice, unless it is clear

10  that the complaint cannot be saved by any amendment. Sparling, 411 F.3d at 1013.

11  "Leave to amend may also be denied for repeated failure to cure deficiencies by previous

12  amendment." Abagninin v. AMVAC Chem. Corp., 545 F.3d 733, 742 (9th Cir. 2008).

13  **B.    Analysis**

14         **1.    Whether the Product Would Deceive a Reasonable Consumer**

15         Plaintiffs bring three claims under three different California statutes: the Unfair

16  Competition Law ("UCL"), False Advertising Law ("FAL"), and the Consumer Legal

17  Remedies Act ("CLRA").  The UCL prohibits any "unlawful, unfair or fraudulent business

18  act or practice." Cal. Bus. & Prof. Code § 17200.  "The false advertising law prohibits any

19  unfair, deceptive, untrue, or misleading advertising." Williams v. Gerber Prod. Co., 552

20  F.3d 934, 938 (9th Cir. 2008) (citing Cal. Bus. & Prof. Code § 17500) (internal quotation

21  marks omitted).  The CLRA prohibits "unfair methods of competition and unfair or

22  deceptive acts or practices."  Cal. Civ. Code § 1770.

23         The Ninth Circuit has explained that "these [three] California statutes are governed

24  by the 'reasonable consumer' test." Williams, 552 F.3d at 938 (quoting Freeman v. Time,

25  Inc., 68 F.3d 285, 289 (9th Cir. 1995)); accord Consumer Advocates v. Echostar Satellite

26  Corp., 113 Cal. App. 4th 1351, 1360 (Ct. App. 2003).  "Under the reasonable consumer

27  standard, [plaintiffs] must show that members of the public are likely to be deceived."

28  Williams, 552 F.3d at 938.  "The California Supreme Court has recognized that these

1  laws prohibit not only advertising which is false, but also advertising which[,] although

2  true, is either actually misleading or which has a capacity, likelihood or tendency to

3  deceive or confuse the public." Id. (internal quotation marks omitted) (quoting Kasky v.

4  Nike, Inc., 27 Cal. 4th 939, 951 (2002)).  The reasonable consumer test requires more

5  than a mere possibility that defendant's product "might conceivably be misunderstood by

6  some few consumers viewing it in an unreasonable manner." Lavie v. Procter & Gamble

7  Co., 105 Cal. App. 4th 496, 508 (Ct. App. 2003).  Rather, the test requires a probability

8  "that a significant portion of the general consuming public or of targeted consumers,

9  acting reasonably in the circumstances, could be misled." Id.

10        Generally, "whether a reasonable consumer would be deceived . . . [is] a question

11  of fact not amenable to determination on a motion to dismiss." Ham v. Hain Celestial

12  Grp., Inc., 70 F. Supp. 3d 1188, 1193 (N.D. Cal. 2014); see Reid v. Johnson & Johnson,

13  780 F.3d 952, 958 (9th Cir. 2015).  "However, in rare situations a court may determine,

14  as a matter of law, that the alleged violations of the UCL, FAL, and CLRA are simply not

15  plausible." Ham, 70 F. Supp. 3d at 1193.

16        In this case, the reasonable consumer test governs the plausibility of all three of

17  plaintiffs' claims.  The court begins with a brief summary of its prior order and then

18  addresses the new allegations and arguments put forth by the parties.

19              a.      Summary of the Prior Order

20        In its prior order, the court distinguished between factual allegations relating to the

21  product's packaging and facts external to the packaging.  With regard to the former, the

22  court first determined that the adjective "white" in the term "White Chips" did not define

23  the food itself but rather defined the color of the food.  Dkt. 34 at 9.  Given the common

24  understanding of the word white, it would not be appropriate to base liability off of a

25  misunderstanding of that word. Id.  Next, the court found that the word "premium" in the

26  phrase "Premium Baking Chips" constituted puffery and was not actionable. Id. at 10–11.

27  With regard to the images of baking chips and cookies with chips, the court determined

28  that it would be unreasonable to draw a specific qualitative message about a product

1   from an image on that product.  Id. at 12–13.  Finally, the court determined that, because

2   the product did not contain a deceptive act to be dispelled, plaintiffs could not ignore

3   information on the product's label.  Id. at 14–15.  Specifically, the ingredient list did not

4   include the words chocolate or cocoa and the general consuming public would not be

5   free to ignore the ingredient list.  Id. at 15.

6       The court then surveyed the facts and circumstances extrinsic to the product's

7   label.  First, the court reasoned that, because plaintiffs did not allege they relied on

8   Ghirardelli's website when purchasing the product, they could not allege they were

9   deceived by that website.  Id. at 15–16.  Second, the court found plaintiffs did not allege

10  they relied on a so-called bait and switch on the part of Ghirardelli.  Id. at 16.  Third, the

11  court found that the placement of the product in the grocery aisle was not alleged to be

12  under defendant's control and, further, that drawing a particular conclusion from a

13  product's placement was not supported by the allegations.  Id. at 17.  Because the court

14  found that plaintiffs failed to state a claim for their UCL, FAL, and CLRA causes of action,

15  it declined to reach defendant's remaining arguments.  Id.

16      With respect to the court's prior findings, defendant argues that the FAC relies

17  largely on the same arguments as those in the initial complaint.  Mtn. at 6–7.  In

18  response, plaintiffs argue that the amended complaint cures any defects in the original

19  complaint.  Opp. at 7.  Specifically, plaintiffs have re-pled the basis for their desire to

20  purchase white chocolate and why they believed the product contained white chocolate.

21  Id.  They also have identified what advertising and packaging they relied on and aver that

22  they would not have purchased the product had they known it was fake white chocolate.

23  Id.  Later in the opposition, plaintiffs reargue several of the same arguments previously

24  decided in the court's prior order, including that the ingredient list is not a defense to a

25  deceptive advertising claim, that the term "White" refers to the type of chocolate but not

26  its color, that the placement of the product next to other Ghirardelli chocolate chips is

27  deceptive, and the reference to "premium" in "Premium Baking Chips" is deceptive non-

28  puffery.  Id. at 12–17.

7

1    Plaintiffs' arguments concerning issues decided in the court's prior order generally

2  do not put forward any reason for the court to change its findings.[1]  Accordingly, the court

3  reaffirms its prior order and turns to the new allegations included in the FAC.

4              **b.      New Allegations**

5    The most significant new allegation in the FAC concerns a consumer survey that

6  plaintiffs commissioned.  See FAC ¶ 4 & Ex. A.  As detailed above, plaintiffs

7  commissioned a consumer survey that resulted in nearly 92 percent of respondents who

8  viewed the front panel of the product indicating that they thought it contained white

9  chocolate while only 8 percent thought it did not contain white chocolate.  Id. ¶ 4.  A

10  majority of respondents would either be much less satisfied or somewhat less satisfied

11  with their purchase if they learned that the product contained no white chocolate.  Id.

12    Citing Becerra v. Dr. Pepper/Seven Up, Inc., 945 F.3d 1225 (9th Cir. 2019),

13  defendant urges the court to reject the survey as legally insufficient because plaintiffs fail

14  to identify anything false or misleading on the product's label.  Mtn. at 9.  Defendant also

15  contends that even if the court were to accept a survey generally, this particular survey

16  should not be persuasive because the respondents were only shown the front panel of

17  the package but not the back panel, which includes the ingredient list.  Id. at 9–10.

18  Ghirardelli next argues that a more plausible reading of the survey is that the

19  respondents used "white chocolate" as a shorthand rather than meaning FDA-compliant

20  white chocolate.  Id. at 10.

21    Plaintiffs argue that the consumer survey should be accepted and this case is

22

---

23  [1] After briefing was completed but prior to the noticed hearing date for its motion,
   defendant filed a notice of supplemental authority, citing an opinion by Judge Freeman in
24  Prescott, et al. v. Nestle USA, Inc., No. 19-cv-07471-BLF (N.D. Cal. June 4, 2020).  Dkt.
   50.  Plaintiffs object to this filing on the grounds that Judge Freeman's decision was not
25  published and is not relevant to plaintiffs' FAC that purportedly cured any defects.  Dkt.
   51.  Neither reason is sufficient grounds to strike defendant's filing and the court
26  OVERRULES plaintiffs' objection.  Judge Freeman's opinion involved allegations by the
   same plaintiffs and same law firm against a different defendant concerning a similar white
27  chip product.  Judge Freeman's opinion relied in part on this court's prior order dismissing
   plaintiffs' claims, so citing that opinion with approval would be somewhat circular.  Nor
28  does Judge Freeman's order touch on the key issue in this order, the impact of the
   consumer survey.

United States District Court
Northern District of California

distinguishable from <u>Becerra</u>.  Opp. at 8.  According to plaintiffs, <u>Becerra</u> dealt with an interpretation of a relative term in a product, but this case involves a binary question— whether a reasonable consumer believes the product contains white chocolate or not.  <u>Id.</u> at 9.  Plaintiffs also point out that 92 percent of respondents support their interpretation of the product, while the plaintiffs in <u>Becerra</u> were only able to demonstrate that 12.5 percent of consumers supported the plaintiffs' interpretation.  <u>Id.</u>

In <u>Becerra v. Dr. Pepper/Seven Up, Inc.</u>, the Ninth Circuit addressed the persuasive effect of a consumer survey alleged as part of a complaint.  That case involved an allegation that the word "diet" in the product "Diet Dr. Pepper" meant drinking Diet Dr. Pepper assisted in weight loss or healthy weight management.  <u>Becerra</u>, 945 F.3d at 1227.  Based on dictionary definitions of the term "diet," the court determined that "no reasonable consumer would assume that Diet Dr. Pepper's use of the term 'diet' promises weight loss or management."  <u>Id.</u> at 1229.  Similar to this case, the plaintiff in <u>Becerra</u> had amended her complaint in response to the district court's order dismissing the complaint for failure to state a claim.  To cure her deficiencies, the plaintiff included a summary of a consumer survey as proof that the majority of consumers would think that the term "diet" offers certain health benefits.  <u>Id.</u> at 1227.

On appeal, the <u>Becerra</u> court noted that because the survey was included in the operative complaint, its allegations must be accepted as true.  <u>Id.</u> at 1231.  The court then stated:

> a reasonable consumer would still understand "diet" in this context to be a relative claim about the calorie or sugar content of the product.  The survey does not address this understanding or the equally reasonable understanding that consuming low-calorie products will impact one's weight only to the extent that weight loss relies on consuming fewer calories overall.  At bottom, the survey does not shift the prevailing reasonable understanding of what reasonable consumers understand the word "diet" to mean or make plausible the allegation that reasonable consumers are misled by the term "diet."

<u>Id.</u>  The court held that the plaintiff did not state a claim for false advertising.  <u>Id.</u>

In its prior order, this court determined plaintiffs' claim that the word "white" in the

9

1    term "white chips" meant white chocolate chips was unreasonable.  Dkt. 34 at 9–10.

2    Further, because there were no affirmative misrepresentations on the label, a plaintiff

3    could not ignore the ingredient list that discloses the actual ingredients.  Id. at 14.  This

4    presents a similar question as Becerra: whether a consumer survey can shift the

5    prevailing reasonable understanding that white chips does not include chocolate.

6             As an initial observation, the Becerra court noted that "[t]he survey cannot, on its

7    own, salvage [the plaintiff's] claim."  945 F.3d at 1231.  One district court interpreted that

8    statement as a generally applicable rule that a survey, on its own, cannot satisfy the

9    reasonable consumer test but found a consumer survey to provide support for the

10   plaintiff's false advertising claim.  Tucker v. Post Consumer Brands, LLC, No. 19-CV-

11   03993-YGR, 2020 WL 1929368, at *5 (N.D. Cal. Apr. 21, 2020) ("[W]hile the consumer

12   survey described in the amended complaint cannot, on its own, satisfy the reasonable

13   consumer test, it provides further support for plaintiff's position." (footnote omitted)).  In

14   Tucker, unlike Becerra, the court determined that the plaintiff's allegations plausibly

15   stated a claim and the consumer survey bolstered the court's finding that a significant

16   portion of reasonable consumers would be deceived.  This case, however, is more similar

17   to Becerra than Tucker because this court has already determined that plaintiffs fail to

18   state a claim concerning allegations both intrinsic and extrinsic to the product's label.

19            The survey itself undermines, rather than supports, plaintiffs' claims.  Of course,

20   the court must accept as true all factual allegations in the complaint and attached to the

21   pleadings—this includes the allegations concerning the survey and the survey itself,

22   attached as an exhibit.  What's notable about the survey is not what it does allege but

23   what it fails to address.  As defendant points out, the survey only showed respondents

24   the front panel of the product.  FAC, Ex. A at 20.  By omitting the back panel, the survey

25   deprived respondents of relevant information, namely the ingredient list.  As this court's

26   prior order makes clear, where the defendant does not commit a deceptive act, the

27   reasonable consumer cannot entirely disregard the ingredient list.  Dkt. 34 at 14; see also

28   Truxel v. Gen. Mills Sales, Inc., No. C 16-04957 JSW, 2019 WL 3940956, at *4 (N.D. Cal.

United States District Court
Northern District of California

10

United States District Court
Northern District of California

1    Aug. 13, 2019) ("Plaintiffs cannot plausibly claim to be misled about the sugar content of

2    their cereal purchases because Defendant provided them with all truthful and required

3    objective facts about its products, on both the side panel of ingredients and the front of

4    the products' labeling.").  Even in cases that find a false advertising claim to be plausible,

5    courts have recognized that "sometimes what is said on the back of a package makes a

6    difference."  Brady v. Bayer Corp., 26 Cal. App. 5th 1156, 1167 (Ct. App. 2018).

7    Because the survey does not address the ingredient list (by omitting the back panel), it

8    cannot transform plaintiffs' unreasonable understanding concerning white chips into a

9    reasonable one.

10         Plaintiffs advance a few additional arguments concerning the survey.  First, they

11    cite Kwan v. SanMedica International, 854 F.3d 1088, 1091–92 (9th Cir. 2017), for the

12    proposition that a study can support a false advertising claim involving an affirmative

13    misrepresentation.  Opp. at 8.  The excerpt quoted by plaintiffs supporting this proposition

14    was itself a quoted excerpt from the district court's opinion and the Ninth Circuit did not

15    rely on or discuss the effect of a study on a false advertising claim.  The court does not

16    discount the fact that a consumer survey can be used to prove a false advertising claim.

17    Instead, the issue here is not quantum of proof but whether a consumer survey can

18    transform an unreasonable understanding of a product into a reasonable one.

19         Second, plaintiffs characterize Becerra's discussion of a consumer survey as

20    cabined to false advertising claims involving relative terms whereas this case does not

21    involve a relative claim.  Id. at 8–9.  Becerra did not turn on whether the claim was

22    relative; it turned on whether the plaintiff's understanding concerning the defendant's

23    claim was reasonable or unreasonable.  The Becerra court's final sentence concerning

24    the consumer survey emphasizes this point: "At bottom, the survey does not shift the

25    prevailing reasonable understanding of what reasonable consumers understand the word

26    "diet" to mean or make plausible the allegation that reasonable consumers are misled by

27    the term 'diet.'"  945 F.3d at 1231.

28         In sum, the court previously determined that it was unreasonable for plaintiffs to

United States District Court
Northern District of California

1   think that the term "white" in "white chips" meant white chocolate chips.  Critical to this

2   conclusion was both the lack of an affirmative deceptive statement and the presence of

3   an ingredient list to dispel any doubt as to the contents of the product.  Plaintiffs newly

4   added allegations do not substantially change the court's prior conclusion and,

5   accordingly, the court finds that plaintiffs' UCL, FAL, and CLRA claims all fail to state a

6   claim as a matter of law.  As before, the court need not reach defendant's alternative

7   arguments regarding standing and Federal Rule of Civil Procedure 9(b)'s heightened

8   pleading requirements and does not revisit its separate order on defendant's partial

9   motion for summary judgment.  See Dkt. 37.

10        Finally, plaintiffs request leave to amend if the court dismisses the FAC.  Opp. at

11   22.  The court previously expressed its skepticism that any amendment could cure the

12   defects in the complaint because Ghirardelli's packaging would not change in any

13   amended complaint.  Dkt. 34 at 18.  Plaintiffs have not identified what additional facts

14   they might allege to cure any deficiencies and, if those facts existed, then they would

15   have been included in the FAC.  Any further amendment would be futile and, accordingly,

16   the claims will be dismissed with prejudice.

17                                **CONCLUSION**

18        For the foregoing reasons, defendant's motion to dismiss plaintiffs' first through

19   third causes of action is GRANTED and plaintiffs' claims are DISMISSED WITH

20   PREJUDICE.

21        **IT IS SO ORDERED.**

22   Dated: July 17, 2020

23                                    /s/ Phyllis J. Hamilton
24                                    PHYLLIS J. HAMILTON
                                     United States District Judge
25

26

27

28