**CLARKSON LAW FIRM, P.C.**
Ryan J. Clarkson (SBN 257074)
rclarkson@clarksonlawfirm.com
Matthew T. Theriault (SBN 244037)
mtheriault@clarksonlawfirm.com
Bahar Sodaify (SBN 289730)
bsodaify@clarksonlawfirm.com
Zachary T. Chrzan (SBN 329159)
zchrzan@clarksonlawfirm.com
Lauren E. Anderson (SBN 329173)
landerson@clarksonlawfirm.com
9255 Sunset Blvd., Ste. 804
Los Angeles, CA 90069
Tel: (213) 788-4050
Fax: (213) 788-4070

*Attorneys for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LINDA CHESLOW and STEVEN PRESCOTT, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>GHIRARDELLI CHOCOLATE COMPANY, and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. 4:19-cv-07467-PJH<br><br>**[CLASS ACTION]**<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION TO ALTER OR AMEND JUDGMENT PURSUANT TO FED. R. CIV. P. 59(e); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Hon. Phyllis J. Hamilton<br><br>Action Filed:  September 19, 2019<br><br>Hrg. Date:  September 23, 2020<br>Hrg. Time:  9:00 a.m.<br>Courtroom:  3 |

# NOTICE OF MOTION AND MOTION

**TO DEFENDANTS AND THEIR COUNSEL OF RECORD, PLEASE TAKE NOTICE** that on September 23, 2020 at 9:00 am, or as soon thereafter as the matter may be heard, in the courtroom of the Honorable Judge Phyllis Hamilton, United States District Court for the Northern District of California, located at 1301 Clay Street, Oakland, CA 94612, 3rd Floor, Courtroom 3, Plaintiffs Linda Cheslow and Steven Prescott ("Plaintiffs"), on behalf of themselves, the general public, and all others similarly situated, by and through their counsel Ryan J. Clarkson, Matthew T. Theriault, Bahar Sodaify, Zachary T. Chrzan, and Lauren E. Anderson of Clarkson Law Firm, P.C., shall and hereby move the court for an order to alter or amend judgment pursuant to Fed. R. Civ. P. 59(e).

This motion is based upon this Notice of Motion and Motion and the accompanying Memorandum of Points and Authorities and any additional argument or evidence as may be presented to the Court.

DATED: August 14, 2020                    **CLARKSON LAW FIRM, P.C.**

　　　　　　　　　　　　　　　　　　　　　 /s/ Ryan J. Clarkson
　　　　　　　　　　　　　　　　　　　　　Ryan J. Clarkson, Esq.
　　　　　　　　　　　　　　　　　　　　　Matthew T. Theriault, Esq.
　　　　　　　　　　　　　　　　　　　　　Bahar Sodaify, Esq.
　　　　　　　　　　　　　　　　　　　　　Zachary T. Chrzan, Esq.
　　　　　　　　　　　　　　　　　　　　　Lauren E. Anderson, Esq.

　　　　　　　　　　　　　　　　　　　　　Attorneys for Plaintiffs

## I. INTRODUCTION

The Court must reverse the judgment entered against Plaintiffs on July 17, 2020 because new Ninth Circuit authority issued on July 27, 2020 demonstrates the Court's Order was in error. *See Moore v. Mars Petcare US, Inc.*, 2020 U.S. App. LEXIS 23747, *15 (9th Cir. Cal. July 28, 2020) (trial court's order dismissing consumer false advertising claims reversed). Federal Rule of Civil Procedure 59(e) requires a court to alter or amend its judgment when new controlling authority issued after judgment demonstrates the court's dismissal was in error.

First, *Moore* makes clear that the Court is bound by the reasonable consumer standard **as pleaded** without substituting its *own* judgment as to what the reasonable consumer *should* believe. Here, it is a question of fact inappropriate for resolution on a motion to dismiss. Second, the ingredient list defense does not, nor in this case, could not, cure any confusion caused by the front labeling. Plaintiffs allege Ghirardelli Chocolate Company deceptively advertises its Premium Baking Chips Classic White Chips (the "Product") in a way that duped consumers into believing they are purchasing white chocolate. Despite front and center images of white chocolate chips and a white chocolate chip cookie on the Product label, despite the "white" descriptor classifying the type of chocolate, and despite its shelf placement alongside other Ghirardelli chocolate chip products, the Product does not contain white chocolate. These are the allegations. *Moore* makes clear that, even where the Court disagrees (like here), the Court cannot dismiss the claims.

Second, in this case, as in *Moore*, nothing in the ingredient list would clear up any confusion by any consumer, let alone by the ones who brought this suit. The ingredient list does not list out proportions of ingredients by percentages. There is no way any consumer, including Plaintiffs, could tell whether this product meets the FDA's definition of white chocolate.

Third, independent of the confines of *Moore*, the Court committed clear error by conducting a *Daubert* hearing, and then discrediting it without allowing actual briefing and actual discovery on the same. As alleged, Plaintiffs' large-scale, statistically-significant, consumer survey conducted by a credible, qualified expert found that 92% of consumers purchasing Ghirardelli's Product believed that it contained white chocolate **based on the front label**. The Court's factual inquiry into the sufficiency of Plaintiffs' consumer survey is dramatically premature. The Court's

Clarkson Law Firm, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, California 90069

failure to take as true Plaintiffs' well-pleaded allegations of consumer deception constitutes manifest error, and the Court should alter or amend its judgment to reflect the sufficiency of the allegations as a matter of law.

## II. LEGAL STANDARD

Rule 59(e) of the Federal Rules of Civil Procedure permits the filing of motions to alter or amend a judgment within 28 days after entry of the judgment. Under Rule 59(e), "[r]econsideration is appropriate if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *School Dist. No. 1J v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993). Here, alteration of the order dismissing Plaintiffs' case is appropriate because a new Ninth Circuit decision holds that when assessing plausible deception by advertisers, the Court cannot accept an ingredient list as a defense to otherwise deceptive packaging. Additionally, the court committed clear error by conducting a sua sponte *Daubert* motion on a pleadings challenge. For these reasons, the Court must reconsider its decision and alter its judgment.

## III. ARGUMENT

### A. The Court's Order Dismissing the Case Must be Reversed Because New Ninth Circuit Authority Makes Clear that Defendant Cannot Use a Back-Label Ingredient Statement to Cure a Misleading Front Label

"[A] federal court sitting in diversity [over Plaintiffs' California state law claims], [ ] must apply the substantive law of California, as interpreted by the California Supreme Court." *Moore*, 2020 U.S. App. LEXIS 23747 at *12-13, quoting *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1103 (9th Cir. 2013). Applying California law, the Court is bound by the reasonable consumer standard **as pleaded**, and Plaintiffs have sufficiently alleged that reasonable consumers are deceived by Ghirardelli's White Chips product. *Id.*; *see also Williams v. Gerber Prods. Co.*, 552 F.3d 934, 937 (9th Cir. 2008).

Plaintiffs alleged how and why the named-Plaintiffs were deceived by Ghirardelli's White Chips. *See generally* Dkt. 36. These named-Plaintiffs went further; they supported their

allegations with a large-scale, statistically significant, expert consumer survey which demonstrated that 92% of consumers believed the Product contained white chocolate. Instead of taking these allegations as true, as *Moore* instructs the Court to do, the Court substituted its own judgment for that of consumers. "[T]he reasonable consumer standard requires a probability that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Moore*, 2020 U.S. App. LEXIS 23747 at *15. The Court, however, turned this standard on its head by instead asking <u>itself</u> whether the general consuming public's interpretation of Ghirardelli's label was or was not reasonable. The standard is whether the public, not the court, is likely to be deceived. *See Williams,* 552 F.3d at 938. Plaintiffs' allegations, bolstered by their consumer survey, establish the plausibility of their claims.

### i.  As Alleged, Reasonable Consumers Are Deceived by Ghirardelli's Label

Plaintiff's First Amended Complaint establishes that reasonable consumers are deceived by Ghirardelli's White Chips because the net impression of the product label, branding, and placement leads consumers to believe the Product contains white chocolate. *See, e.g.,* First Amended Complaint, Dkt. 36 ¶ 1 ("Ghirardelli Chocolate Company [is] a company synonymous with chocolate"; "through an intentionally deceptive labeling scheme, reasonable consumers are given the impression the Product contains white chocolate"); *Id.* at ¶ 2 ("Both named-Plaintiffs reasonably believed that the Product contained white chocolate because: (1) the Product is labeled as 'White,' which, as described below, has been historically used to describe a distinct and real type of chocolate, and the understanding of both named-Plaintiffs is that the term 'White' describes a distinct and real type of chocolate; (2) the Product label has pictures of what Ghirardelli intended to be white chocolate chips, and both named-Plaintiffs viewed these pictures and reasonably believed that they depicted white chocolate chips when they purchased the Product; (3) the Product label has pictures of what Ghirardelli intended to be white chocolate chip cookies, and both named-Plaintiffs viewed and relied on the depictions of white chocolate chip cookies when they purchased the Product; and (4) the Product was placed among other chocolate products"). Plaintiffs also attach the results of a large-scale, statistically-significant consumer survey which found that 92% of consumers purchasing Ghirardelli's Product believed that it

contained white chocolate. *See generally* Dkt. 36, Exhibit A. As sufficiently alleged, the reasonable consumer is deceived by Ghirardelli's Product.

    *Moore* elucidates the likelihood of consumer deception in these cases. For example, "brand names **by themselves** can be misleading in the context of the product being marketed." *Moore*, 2020 U.S. App. LEXIS 23747 at *17 (internal citations omitted). This is especially true where, as here, the brand name has a particular meaning to consumers. *See* Dkt. 36 ¶ 1 ("Ghirardelli Chocolate Company [is] a company synonymous with chocolate"). Descriptive brand names like Ghirardelli require "little thought" of consumers, and may be misleading where they leave consumers susceptible to purchasing in reliance on the brand name and without investigating the back of the box. *Id.* at *17 (internal citations omitted). *Moore* establishes that this fact alone warranted denial of Ghirardelli's motion to dismiss: Plaintiffs' and consumers' reliance on the brand name "Ghirardelli" is a factor supporting their claim that they believed the Product contained "chocolate." *Accord* First Amended Complaint, Dkt. 36, ¶ 22 ("Ghirardelli is synonymous with 'chocolate.'")

    *Moore* also finds plausible consumer deception where a product lacks an ingredient which the product brand, label, and images suggest it would contain. *Moore*, 2020 U.S. App. LEXIS 23747 at *18 ("[A] reasonable consumer being told about 'prescription pet food' may be surprised to learn that there are no drugs or controlled ingredient in the pet food by nature of brand names like 'Prescription Diet' or an 'Rx' symbol on the food packaging."). *Moore* also overrules the Court's factual finding that "it would be unreasonable to draw a specific qualitative message about a product from an image on that product." (Dkt. 52, 6:27-28, 7:1.)

    Here, Plaintiffs purchased "Ghirardelli Classic White Chips" and were surprised to learn that there is no white chocolate at all, despite the Ghirardelli "White" descriptor classifying the type of chocolate, pictures of white chocolate chips, and pictures of white chocolate chip cookies depicted on the labeling. Further, a reasonable consumer purchasing Ghirardelli Chocolate Company's Classic White Chips would be surprised to learn that there is no chocolate in the product, despite the fact that all other baking chips marketed and sold by Ghirardelli chocolate company do, in fact, contain chocolate.

In sum, *Moore* provides further explanation as to how reasonable consumers view Ghirardelli's Classic White Chips as deceptively devoid of white chocolate. The Court's factual findings to the contrary are improper on a motion to dismiss. *See Moore*, 2020 U.S. App. LEXIS 23747 at *15 ("[W]hether a practice is deceptive will usually be a question of fact not appropriate for decision on demurrer or motions to dismiss.") (internal citations and quotations omitted). Many of the findings are also internally inconsistent in the context of Plaintiffs' case. For example, the Court found that "[g]iven the common understanding of the word white, it would not be appropriate to base liability off of a misunderstanding of that word." (Dkt. 52, 6:23-25.) If this were true, Ghirardelli could label its other baking chips "Ghirardelli Classic Dark Chips," and the Court would assume the common understanding of the word "dark" as "the absence of light." This is implausible. "White," "dark," and "milk" are commonly understood types of chocolate, especially within the context of baking chips, and located on a product from Ghirardelli Chocolate Company. All of this is alleged in Plaintiffs' First Amended Complaint. *See generally*, Dkt. 34. The Court's factual findings are improper on a motion to dismiss, impermissibly ignore Plaintiffs' well-pleaded allegations, and are contrary to *Moore*.

### ii. *Moore* Holds that Ingredient Lists Cannot Cure Deceptive Front Labels

*Moore* rejects the Court's finding that Defendant's ingredient list dispels any consumer deception. Contrary to the Court's position, if a back label does not confirm the representations made on the front of a product, a defendant's ingredient list does not defeat a plaintiff's claim. *Moore*, 2020 U.S. App. LEXIS 23747 at *16. Other Ninth Circuit decisions have made this clear. *Williams,* 552 F.3d at 939-40 (finding "fruit juice" label and images deceptive despite presence of fruit juice in ingredient list). The Court's position that "the general consuming public would not be free to ignore the ingredient list" (Dkt. 52, 7:3-5) is contrary to Ninth Circuit law. Where, as alleged here, the front of a product is misleading, consumers are not required to investigate the back label to determine the truth from the fine print of an ingredient list. *Williams*, *supra*.

Furthermore, consumers purchasing low-value goods make decisions quickly and "won't have the time or interest to read about [the product] on [the] website or the back of the box." *Moore*, 2020 U.S. App. LEXIS 23747 at *17 (quoting the California Attorney General's amicus

brief). This is especially true in circumstances like this, where the Product's brand name carries a specific meaning to consumers. Conversely, if common sense would not lead anyone to be misled, then the claim may be disposed of at a motion to dismiss stage. *Moore*, 2020 U.S. App. LEXIS 23747 at *17. Because Plaintiffs' well-pleaded allegations and consumer survey establish the deceptive nature of Ghirardelli's Classic White Chips Product, the Court committed plain error in finding Defendant's ingredient list cured the deception.

### iii. Ghirardelli's Ingredient List Does Not Inform Consumers of the Presence or Absence of White Chocolate

Even if the Court were to ignore new Ninth Circuit precedent and require consumers to view the ingredient list, Ghirardelli has failed to establish what on the ingredient list dispels the deception caused by front label. *See Moore*, 2020 U.S. App. LEXIS 23747 at *16; *Williams,* 552 F.3d at 939-40. In this circumstance, the ingredient list is not, and could not be, instructive because it would not identify the requisite percentages of cacao fat and dairy that the FDA requires there to be in order to be defined as white chocolate. Pursuant to FDA regulations, white chocolate must contain at least 20% cacao fat and at least 3.5% milkfat. 21 C.F.R. § 163.124. (Dkt. 36 ¶ 12(e).) Products containing white chocolate are not required to list "white chocolate" as an ingredient, and many white chocolate products do not.

As consumers are not aware of specific regulations which determine what is or is not white chocolate, they are left to discover the absence of white chocolate well after the point of purchase when they discover a fake product does not melt or taste like chocolate. *See* Dkt. 36 ¶¶ 27-30 (listing consumer reviews expressing disappointment at absence of white chocolate where the Product did not melt or taste like white chocolate). Furthermore, even if consumers were held to a sophisticated consumer standard (they are not), and were required to consult the ingredients (they are not), and knew the specific FDA-mandated percentages of milkfat and cacao fat (they do not), they <u>still</u> would find themselves unable to discern from the ingredient list whether or not a product contains white chocolate. This is because white chocolate is classified by ingredient percentage,

7

PLAINTIFFS' MOTION TO ALTER OR AMEND JUDGEMENT PURSUANT TO FED. R. CIV. P. 59(e); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

and ingredient lists do not denote ingredient percentage.[1] **In short, it is impossible for a consumer to determine whether a product contains at least 20% cacao fat and at least 3.5% milkfat by reading a product's ingredient list.** The Court's order on this point was contrary to law and fact.

### B. The Order and Judgment Should Be Amended as to the Court's Survey Findings Because They Were Derived from Clearly Erroneous Findings of Fact and a Misapplication of Law Via Premature Daubert Hearing

Furthermore, the Court inappropriately tested the reliability of Plaintiff's consumer survey findings at the pleadings stage. This kind of factual inquiry into a party's evidence is more appropriate for a separately-noticed *Daubert* hearing, where the Court could meaningfully "consider the conflicting evidence and make findings about the soundness and reliability of the methodology employed by the scientific expert." *Daubert v. Merrell Dow Pharm., Inc.*, 43 F.3d 1311, 1318 n.10 (9th Cir. 1995). Instead of awaiting a *Daubert* hearing, the Court adopted Defendant's position and disregarded Plaintiffs' consumer survey on the grounds that (1) Plaintiffs purportedly failed to identify anything false or misleading on the Product's label, and (2) the survey respondents were only shown the front label. *See* Dkt. 52 p. 10-11. However, where, as here, Plaintiffs have alleged a plausible understanding of the relevant facts, the parties' respective positions will be assessed on the merits, not at the motion to dismiss stage. *See Naimi v. Starbucks Corp.*, 798 F. App'x 67, 69 (9th Cir. 2019) (quoting *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) ("when 'there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible, plaintiff's complaint survives a motion to dismiss ... [unless] defendant's plausible alternative explanation is so convincing that plaintiff's explanation is implausible.'").

Contrary to the Court's assertion that the survey "undermines, rather than supports, plaintiffs' claims," (Dkt. 52, 10:19) survey evidence at the pleading stage is a useful tool in determining the plausibility of plaintiffs' claims. *See, e.g. Kwan v. SanMedica Int'l*, 854 F.3d

---

[1] This demonstrates the error of the Court's finding that consumers should have noted that the Product's "ingredient list did not include the words chocolate or cocoa[.]" (Dkt. 52, 7:3-5.)

8

PLAINTIFFS' MOTION TO ALTER OR AMEND JUDGEMENT PURSUANT TO FED. R. CIV. P. 59(e); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

1088 (9th Cir. 2017). Plaintiffs pleaded the results of a large-scale, statistically-significant, expert consumer survey which found that 92% of consumers purchasing Ghirardelli's Product believed that it contained white chocolate. *See* Dkt. 36, Exhibit A. Plaintiffs' survey is legally sufficient, and at minimum, should be assessed in full via *Daubert* hearing.

## IV.   CONCLUSION

For the foregoing reasons, this Honorable Court should enter an order (i) granting Plaintiff's motion to alter or amend the order and judgment of dismissal of the complaint pursuant to Rule 59(e), (ii) vacating the order and judgment of dismissal entered on July 17, 2020, (iii) denying Ghirardelli's motion to dismiss Plaintiff's First Amended Complaint, and (iv) for such other and further relief as the court deems just and proper.

DATED: August 14, 2020

**CLARKSON LAW FIRM, P.C.**

 /s/ Ryan J. Clarkson
Ryan J. Clarkson, Esq.
Matthew T. Theriault, Esq.
Bahar Sodaify, Esq.
Zachary T. Chrzan, Esq.
Lauren E. Anderson, Esq.

*Attorneys for Plaintiffs*

9

PLAINTIFFS' MOTION TO ALTER OR AMEND JUDGEMENT PURSUANT TO FED. R. CIV. P. 59(e); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

Clarkson Law Firm, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, California 90069