1
2
3
4                    UNITED STATES DISTRICT COURT
5                   NORTHERN DISTRICT OF CALIFORNIA
6
7    LINDA CHESLOW, et al.,
                                              Case No.  19-cv-07467-PJH
8                    Plaintiffs,
9           v.                                **ORDER DENYING MOTION TO
                                              ALTER OR AMEND JUDGMENT**
10   GHIRARDELLI CHOCOLATE
     COMPANY,                                 Re: Dkt. No. 54
11
                     Defendant.
12
13

14        Before the court is plaintiffs' motion to alter or amend judgment pursuant to

15   Federal Rule of Civil Procedure 59(e).  The matter is fully briefed and suitable for

16   decision without oral argument.  Having read the parties' papers and carefully considered

17   their arguments and the relevant legal authority, and good cause appearing, the court

18   hereby rules as follows.

19                              **BACKGROUND**

20        On September 19, 2019, plaintiffs Linda Cheslow and Steven Prescott ("plaintiffs")

21   filed a complaint in Sonoma County Superior Court, which defendant Ghirardelli

22   Chocolate Co. ("Ghirardelli" or "defendant") removed to federal court on November 13,

23   2019.  Dkt. 1.  The complaint asserted three causes of action: (1) violation of California

24   Unfair Competition Law Business & Professions Code § 17200 et seq.; (2) False and

25   Misleading Advertising in violation of Business & Professions Code § 17500 et seq.; and

26   (3) violation of California Consumer Legal Remedies Act, Civil Code § 1750 et seq.  Dkt.

27   1-1.

28        On April 8, 2020, this court granted defendant's first motion to dismiss and

United States District Court
Northern District of California

1   dismissed the complaint with leave to amend.  See Dkt. 34.  On April 29, 2020, plaintiffs

2   filed their First Amended Complaint ("FAC") alleging the same three causes of action as

3   the original complaint.  Dkt. 36.  On July 17, 2020, the court granted defendant's second

4   motion to dismiss the FAC, dismissed the FAC with prejudice, (Dkt. 52), and entered

5   judgment on behalf of defendant, (Dkt. 53).  Plaintiffs now seek to alter or amend the

6   court's judgment.  Dkt. 54.  They have also filed a notice of appeal.  Dkt. 55.

7           The court's April 8th order contains a more thorough discussion of the factual

8   background of this case.  Dkt. 34 at 2–4.  For purposes of this order, plaintiffs seek to

9   certify a class action of all persons who purchased Ghirardelli's "Premium Baking Chips

10  Classic White Chips" (the "product") in the United States or, alternatively, in California.

11  FAC ¶¶ 1, 62.

**DISCUSSION**

**A.    Legal Standard**

14          Rule 59(e) of the Federal Rules of Civil Procedure permits a party to seek an order

15  altering or amending a judgment.  Rule 59(e) does not describe the conditions under

16  which a court should reconsider a prior decision, but under Ninth Circuit authority, it is

17  appropriate to alter or amend a judgment under Rule 59(e) if "(1) the district court is

18  presented with newly discovered evidence, (2) the district court committed clear error or

19  made an initial decision that was manifestly unjust, or (3) there is an intervening change

20  in controlling law."  United Nat. Ins. Co. v. Spectrum Worldwide, Inc., 555 F.3d 772, 780

21  (9th Cir. 2009) (quoting Zimmerman v. City of Oakland, 255 F.3d 734, 740 (9th Cir.

22  2001)).

23          "Since specific grounds for a motion to amend or alter are not listed in the rule, the

24  district court enjoys considerable discretion in granting or denying the motion.  However,

25  reconsideration of a judgment after its entry is an extraordinary remedy which should be

26  used sparingly."  McDowell v. Calderon, 197 F.3d 1253, 1255 n.1 (9th Cir. 1999) (per

27  curiam) (quoting 11 Charles Alan Wright et al., Fed. Practice & Proc., § 2810.1 (2d ed.

28  1995)).

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

**B.    Analysis**

Plaintiffs argue that the Ninth Circuit's opinion in Moore v. Mars Petcare US, Inc., 966 F.3d 1007 (9th Cir. 2020), requires the court to alter or amend its judgment because Moore represents new controlling authority issued after judgment that demonstrates the court's dismissal was in error.  Mtn. at 2.  Plaintiffs also contend that, independent of Moore, the court committed clear error by conducting a Daubert hearing concerning plaintiffs' consumer survey and then discrediting the survey without actual briefing and discovery.  Id.

At the outset, the court notes that the primary basis for plaintiffs' Rule 59(e) motion is that Moore represents a change in controlling law.  Indeed, in their reply brief, plaintiffs contend that Moore changes Ninth Circuit law.  Reply at 2.  That contention is inaccurate.  As the Ninth Circuit noted, federal courts sitting in diversity apply state law, here California law.  Moore, 966 F.3d at 1016 (citing Hinojos v. Kohl's Corp., 718 F.3d 1098, 1103 (9th Cir. 2013)).  In this case, the controlling laws are California's Unfair Competition Law, False Advertising Law, and Consumer Legal Remedies Act and none of those laws have changed.  While in some cases the Ninth Circuit's interpretation of statutory law may represent a change in controlling law, Moore cites prior federal and California appellate decisions and then applies those well-established precedents to the particular facts of the case.  Indeed, Moore explains that "[s]everal themes emerge from cases evaluating the potential to mislead under the reasonable consumer test," id. at 1017, and then proceeds to evaluate the facts "under [those] guidelines," id. at 1018.  Thus, Moore represents an application of long-standing precedent rather than a change in controlling law necessary to grant a Rule 59(e) motion.

However, Rule 59(e) also permits a court to alter or amend a judgment based on clear error and it is plausible that Ninth Circuit authority could demonstrate that the court's application of California law to the facts of this case was clear error.  Accordingly, the court proceeds to consider the merits of plaintiffs' motion.

Moore involved false advertising claims against defendant pet food manufacturers

1  that sold prescription pet food in packaging labeled "Prescription Diet," among other

2  similar labels.  966 F.3d at 1013.  In September 2012, the U.S. Food & Drug

3  Administration ("FDA") published a draft compliance policy guidance, finalized in 2016,

4  that proposed a set of nine factors it would consider in determining whether to initiate an

5  enforcement action against pet food products labeled as intended for use in the

6  diagnosis, cure, mitigation, treatment or prevention of disease.  Id. at 1014.  Relying in

7  part on the compliance guidance, the plaintiffs alleged that the defendants

8  misrepresented that the prescription pet food "(1) qualified as some sort of drug or

9  medicine; (2) met a medical requirement for the pet; (3) had been evaluated by the FDA

10  as a drug; (4) had been evaluated by the FDA regarding its intended uses and effects; (5)

11  required a prescription per federal or state law; and (6) warranted a particular premium

12  price."  Id. at 1016.

13        On appeal from the district court's order granting a Rule 12(b)(6) motion to

14  dismiss, the Ninth Circuit reversed, citing three reasons.  First, common sense dictated

15  that a product requiring a prescription meant that the product was a medicine that

16  contained a drug or controlled substance, but the plaintiffs alleged there were no drugs or

17  controlled substance in the pet food.  Id. at 1018.  Second, in relying on an intervening

18  role played by veterinarians who prescribed the food, the district court erred because the

19  defendant manufacturers marketed to consumers, in addition to the veterinarians.  Id.

20  The Ninth Circuit reasoned that even though the FDA's 2016 compliance guidance

21  sanctioned the role of veterinarians in supervising the consumption of pet food, the FDA's

22  compliance guidance did not signal the FDA's authorization of the products, nor did it

23  authorize the defendants' labeling and marketing representations.  Id. at 1018–19.  Third,

24  the court found persuasive the fact that the defendants violated three of the conditions

25  listed in the FDA's compliance guidance, even though the guidance was non-binding and

26  no enforcement action had been brought by the FDA.  Id. at 1019; see also id. at 1022

27  (Rawlinson, J., dissenting) (discussing non-binding nature of FDA's compliance

28  guidance).

United States District Court
Northern District of California

4

United States District Court
Northern District of California

1    With that summary in mind, the court turns to plaintiffs' arguments.

2    **1.    Whether the Product Brand Name is Misleading**

3    Plaintiffs, relying on Moore's statement that brand names by themselves can be

4    misleading, argue that Ghirardelli's brand name has a particular meaning to consumers, it

5    is synonymous with chocolate.  Mtn. at 5.  According to plaintiffs, deceptive brand names

6    like Ghirardelli require "little thought" of consumers and may be misleading where they

7    leave consumers susceptible to purchasing in reliance on the brand name and without

8    investigating the back of the box.  Id.  Plaintiffs would apply that reasoning here because

9    they purchased "Ghirardelli Classic White Chips" and were surprised to learn that there is

10   no white chocolate at all, even though other baking chips sold by Ghirardelli do contain

11   chocolate.  Id.

12   Defendant asserts that Moore does not hold that brand names alone warrant

13   denial of a motion to dismiss.  Opp. at 6.  Rather, only when a brand name plausibly

14   supports a deception claim, can a plaintiff state a claim based on the brand name alone.

15   Id.

16   "[B]rand names by themselves can be misleading in the context of the product

17   being marketed."  Moore, 966 F.3d at 1018 (quoting Brady v. Bayer Corp., 26 Cal. App.

18   5th 1156, 237 Cal. Rptr. 683, 694 (Ct. App. 2018)).  "Descriptive brand names require of

19   the consumer 'little thought,' which can make consumers susceptible to purchasing

20   because 'they won't have the time or interest to read about [the product] on [the] website

21   or the back of the box.'"  Id. (alterations in original) (emphasis omitted) (quoting Brady,

22   237 Cal. Rptr. at 694).  Moore cited an example from the California Court of Appeal's

23   decision in Brady where "a product called 'One a Day' gummy vitamins, which required

24   two gummies a day for a full dosage, [was] explicitly misleading."  Id. (citing Brady, 237

25   Cal. Rptr. at 696–97).  The Moore court applied this principle, reasoning that the brand

26   names "Prescription Diet" or an "Rx" symbol on the packaging were deceptive and

27   misleading because there were no drugs or controlled substances in them.  Id.

28   Here, plaintiffs alleged that the brand name "Ghirardelli" as having a particular

meaning to consumers, i.e., that it is synonymous with chocolate.  FAC ¶ 22.  By itself, however, Ghirardelli is not a <u>descriptive</u> brand name in the same way that "One a Day" gummy vitamins or "Prescription Diet" affirmatively communicates something about the product within the brand name itself.  Ghirardelli's product only communicates that it is "Premium Baking Chips" and "Classic White Chips."  FAC ¶ 1.  Nowhere does the front panel of the product affirmatively communicate that it is chocolate.  Indeed, Ghirardelli removed references to "chocolate" from its logo to settle similar litigation involving the company's white chip products.  <u>See</u> <u>Miller v. Ghirardelli Chocolate Co.</u>, 912 F. Supp. 2d 861, 874 (N.D. Cal. 2012) (denying defendant's motion to dismiss); Dkt. 14 at 5 (describing settlement terms).  Therefore, this is not a situation where the brand name, by itself, is misleading.

Next, plaintiffs contend that <u>Moore</u> holds that consumer deception is plausible where a product lacks an ingredient that the product brand, label, and images suggest it would contain.  Mtn. at 5.  According to plaintiffs, <u>Moore</u> also overrules the court's factual finding that it would be unreasonable to draw a specific qualitative message about a product from an image on that product.  <u>Id.</u>  According to plaintiffs, they purchased the product expecting chocolate and were surprised to learn that there was no white chocolate at all.  <u>Id.</u>

In <u>Moore</u>, the pet foods affirmatively advertised that they were "prescription pet food" and had brand names such as "'Prescription Diet' or an 'Rx' symbol on the food packaging."  966 F.3d at 1018.  <u>Moore</u> required two steps to find those affirmative statements misleading.  First, the court resorted to the dictionary to determine that the "common sense" definition of "prescription" was one where the prescription "may be considered a medicine that involves a drug or controlled substance."  <u>Id.</u>  Second, using its definition of prescription, the court reasoned that the product was misleading because the products did not include a drug or controlled substance and thus failed to meet the definition of prescription.  <u>Id.</u>

Here, the product contains no affirmative statements about chocolate.  The

1    affirmative representations are limited to "classic white chips" and "premium baking

2    chips."  This court previously determined that the definition of the adjective "white" does

3    not define the food, but rather defined the color of the food.  Dkt. 34 at 9.  In other words,

4    the phrase "white chips" does not imply white chocolate chips.  Thus, unlike Moore,

5    defendant's product does not suggest it would contain chocolate.

6         Nor does Moore say much about what inferences a reasonable consumer can

7    draw from an image on a package.  Moore cites Williams, 552 F.3d at 939, as an

8    example of deceptive packaging where "[t]he product [was] called 'fruit juice snacks' and

9    the packaging pictures a number of different fruits, potentially suggesting (falsely) that

10   those fruits or their juices are contained in the product."  Here, the image on the front

11   label is of white chips and the product's name is "classic white chips," which is exactly

12   what is in the product.

13        In sum, plaintiffs' arguments regarding the product's label do not demonstrate

14   clear error.

15        **2.      Whether the Ingredient List Dispels any Consumer Deception**

16        Next, plaintiffs argue that Moore rejects the court's finding that the product's

17   ingredient list dispels any consumer deception.  Mtn. at 6.  According to plaintiffs, if a

18   back label does not confirm the representations made on the front of the product, an

19   ingredient list does not defeat a plaintiff's claim.  Id.  Plaintiffs contend that where the

20   front of the product is misleading, consumers are not required to investigate the back

21   label to determine the truth from the fine print of an ingredient list.  Id.

22        Defendant counters that Moore recognizes that qualifiers in packaging can

23   ameliorate any tendency of the label to mislead.  Opp. at 7.  Further, defendant points out

24   that in Moore, the plaintiffs, rather than the defendants, relied on the ingredient lists in

25   their allegations to support their allegations that the ingredients in the prescription pet

26   food did not contain drug ingredients.  Id.

27        Moore stated, "qualifiers in packaging, usually on the back of a label or in

28   ingredients lists, 'can ameliorate any tendency of the label to mislead.'"  966 F.3d at 1017

United States District Court
Northern District of California

1    (quoting Brady, 237 Cal. Rptr. 3d at 692).  "If, however, 'a back label ingredients list . . .

2    conflict[s] with, rather than confirm[s], a front label claim,' the plaintiff's claim is not

3    defeated."  Id. (alterations in original) (quoting Brady, 237 Cal. Rptr. at 693).  The

4    standard articulated in Moore is no different than the standard cited by this court in its first

5    order granting defendant's motion to dismiss.  See Dkt. 34 at 13–14 (citing Williams, 552

6    F.3d at 939–40; Ebner v. Fresh, Inc., 838 F.3d 958 (9th Cir. 2016)); see also Skinner v.

7    Ken's Foods, 53 Cal. App. 5th 938, 949 (Ct. App. 2020) (citing Brady for proposition that

8    the "ingredient list must confirm the expectations raised on the front, not contradict

9    them").

10    Plaintiffs assert that Moore holds that ingredient lists cannot cure deceptive front

11    labels.  This is true where the back label conflicts with a front label.  Here, there is no

12    literal falseness on the product's front label so this is not a case where the back label

13    conflicts with any affirmative statement on the front label.  Williams is an example of a

14    conflict between the back label and the front label because in that case, the front label

15    affirmatively stated "fruit juice" next to images of fruit, yet fruit juice was not present on

16    the ingredient list.  Williams, 552 F.3d at 939–40.  Unlike Williams, there is no statement

17    such as "white chocolate chips" next to a picture of white chips.  Without such a conflict,

18    Moore holds that a reasonable consumer can review the product's ingredient list to dispel

19    or ameliorate any confusion that might be raised by references to white chips and

20    pictures of white chips on the front label.

21    Accordingly, the court did not err in finding that the product's ingredient list could

22    dispel any potential deception.

23    **3.    Whether the Ingredient List Informs Consumers of the Presence or**

24    **Absence of White Chocolate**

25    Next, plaintiffs argue that even if the court were to ignore Moore and require

26    consumers to view the ingredient list, Ghirardelli has failed to establish what on the

27    ingredient list dispels the deception caused by the front label.  Mtn. at 7.  The product's

28    ingredient list could not be instructive because it does not identify the requisite

1   percentages of cacao fat and dairy that the FDA requires in a product in order to be

2   defined as white chocolate.  Id.  For example, products containing white chocolate are

3   not required to list "white chocolate" as an ingredient and many white chocolate products

4   do not.  Id.  Thus, it is impossible for a consumer to determine whether a product

5   contains at least 20% cacao fat and at least 3.5% milkfat by reading a product's

6   ingredient list.  Id. at 7–8.

7       "A Rule 59(e) motion may not be used to raise arguments or present evidence for

8   the first time when they could reasonably have been raised earlier in the litigation."  Kona

9   Enters., Inc. v. Estate of Bishop, 229 F.3d 877, 890 (9th Cir. 2000) (citing 389 Orange St.

10  Partners v. Arnold, 179 F.3d 656, 665 (9th Cir. 1999)).  Plaintiffs' argument concerning

11  whether the ingredient list informs consumers of the presence of white chocolate could

12  have been raised earlier in the litigation and, as plaintiffs note, the argument does not rely

13  on Moore.  Thus, the court does not consider plaintiffs' argument advanced for the first

14  time in their Rule 59(e) motion.

15          **4.      Whether the Court Erred in Evaluating Plaintiffs' Consumer Survey**

16      Plaintiffs contend that the court inappropriately tested the reliability of their

17  consumer survey at the pleadings stage.  Mtn. at 8.  This kind of factual inquiry into a

18  party's evidence is more appropriate for a separately noticed Daubert hearing.  Id.

19  According to plaintiffs, survey evidence at the pleading stage is a useful tool in

20  determining the plausibility of plaintiffs' claims.  Id.

21      Defendant responds that because the allegations about the survey and the survey

22  itself were attached to complaint, they were, therefore fair game in assessing the legal

23  sufficiency of the survey-related allegations.  Opp. at 8–9.  Defendant asserts that the

24  court correctly decided that the consumer survey did not help plaintiffs state a claim

25  because plaintiffs failed to identify anything false or misleading about Ghirardelli's

26  labeling or advertising in the first place.  Id. at 9.

27      In its prior order granting defendant's second motion to dismiss, the court

28  accepted as true the allegations concerning plaintiffs' consumer survey.  Dkt. 52 at 10.

United States District Court
Northern District of California

1   Even accepting the truth of the survey, the court followed the guidance of <u>Becerra v. Dr.</u>

2   <u>Pepper/Seven Up, Inc.</u>, 945 F.3d 1225 (9th Cir. 2019), in evaluating the persuasive effect

3   of a consumer survey alleged as part of a consumer false advertising complaint.  The

4   <u>Becerra</u> court determined that, as applied to the facts of that case, the consumer survey

5   could not salvage the plaintiff's claim.  945 F.3d at 1231.  Similar to <u>Becerra</u>, the court

6   found plaintiffs' consumer survey unpersuasive because the court had already

7   determined that plaintiffs failed to state a claim and the survey could not salvage

8   plaintiffs' claims.  Dkt. 52 at 10.

9       <u>Becerra</u> made no mention of the need for a <u>Daubert</u> hearing when assessing

10  whether a consumer survey alleges facts sufficient to plausibly state a claim.  This was

11  the case even when the court quibbled with the survey's methodology stating, "it [was]

12  difficult to tell what questions the survey asked to reach its conclusions."  <u>Becerra</u>, 945

13  F.3d at 1231.  More importantly, the court determined that the survey did not address a

14  reasonable consumer's understanding.  <u>Id.</u> ("The survey does not address this

15  understanding or the equally reasonable understanding that consuming low-calorie

16  products will impact one's weight only to the extent that weight loss relies on consuming

17  fewer calories overall.").  In other words, what a survey fails to address is relevant for

18  purposes of evaluating whether a complaint plausibly states a claim for relief.  This court

19  followed a similar path: it assumed the truth of the survey's allegations and found that the

20  survey did not address the ingredient list and could not, on its own, transform an

21  unreasonable understanding into a reasonable one.  Dkt. 52 at 10–11.

22      Accordingly, the court did not err in finding plaintiffs' consumer survey persuasive

23  in evaluating plaintiffs' claims.

24      **5.      Other Supplemental Authority**

25      Both parties have filed supplemental opinions that they contend are relevant to the

26  present motion.  On August 26, 2020, plaintiffs filed a notice of recent decision, citing a

27  California Court of Appeal decision, <u>Skinner v. Ken's Foods</u>, 53 Cal. App. 5th 938.  Dkt.

28  58.  On September 11, 2020, defendant filed a notice of recent decision citing two

United States District Court
Northern District of California

10

1    opinions issued by the San Bernardino County Superior Court.  Dkt. 62.  Plaintiffs object

2    to this supplemental authority for several reasons.  Dkt. 63.

3         Civil Local Rule 7-3(d)(2) permits counsel to bring to the court's attention a

4    relevant judicial opinion published after the date the opposition or reply was filed but

5    before the noticed hearing date.  No argument is permitted with the statement of recent

6    decision.

7         Plaintiffs' supplemental authority was filed before their own reply brief and contains

8    argument.  It therefore contravenes Local Rule 7-3(d)(2) and will not be considered

9    except to the extent that plaintiffs reference the case in their reply brief.  Defendant's

10   supplemental authority was filed after its opposition brief but before the noticed hearing

11   date on this motion.  Plaintiffs' objection does not contest whether the notice complied

12   with the Civil Local Rules and instead offers substantive arguments why the opinions are

13   distinguishable or inapplicable.  Therefore, the court OVERRULES plaintiffs' objection.

14   That said, the court agrees with plaintiffs that a state trial court decision is not binding

15   authority on this court and the opinions do not impact the court's ruling.

16                                    **CONCLUSION**

17        In sum, reconsideration of a judgment after its entry is an extraordinary remedy

18   which should be used sparingly.  <u>McDowell</u>, 197 F.3d at 1255 n.1.  This is not a case

19   meriting such an extraordinary remedy.  For the reasons stated, plaintiffs' motion to alter

20   or amend the judgment is DENIED.

21        **IT IS SO ORDERED.**

22   Dated: October 29, 2020

23                                    /s/ Phyllis J. Hamilton
                                      _____
24                                    PHYLLIS J. HAMILTON
                                      United States District Judge
25

26

27

28

United States District Court
Northern District of California

11